UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOVAN VAVIC,<br><br>Defendant. | Criminal No. 19-CR-10081-IT-MPK |

**DEFENDANT JOVAN VAVIC'S REPLY TO THE GOVERNMENT'S OPPOSITION TO**

**MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

## I.     INTRODUCTION

The Superseding Indictment (the "SI") against Defendant Jovan Vavic lacks the required

specificity as to allegations that Vavic accepted bribes and violated his duty of honest of services

as USC's decorated head water polo coach.  It also fails to allege facts sufficient to substantiate

core elements of the RICO, honest services fraud, and mail and wire fraud charges against Vavic.

The government's opposition did not refute these fatal flaws.  Rather, the government conflates

the significance of these two arguments, relying on nearly entirely on arguments that its pleading

does enough to overcome Rule 7's notice requirements.  The government contends that the

defendants' motions to dismiss "are not a permissible vehicle for addressing the sufficiency of

the government's evidence to prove the charged offense."  (ECF No. 367 at 5, 17.)  While the

government would save these issues for trial, it is well-settled law that allegations should not

proceed to trial where the government's theories of criminal liability are legally flawed.  Under

Rule 12, a court must dismiss an indictment that "fail[s] to state an offense." Fed. R. Crim P.

12(b)(3)(B)(v). When, as Vavic has done here, a defendant challenges the legal sufficiency of an

indictment, the court "must determine whether the indictment 'contains the elements of the offense charged.'" *United States v. Cadden,* 2016 WL 5329565, at *1 (D. Mass. Sept. 21, 2016) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)).

Here, fatal legal flaws abound.  Notwithstanding the government's opposition arguments, the SI does not include key elements of the Count I charge for conspiracy to violate the RICO statute under 18 U.S.C. § 1962(d).  Nor does it allege a valid claim for honest services, mail, and wire fraud.  The government's opposition arguments cannot overcome the defects in the SI.  The SI contains a mere five paragraphs of allegations specific to Vavic.  None of those allegations allege facts that could establish his role as an associate or co-conspirator with the alleged "Key Enterprise."  The allegations do not allege that Vavic "knowingly agreed to join" a RICO conspiracy with the Key Enterprise, and that he participated in the enterprise's operations. Absent allegations of these core elements, the government's Count I fails on its face.

The newly-added Count II also does not allege a single, cohesive conspiracy.  Like the RICO conspiracy, it addresses a rimless "hub-and-spoke" conspiracy that cannot withstand the rigors of Rule 12.  In addition to flaws that plague the conspiracy charges, the government has not alleged facts necessary to prop up its money and property fraud and honest services fraud theories.  The SI does not allege that Vavic deprived USC of anything at all, does not allege that he controlled the admissions decisions at issue, and—most notably—does not allege that Vavic falsely designated any athlete as a water polo recruit.

For the foregoing reasons and as set forth below and in Vavic's motion, the Court should dismiss the SI as to Vavic.

## II.    LEGAL STANDARDS

"An indictment is legally sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Laureano-Perez*, 797 F.3d 45, 60 (1st Cir. 2015) (quotation marks omitted); *see also* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."); Fed. R. Crim. P. 12(b)(3)(B) (describing defects in indictments). The indictment may use the statutory language to describe the offense, but it must also be accompanied by a statement of facts and circumstances to inform the accused of the specific offense with which he is charged. *See United States v. Parigian*, 824 F.3d 5, 9 (1st Cir. 2016). "[A] Court must dismiss [an] indictment if it fails to allege facts which constitute a prosecutable offense." *United States v. Vicenzi*, No. CRIM. 87-222-N, 1988 WL 98634, at *3 (D. Mass. Feb. 16, 1988); *accord United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983) ("It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense.").

## III.    The Government's Count I RICO Charges Should Be Dismissed

### 1.    Count I Should Be Dismissed Because It Fails To Plead That Vavic Knowingly Joined The Alleged Conspiracy

The government's opposition does nothing to overcome the reality that the SI fails to allege that Vavic knowing joined the RICO conspiracy.  The government instead conflates its requirements under Rule 7 and at trial with its threshold obligations to allege each and every core element of a conspiracy to violate the RICO statute.  (ECF 367 at 17-19.)  The agreement

between alleged RICO participants is a critical element of a charge under section 1962(d), and requires factual allegations. *See Hamling,* 418 U.S. 87, 117-118 (1974) (stating that though an indictment may use the language of the statute in describing the offense, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged" (quoting *United States v. Hess,* 124 U.S. 483, 487 (1888)); *see also McLarnon v. United States,* 2009 WL 1395462, at *5 (D. Mass. May 19, 2009). In *McLarnon v. United States,* for example, the court dismissed the government's RICO conspiracy claim, holding that a "bare assertion that the defendants conspired to violate RICO is insufficient to state a claim for RICO conspiracy" because the claim must include "factual allegations regarding the material elements of the offense, including an agreement to violate RICO." *See McLarnon,* 2009 WL 1395462, at *5.

To "knowingly join" a RICO conspiracy, a defendant must "embrace the objective of the alleged conspiracy." *In re Gambino*, 421 F. Supp. 2d 283, 311 (D. Mass. 2006) (quoting *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000)) (quotation marks omitted). "What counts is whether it can be said, on the totality of the evidence, that all of the alleged coconspirators directed their efforts towards the accomplishment of a common goal or overall plan . . . ." *United States v. Boylan*, 898 F.2d 230, 242 (1st Cir. 1990) (quotation marks omitted). Notwithstanding the government's opposition, the SI does not adequately allege that Vavic "embrace[d] the objective of the conspiracy." Indeed, the SI lacks any such facts.

Here, the government's insistence that it can substitute its pleading requirements with proof at trial to overcome the deficiencies of the SI is unavailing. The government relies principally on *United States v. Elliott,* 571 F.2d 880 (5th Cir. 1978), which is not controlling in this Circuit, to contend that evidence establishing each defendant committed several acts of

racketeering is sufficient to support an inference of an agreement to participate in the affairs of the enterprise. Even *Elliott,* however, concedes that at least "knowledge of the essential nature of the plan" is necessary. *See Id.* at 903. Vavic is not alleged to have participated in or agreed to facilitate cheating on college entrance exams. Although the government argues in its motion that the SI's allegations are enough because it includes allegations that Vavic "facilitated multiple students' admission at [USC] by falsely designating student athletes as recruits," the SI does not include any allegations that Vavic knew about Singer's plan to admit athletes who were not legitimate student athletes. *See* ECF 272 at ¶¶ 63-65. Naked allegations that an objective of the Key Enterprise included recruiting athletes "with little or no regard" for their athletic abilities is not sufficient to establish Vavic's knowledge of the enterprise's plan.

Courts have found similar discrepancies between the purpose of the conspiracy and the facts alleged to unfairly prejudice defendants. In *United States v. Dellosantos*, 649 F.3d 109, 122 (1st Cir. 2011), for example, the First Circuit vacated the defendants' convictions for conspiracy to distribute drugs on the ground that evidence presented at trial failed to establish that the defendants had knowingly intended to join the conspiracy and effectuate its objects. Whereas the indictment had alleged that the purpose of the conspiracy was to distribute cocaine *and* marijuana, evidence at trial showed that the defendants distributed cocaine only. *Id.* at 123. The *Dellosantos* Court held that, as a result, the defendants "were, at the very least, deprived of adequate notice of the charges against them, and they were therefore limited in their ability to prepare a defense at trial." *Id.* at 125; *see also United States v. Bowline*, 674 F. App'x 781, 784 (10th Cir. 2016) (vacating a defendant's conviction for conspiracy to distribute Oxycodone where, although evidence proved that he sold drugs for profit, there was no evidence that he and his confederates shared a distribution objective).

2.      **Count I Should Be Dismissed Because It Fails To Plead That Vavic**

**Participated In The Affairs Of The Key Enterprise**

As established in defendant Vavic's motion, the government has also failed to allege *facts*

that would establish that Vavic knowingly agreed to participate in the conduct of the affairs of

the alleged enterprise comprised of Key and KWF.  To participate in the operation or

management of the enterprise, conspirators must be alleged to "participate[] in the enterprise's

decision making or . . . , if they were lower rung participants and not involved in the decision

making, they were plainly integral to carrying out the process." *United States v. Marino*, 277

F.3d 11, 34 (1st Cir. 2002) (quotation marks omitted).  The SI is void of any facts suggesting that

Vavic participated in the operation or management of the enterprise by participating in decision

making or carrying out the process.  Instead, the SI alleges only bilateral transactions between

Vavic and Singer—not the Key Enterprise.  (ECF at ¶¶ 55-58.)  While the government contends

that this is sufficient because Singer "was the leader of the Key Enterprise," the fact of Singer's

leadership is not a substitute for facts that could substantiate a claim that Vavic knew the general

nature of the Key Enterprise and knew that the Key Enterprise extended beyond his bilateral

dealings with Singer.  Nor is it sufficient to establish that Vavic knowingly agreed to personally

facilitate Singer's operation and management of the Key Enterprise.  *See, e.g., Babich* Jury

Charge at 40; *see also Ramirez-Rivera,* 800 F.3d at 20 (citing *Reves v. Ernst & Young,* 507 U.S.

170, 184-185 (1993)).  The lack of facts capable of establishing Vavic's participation in the

conspiracy is glaring and fatal to the government's Count I.

3.      **The Government's Alleged RICO Conspiracy Is A "Hub-And-Spoke"**

**Conspiracy, Notwithstanding The Definition Of The Key Enterprise**

The government contends that allegations that the SI pleads an improper "hub-and-spoke" conspiracy are meritless because the SI narrowly defines the enterprise as an association in fact between Key and KWF.  The government's argument implicitly acknowledges that it cannot adequately allege a proper association in fact enterprise comprised of Singer, Key, KWF, Vavic and the remaining defendants.  And the RICO conspiracy alleged by the government is precisely the type of "hub-and-spoke" arrangement that courts have repeatedly rejected in RICO cases.  *See, e.g., In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.,* 433 F. Supp. 2d 172, 182-83 (D. Mass. 2006) (finding a "hub-and-spoke" model with the defendant at the center managing independent relationships" was insufficient to establish a RICO enterprise "because there was no 'rim' to connect the spokes of the wheel"); *In re Pharm Indus. Average Wholesale Price Litig.,* 263 F. Supp. 172, 183-184 (D. Mass. 2003) (holding that "a doctor in Massachusetts and a doctor in Minnesota [were not] part of the same RICO enterprise" simply because they both allegedly took payments in exchange for prescriptions").

The government's fails in its attempt to skirt the legal obstacles that would prevent it from validly alleging a enterprise among the defendants by narrowly defining the Key Enterprise.  The alleged RICO conspiracy is not a single conspiracy at all.  At best, it describes the existence of several conspiracies between each of the defendants, individually, and Singer.  Under *Kotteakos v. United States,* 328 U.S. 750, 768, "a single conspiracy cannot be made out by showing that each defendant was linked to [a central figure] in one or more transactions."  Rather, a single conspiracy requires not simply a connection but an interdependence among participants—a requirement which is simply not present in the SI. *See United States v. Portela,*

167 F.3d 687, 695 (1st Cir. 1999).  To be interdependent, "activities of one aspect of the scheme

must be necessary or advantageous to the success of another aspect of the scheme. Each

individual must think the aspects of the venture interdependent, and each defendant's state of

mind, and not his mere participation in some branch of the venture, is key." *Portela*, 167 F.3d at

695.

## IV.    COUNT II FAILS AND SHOULD BE DISMISSED AS DUPLICATIVE

Count II alleges that defendants conspired with others to commit mail fraud and honest

services mail fraud and wire fraud and honest services wire fraud to defraud the ACT, the

College Board, and universities, including USC.  This Count II fails for several reasons that the

government's opposition does not—and cannot—refute.

As addressed above, the government contends that its RICO conspiracy does not include

an impermissible rimless "hub-and-spoke" enterprise or multiple conspiracies because the "hub-

and-spoke" limitations on conspiratorial liability do not apply to enterprise conspiracies.  Even if

this theory were accurate as to Count I—and, it is not—the government must concede that Count

II is flawed because it is well-settled that "a wheel without a rim is not a single conspiracy." *See*

*Dickson v. Microsoft Corp.,* 309 F.3d 193, 203-04 (4th Cir. 2002) (the "Supreme Court was

clear: a wheel without a rim is not a single conspiracy.") (citing *Kotteakos,* 328 U.S. at 755).

Even *Elliott,* which the government relies on extensively to defend the sufficiency of its alleged

enterprise conspiracy, is clear on this point.  In *Elliott,* the court held that, "[a]pplying pre-RICO

conspiracy concepts to the facts of this case, we doubt that a single conspiracy could be

demonstrated. Foster had no contact with Delph and Taylor during the life of the alleged

conspiracy…[t]he activities allegedly embraced by the illegal agreement in this case are simply

too diverse to be tied together on the theory that participation in one activity necessarily implied

awareness of others." *Id.* at 902. In this regard, the government cannot have it both ways. If, as

the government contends, the validity of Count I hinges on allegations of a RICO "enterprise" so

Count I can be construed to allege a single conspiracy, Count II must fail.

Here again, the government's argument that deficiencies within its conspiracy allegations

are issues to be resolved at trial is meritless. Although Vavic does not dispute that the jury will

decide whether the government has proven a single conspiracy or multiple conspiracies at trial,

this court may still determine whether government has properly pled each claim to Vavic under

Rule 12, and dismiss Count II as a matter of law.

## V.    THE CHARGES IN THE SI DO NOT ALLEGE HONEST SERVICES AND MONEY AND PROPERTY FRAUD

To properly plead a scheme to violate the honest services fraud statute, the government

must allege a breach of fiduciary duty. *See United States v. Urciuoli,* 613 F.3d 11, 17 (1st Cir.

2010). At a minimum the government must define in the SI the source and scope of the

purported fiduciary duty. *See SEC v. Chenery Corp.,* 318 U.S. 80, 85-86 (1943) ("[T]o say that a

man is a fiduciary only begins the analysis…What obligations does he owe as a fiduciary?") The

SI does not include any allegations that establish that Vavic owed such a duty to USC.

Specifically, the SI does not include any allegations of fact sufficient to establish that he owed

any obligations to USC as a fiduciary, and does not allege facts indicating that he breached those

duties. For example, the SI does not allege that Vavic controlled decisions related to the

admission of the student athletes referenced in the complaint. To the contrary, the SI is clear—

Vavic merely "designated" the children of Singer's clients as recruits for the USC water polo

team. (ECF 272 at ¶ 7.) The SI concedes that the actual decision to grant admission to the

university rested with the USC athletic admissions subcommittee. (ECF 272 at ¶ 13.)

Further, the government must allege that Vavic agreed to engage in a deceptive scheme. *United States v. Sawyer,* 85 F.3d 713, 732 n. 16 (1st Cir. 1996) (stating that "deceit…is inherent in the term 'fraud'"); *see also United States v. McDonough,* 727 F. 3d 143, 163 (1st Cir. 2013) (holding that the government had the "burden of proving that the putative scheme to defraud involved a material falsehood").  The SI, however, does not allege any such fraud by Vavic.  It does not allege that he concealed the tuition payments that Singer allegedly paid for Vavic's children.  It does not allege that Vavic's efforts to secure funds for USC's water polo team were at odds with USC's interests and his duty to the school.  Finally, there is no allegation that Vavic ever provided a water polo designation to any recruit who was not a legitimate water polo player.

With respect to money-or-property fraud, the Superseding Indictment fails to allege that Vavic intended to deprive USC of money or property. Comparing other cases involving alleged fraud in higher education demonstrates that it is difficult to imagine what intended deprivation of money or property the Superseding Indictment contemplates.  Here too, the lack of allegations that Vavic designated unqualified recruits—and more notably, his absence from allegations addressing schemes to do so involving defendants Heinel, Janke, and Singer—is fatal to the government's claim.  Moreover, Vavic is not alleged to have directly deprived USC of any money or property nor indirectly exposed USC to the risk of economic or even reputational harm.

## VI.    CONCLUSION

For the foregoing reasons, the Superseding Indictment against Vavic should be dismissed.

Dated: February 14, 2020

Respectfully Submitted,

For Defendant JOVAN VAVIC

*/s/ Stephen G. Larson*
Stephen G. Larson
slarson@larsonobrienlaw.com
(Admitted *pro hac vice*)
Larson O'Brien LLP
555 S. Flower Street
Suite 4400
Los Angeles, CA  90071
Phone:  213-436-4888
Fax:  213-623-2000

Irwin B. Schwartz (BBO# 548763)
ischwartz@blaschwartz.com
Nicholas R. Cassie (BBO# 672698)
ncassie@blaschwartz.com
BLA Schwartz, PC
One University Ave., Suite 302B
Westwood, Massachusetts 02090
Phone: 781-636-5000
Fax: 781-636-5090

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on February 14,

2020.

*/s/ Stephen G. Larson*
Stephen G. Larson