UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL NO.: 19-CR-10081-IT-MPK |
| JOVAN VAVIC, | |
| Defendant. | |

**JOVAN VAVIC'S MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    LEGAL STANDARD ................................................................................................ 1

III.   THE PROPERTY FRAUD PREDICATES FOR COUNT I SHOULD BE
DISMISSED AND SUCH ALLEGATIONS STRICKEN FROM COUNTS II
AND XVI .................................................................................................................. 2

IV.   THE SSI FAILS TO ALLEGE HONEST SERVICES FRAUD AND FEDERAL
PROGRAMS BRIBERY CONSPIRACY, WARRANTING DISMISSAL  OF
COUNTS XVI AND III—AS WELL AS I AND II ................................................. 3

     A.    No "Exchange" Of Past Private Payments For Future Conduct ............................. 6

     B.    No "Bribe" Based On Payments To USC ............................................................. 10

V.    CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Hamling v. United States*,
 418 U.S. 87 (1974)..............................................................................................................3

*McCormick v. United States*,
 500 U.S. 257 (1991)..........................................................................................................11

pre-*United States v. McNally*,
 483 U.S. 350 (1987)..........................................................................................................11

*Skilling v. United States*,
 561 U.S. 358 (2010)................................................................................................11, 12, 13

*United States v. Abdelaziz*,
 10-10080-NMG, Dkt. 906....................................................................................................11

*United States v. Bizzack*,
 19-CR-10222-DPW, Dkt. 34 .........................................................................................12, 13

*United States v. Blagojevich*,
 794 F.3d 729 (7th Cir. 2015) .........................................................................................11, 12

*United States v. Brissette*,
 919 F.3d 670 (1st Cir. 2019).............................................................................................2, 14

*United States v. Cadden*,
 2016 WL 5329565 (D. Mass. Sept. 21, 2016) (Stearns, J.) .......................................................2

*United States v. Fernandez*,
 722 F.3d 1 (1st Cir. 2013)............................................................................................. *passim*

*United States v. Huet*,
 665 F.3d 588 (3d Cir. 2012)...................................................................................................2

*United States v. Mariano*,
 983 F.2d 1150 (1st Cir.1993).................................................................................................9

*United States v. McCormack*,
 31 F. Supp. 2d 176 (D. Mass. 1998) ..................................................................................2, 14

*United States v. Mister*,
 553 F. Supp. 2d 377 (D.N.J. 2008) .......................................................................................15

*United States v. Nayak,*
  769 F.3d 978 (7th Cir. 2014) ...................................................................12

*United States v. Ochs,*
  842 F.2d 515 (1st Cir. 1988) ...................................................................11

*United States v. Sorich,*
  523 F.3d 702 (7th Cir. 2008) ...................................................................11

*United States v. Sun–Diamond Growers of California,*
  526 U.S. 398 (1999) ..........................................................................4, 8, 10

*United States v. Thompson,*
  484 F.3d 877 (7th Cir. 2007) (Easterbrook, J.) .......................................12

*United States v. Urciuoli,*
  613 F.3d 11 (1st Cir. 2010) .......................................................................9

*United States v. Vandemoer,*
  19-CR-10079-RWZ, Dkt. 26 ...................................................................12

*United States v. Woodward,*
  149 F.3d 46 (1st Cir. 1998) .......................................................................9

**Federal Statutes**

18 U.S.C.
  § 666(a)(2) ...............................................................................................2
  § 1343 .......................................................................................................3
  § 1962(d) ..................................................................................................2

United States Code
  § 1341 Title 18 .........................................................................................3

Racketeer Influenced and Corrupt Organizations Act ............................2, 15

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).....................................................11

Editorial Board, *Turns Out There's a Proper Way to Buy Your Kid a College Slot,*
  N.Y. Times (Mar. 12, 2019), available at:
  https://www.nytimes.com/2019/03/12/opinion/editorials/college-bribery-
  scandal-admissions.html ...........................................................................13

Fed. R. Crim. P. 7 .......................................................................................1

Fed. R. Crim. P. 12 .....................................................................................2

Fed. R. Crim. P. 12(b)(3) ........................................................................2, 14

## I.      INTRODUCTION[1]

No case should proceed to trial where, as here, the conduct alleged is not a violation of the statutes charged. To be clear, the deficiencies here are not only a matter of lacking notice but the absence of essential elements of a crime. The newly added "facts" that the government has stitched on to its threadbare predecessor allegations in the Second Superseding Indictment ("SSI") only underscore that the allegations fail as a matter of law to comprise the "exchange" of an official act for a private payment prerequisite to the purported bribery scheme at the heart of their case, and thus fail to state an offense as to Vavic for honest services fraud (Count XVI) and newly-added Conspiracy to Commit Federal Programs Bribery (Count III)[2]—or, by extension, for racketeering conspiracy based on predicate acts of honest services fraud and money laundering (Count I) as well as conspiracy to commit honest services fraud (Count II). Because the Court has already held that "the government cannot secure a conviction on the theory that Defendants committed property fraud," no viable theories remain, and the Court should dismiss the charges against Vavic across the board. *See* Order, Dkt. 564 at 17. At a minimum, the Court should dismiss the property fraud predicates to SSI Count I and strike the allegations related to property fraud from Counts II and XVI.

## II.      LEGAL STANDARD

While Rule 7 requires a "plain, concise, and definite written statement of the essential

---

[1] As set forth in the Response to the Court's November 23, 2020 Order ("Order"), Dkt. 547, Defendants' motions, the parties' briefings (including the jury instructions at Dkt. 491), and the Court's November 23, 2020 decision apply to the Second Superseding Indictment ("SSI"). The instant motion supplements the arguments previously presented in the briefing and at the July 1, 2020 oral argument in the context of the Court's Order and the SSI's new allegations as to Vavic.

[2] With respect to the newly-added count in the SSI as to Vavic for Conspiracy to Commit Federal Programs Bribery (Count III), Vavic hereby expressly joins in the arguments previously set forth as to this charge in Defendants' motions and briefings (including in Dkkts. 332, 390,491), and the July 1, 2020 oral argument, which the Court addressed in its November 23, 2020 decision. *See supra* note 1; Dkt. 547.

facts constituting the offense charged," Rule 12 requires that those factual allegations constitute the offense charged.  *See* Fed. Rs. Crim. P. 7(c)(1), 12(b)(3)(B)(v). An indictment should be dismissed if the facts alleged demonstrate that, as a matter of law, the prosecution will not be able to prove each of the elements of the charged offense. *United States v. Huet*, 665 F.3d 588, 596-97 (3d Cir. 2012); *United States v. McCormack*, 31 F.  Supp. 2d 176, 177 (D. Mass. 1998) (dismissing indictment charging Federal Programs Bribery where "the conduct allegedly engaged in by the Defendant," as "alleged in the indictment, and further amplified by the affidavit of an Assistant United States Attorney," failed to meet the elements of 18 U.S.C. § 666(a)(2), including as to the requisite quid pro quo with a link to federal funds).

Further, in deciding such a motion, the Court may resolve any questions of law that "can be determined without a trial on the merits," Fed. R. Crim. P. 12(b)(3), and may decide motions to dismiss charges that raise questions of law where the facts are not disputed or are not capable of being disputed. *See McCormack*, 31 F.  Supp. 2d at 181 (holding that "[n]o mini trial is implicated" to reach "threshold" conclusion "that there will be no evidence on an element of the offense which is essential to § 666's definition of the offense"); *see also United States v. Brissette*, 919 F.3d 670, 676 (1st Cir. 2019).

### III.   THE PROPERTY FRAUD PREDICATES FOR COUNT I SHOULD BE DISMISSED AND SUCH ALLEGATIONS STRICKEN FROM COUNTS II AND XVI

In connection with a motion to dismiss, "a court must determine whether the indictment 'contains the elements of the offense charged.'" *United States v. Cadden*, 2016 WL 5329565, at *1 (D. Mass. Sept. 21, 2016) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  Here, an essential element of Count I—conspiracy to violate the RICO statute under 18 U.S.C. § 1962(d)—is that Vavic agreed to commit, or in fact committed, two or more predicate offenses. *See* Order, Dkt. 564 at 39 (discussing this element).

The SSI alleges, in sub-parts (a) and (c) of paragraph 151, that these predicates include "multiple acts indictable under" "Title 18, United States Code, Section 1341 (relating to mail fraud)" and "Title 18, United States Code, Section 1343 (relating to wire fraud)"—in addition to honest services mail and wire fraud predicates, which are separately alleged at sub-parts (b) and (d). *See* Dkt. 505 at para. 151.  Yet, with respect to the property fraud predicates alleged at sub-parts (a) and (c) in Count I, the SSI does not "contain" that "element." *Hamling*, 418 U.S. at 117. Indeed, as this Court has already held, "the charged object of the fraud—admission to universities—does not constitute 'property' under the federal fraud statutes," and thus, "that, as a matter of law, the government cannot secure a conviction on the theory that Defendants committed property fraud." Order, Dkt. 564 at 13-14, 17.

As such, the Court should dismiss the property fraud predicates separately alleged in Count I—and strike the allegations related to property fraud from Count II (at paragraphs 154 (a) and (b)) and Count XVI (alleging *inter alia* wire fraud pursuant to 18 U.S.C. § 1343).

## IV.   THE SSI FAILS TO ALLEGE HONEST SERVICES FRAUD AND FEDERAL PROGRAMS BRIBERY CONSPIRACY, WARRANTING DISMISSAL OF COUNTS XVI AND III—AS WELL AS I AND II

In holding that admission slots are not property under the federal property fraud statutes, the Court permitted the government to proceed on the theory that Vavic and his co-defendants committed wire or mail fraud by depriving the universities of the honest services of their employees. *See* Order, Dkt. 564, at 9.  Yet, the SSI makes clear that the newly-added "facts" as to Vavic, amplified by the government's incorporated transcript of the January 2, 2019 call at the heart of the purported "exchange" of an official act for a private payment, fail to allege the corrupt quid pro quo prerequisite to the charges.  In particular, as a matter of law, one cannot agree and intend to perform a future act "in exchange" for payment when the at-issue payments are "past" and "done" at the time of the agreement—as the SSI now alleges.  Because the

conduct allegedly engaged in by Vavic does not meet the statutory requirements of honest services fraud and federal programs bribery—the only vestige of the government's case following the Court's November 23, 2020 Order—the charges against him should be dismissed across the board.

Both honest services fraud and federal programs bribery require the government to adequately allege that Vavic "engaged in a bribery scheme insofar as [he is] alleged to have entered into a quid pro quo where [he] *exchanged* money for official acts."  *See* Order, Dkt. 564, at 20, 41 (emphasis added).  Neither "self-dealing" nor "the exchange of money—even in connection with an official act—is [] sufficient to prove criminal bribery under federal law." *Id.* at 20.  "Instead, there must be a quid pro quo—a specific intent to give or receive something of value *in exchange for* an official act." *Id.* at 41 (emphasis added); *see also United States v. Sun– Diamond Growers of California*, 526 U.S. 398, 404-05 (1999) (emphasis added); *United States v. Fernandez*, 722 F.3d 1, 22 (1st Cir. 2013) (emphasis in original); Defendants' Proposed Jury Instructions, Dkt. 491, at 38, 42 & nn. 35-36 ("[A]n 'illicit quid pro quo'" requires *inter alia* a "this for that" transaction).  It is thus not enough that a payment was made to cultivate a business relationship—"because of [a defendant's] official position—perhaps, for example, to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future."  *Sun–Diamond Growers of California*, 526 U.S. at 404.  "An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *Id.* at 405.

Against this backdrop, the Court found that the predecessor allegations sufficiently alleged an agreement to "exchange" private payments for an official act.

With respect to Defendants' argument "that the Superseding Indictment must be

dismissed because 'for each of the applicants whose admission [Defendants] purportedly facilitated, the [Superseding Indictment] alleges either a corresponding payment made after the student's admission or else no corresponding payment at all," the Court acknowledged that "the *timing of the payments* may very well constitute evidence that the payments constituted a gratuity as opposed to a bribe," but concluded that "this is an argument to be presented to the jury to rebut the government's assertion of a quid pro quo." Order, Dkt. 564 at 42 & n.11 (emphasis added).

The Court then turned to Defendants' argument "that the government [] failed to allege a bribe where the alleged bribe money was paid into accounts that were owned by the universities." *Id.* at 42. "To the extent that the alleged bribes were paid *only* to university accounts," the Court concluded, "Defendants' argument would present a more difficult question." *Id.* (emphasis in original). However, the Court found it unnecessary to reach this question in connection with the predecessor charges because "the government has included allegations of bribe payments paid to accounts not associated with the universities." *Id.*

As set forth below, the SSI's new allegations as to Vavic demonstrate that the only purported "exchange" of money involved *accounts that were owned by USC*—thus presenting anew the "more difficult" question that the Court previously reserved. With respect to the private payments—scholarship tuition Singer's foundation paid for Vavic's children, star water-polo players in their own right—the SSI now alleges that Vavic agreed, in a January 2 telephone call, to take future action "*because of*" scholarship payments then "past" and "done." *See* Dkt. 505 at para. 47 & Exhibit A. The timing of the purported agreement—which post-dated, and by necessary extension, was not "in exchange for" but at best "because of" the private payments—is critical as a matter of law. Indeed, neither private "goodwill" gifts nor payments made to USC's athletic department constitute an "exchange" of an official act for a private payment prerequisite

to the purported bribery scheme now at the heart of the government's case.

## A.   <u>No "Exchange" Of Past Private Payments For Future Conduct</u>

The predecessor Superseding Indictment ("SI") alleged two categories of payments:  (1) to USC "in exchange for" Vavic's designation of particular students as recruits, and (2) to Vavic for his children's scholarship payments "in exchange for" his commitment to designate future unspecified applicants at recruits.  *See* SI, Dkt. 272, at paras. 55-56 ("Singer and co-conspirators made payments totaling $250,000 to a bank account at USC that funded Vavic's water polo team" in exchange for" his designation of recruits, "thereby facilitating the students' admission to USC"); *id.* at paras.57-58 ("Singer made private school tuition payments for Vavic's children…in exchange for Vavic's commitment to designate Singer's clients as recruits for the USC water polo team in the future.").

The SSI reasserts these allegations of two categories of payment— (1) to USC "in exchange for" designating particular admitted applicants as recruits, and (2) for scholarships "in exchange for" designating future unspecified applicants.  *See* SSI at paras. 26-28. But the SSI now adds allegations about a January 2, 2019 telephone conversation on which Count XVI is predicated—a call orchestrated by the government, after Singer began cooperating, to attempt to manufacture venue in Massachusetts and a factual basis for its fraud allegations against Vavic based on payments other than those to USC.[3]  These new allegations, at paragraph 47, assert that

---

[3] Notably, with respect to the telephone calls Singer placed at the government's behest, Singer's October 2, 2018 notes, produced by the government in discovery on February 26, 2020, reflect that members of the prosecution team reportedly berated and bullied him to force him to agree with the government's false narrative that "everyone bribed the schools"; instructed him to lie and entrap parents and coaches; and directed him to target a particular individual who they desired to "nail" "at all costs." *See* Defendants' Memorandum of Law In Support of Their Motion to Dismiss Indictment with Prejudice or, in the Alternative, for Suppression of Evidence Based on Governmental Misconduct, 19-CR10080-NMG, Dkt. 972 at 11 (quoting the notes) & Exhibit A (attaching the notes).  All of these interactions relate to the key legal issue here: whether the at-issue payments were bribes.

the January 2 call, which this paragraph quotes from selectively, consummated an agreement to designate future recruits "because of" the "past" scholarship payments.  *See id.* at para. 47 & Exhibit A.

In particular, with respect to the January 2 call, the SSI now alleges that: (1) "Singer *asked* Vavic *if he would* purport to recruit additional children of Singer's clients," (2) "because of," (3) "*what we've done in the past, with the scholarships for your boys*"—i.e. the "past" scholarship payments, which were indisputably "done" at that point.  *See* Dkt. 505 at para. 47.[4]

---

[4] In connection with these allegations, the SSI quotes at paragraph 47 from the government's full transcript of the call, produced to the defense and attached hereto at Exhibit A.  Like the paragraph 47 allegations, the transcript confirms that, by the time of the purported initial January 2 "agreement" about future conduct, the scholarship tuition payments were "past" and "done."

Indeed, the transcript makes clear that Singer did not even broach the topic of future recruits until *after* confirming that the scholarship payments were "done."  Only then did Singer state that he had been able to "go through" Defendant Heinel *in the past*—but sought to contact Vavic "*if*" he came across a water polo player *in the future*, as follows:

> Singer:  So the reason why I called is … I want to make sure that they scholarships that we've given to your boys … I don't know if I still have one through our foundation for next year.  *Or are we done*? …
>
> Vavic: *We are done*.
>
> Singer:  *We are done*.  OK. That's – OK – that's good to know.
>
> And then I just want to make sure…Uh, obviously, *I've been able to go through Donna* [Defendant Heinel], uh to g—*to help us with getting some kids in*.  But *if* I come across somebody that's a water polo player—
>
> Vavic: Uh…
>
> Singer:  --'cause I know that's what, uh, *they have to be a water polo player, for you* – uh, then, uh, uh, it's still OK for me to holler at you, *because – essentially*, *what we've done in the past*, *with the scholarships for your boys.*  Correct?
>
> Vavic: Absolutely. Absolu—ly [sic].

*See* Exhibit A at 2:13-3:9 (emphases added).

In tacit acknowledgement of the fact that the call cannot plausibly be described—as it was in the Superseding Indictment—as a January "3" conversation "confirm[ing]" a prior (albeit wholly bald and unspecified) purported agreement to *exchange* tuition payments for future conduct, *see* SI, Dkt. 272, at paras. 57-58 (emphasis added), paragraph 47 of the SSI now presents the January "2" call as the purported agreement for future conduct "because of" (not "in exchange for") past scholarship payments.  As discussed above, an agreement to take future conduct "because of"

These "past" and "done" scholarship payments pre-dating the purported January 2, 2019

agreement are now described, in turn, at paragraphs 35-36, 43-44 of the SSI. *See id.*  Otherwise,

the allegations of an agreement to commit acts in purported "exchange" for payment relate to

payments made, or to be made, into accounts owned by USC. *See*, *e.g.*, SSI, Dkt. 505 at paras.

34; 46; *cf.* SI, Dkt. 272, at paras. 55-56.

While this Court has held that, on a motion to dismiss, the timing of *payments* is not

dispositive of whether a payment is a quid pro quo bribe or a mere "gratuity," Order, Dkt. 562  at

42 & n.11, here the timing of the purported *agreement* is dispositive.

As an initial matter, as the Supreme Court has explained, with respect to the distinction

between bribes and illegal gratuities, that "[t]he distinguishing feature of each crime is its intent

element. Bribery requires intent 'to influence' an official act or 'to be influenced' in an official

act, while illegal gratuity requires only that the gratuity be given or accepted 'for or *because of*'

an official act." *Sun–Diamond Growers of California*, 526 U.S. at 405 (emphasis added).

Paragraph 47 of the SSI alleges that the January 2 agreement was consummated "*because of*"—

not "in exchange for"—the "past" and "done" scholarship payments.[5]

Further, as the First Circuit has explained:

> Although the timing of the *payment* may not provide a conclusive answer as to
> whether that payment is a bribe or a gratuity, the timing of the *agreement to
> make or receive a payment* may: one cannot agree to perform an act in
> exchange for payment when that act has already been performed. Therefore, if
> the agreement to exchange a thing of value for an act is made after that act has
> been performed, that agreement cannot be properly viewed as an agreement to
> offer or accept a bribe.

---

payments past and done is not a corrupt quid pro quo—and thus not a bribe.

[5] This notwithstanding paragraph 28's compound and conclusory introductory assertion that the
USC *and* scholarship payments were "in exchange for" the designation of admitted applicants
*and* future unspecified recruits, which paragraph 47 then effectively refutes in its description of
the January 2 agreement to take future acts "because of" the past scholarship payments. *Cf.* Dkt.
505 at para. 47 *with* Dkt. 505 at para. 28.

*Fernandez*, 722 F.3d at 19 (emphasis in original).  Likewise, here, if the agreement to exchange a thing of value for an act is made *after* the thing of value has been provided, that cannot properly be viewed as an agreement to accept a bribe.  Indeed, one cannot agree and intend to perform a future act "in exchange" for payment when the at-issue payment is already "past" and "done" at the time the agreement is consummated.  *See id.*

       As such, the alleged January 2 agreement to commit a future act "because of" payments "past" and "done" is not an "exchange"—and thus not a quid pro quo bribe prerequisite to a charge of honest services fraud or federal programs bribery.  Vavic could not have agreed with Singer on January 2 to accept past scholarship payments "in exchange for" future conduct.  He could not agree after-the-fact "that a particular [past] payment [wa]s made *in exchange for* a commitment to perform official acts to benefit the payor in the future"—which the government acknowledges is prerequisite to stating a bribe. *See* Opposition to Motions to Dismiss, Dkt. 367, at 38 (emphasis added); *see also United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir.1993) ("[t]he essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a quid pro quo"); *United States v. Urciuoli*, 613 F.3d 11, 15 (1st Cir. 2010) (affirming jury instruction that required the government to "prove beyond a reasonable doubt that [the defendant] intended the payment to cause [the person he was attempting to influence] to change an official position that he would otherwise have taken or to take official actions that he would not have taken but for the payment"); *United States v. Woodward*, 149 F.3d 46, 55 (1st Cir. 1998) (bribery requires an "intent to cause the recipient to alter her official acts.") (quoting *United States v. Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996)).   Accordingly, there is no corrupt "this for that" alleged with respect to the scholarship payments.

       Rather, the scholarship payments were at most goodwill "gratuities," not bribes—"past" gifts "because of" which Vavic is alleged, in paragraph 47, to have entered into the subsequent

January 2 purported agreement to take future acts.[6]  But unquestionably, a "bribe" does not include the conduct at best alleged here:  a payment made to "to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future."  *See Sun–Diamond Growers of California*, 526 U.S. at 404; *see also Fernandez*, 722 F.3d at 19 (vacating Federal Programs Bribery convictions where erroneous jury charge instructed that "it is sufficient for conviction to show that [the defendant] "offered, or agreed to give the thing of value ... *after* ... the ... transaction") (emphasis added).  Accordingly, the allegations regarding the private scholarship payments fail as a matter of law to constitute the intended and agreed-upon bribe prerequisite to stating the offense at Counts XVI and III.

### B.      No "Bribe" Based On Payments To USC

The balance of the allegations regarding an agreed upon "exchange" of payments to USC for official acts are defective because they also fail to constitute an alleged bribe.  In particular, as set forth previously in the motions and Defendants' Proposed Jury Instructions, *see* Dkt.332 at 24, Dkt. 465 at 2, Dkt. 491 at 40-41 & nn.31-34, checks made payable to a university, and deposited into university accounts—that is, payments made to the purported "victim," which lack any "private gain" for Vavic—are not bribes as a matter of law.[7]

---

[6] The government's discovery only underscores the government's theory of goodwill gifts "because of" which Vavic is alleged, in paragraph 47, to have entered into the subsequent January 2 purported agreement to take future acts.  For example, in a memorandum of interview with Singer (Bates SINGER-VOLO19-056086), the memorandum recounts:  "CHS did not need VAVIC because he went through HEINEL. CHS paid for VAVIC's children's tuition through the foundation and treated it as a scholarship. *CHS paid for the tuition as a gesture toward VAVIC in case CHS needed him in the future.*"(emphasis added); *see also supra* note 4 (discussing the transcript of the January 2, 2019 call in which Singer states that he did not need Vavic before the goodwill scholarship payments were "past" and "done") & Exhibit A.

[7] The significance of this point is only amplified by record evidence that, as Magistrate Judge Kelley found "USC had a practice of its admissions, of its athletics department admitting kids in exchange for donations who were –as athletic walk-ons;" that, in this context, USC Administration not only encouraged but required coaches to pursue recruits whose families could contribute to USC; and that the government has conceded that this type of exchange does not

A conviction for honest services fraud or federal programs bribery requires "the swap of an official act for a *private* payment." *United States v. Blagojevich*, 794 F.3d 729, 734 (7th Cir. 2015) (reversing the conviction of former Illinois governor Rod Blagojevich on honest services fraud and federal programs bribery charges because the jury instructions did not make clear that the jury could only convict if they found "the swap of an official act for a private payment") (emphasis added); *see also id.* at 735 ("[*McCormick v. United States*, 500 U.S. 257 (1991)] describes the offense as a quid pro quo: a public official performs an official act (or promises to do so) in exchange for a *private* benefit, such as money.") (emphasis added); Black's Law Dictionary (11th ed. 2019) (defining bribery as "[t]he corrupt payment, receipt, or solicitation of a *private* favor for official action." (emphasis added)).  The "purpose of the *private* gain requirement—and one that does not depend on who gets the spoils—is to prevent the conviction of individuals who have breached a fiduciary duty to an employer or the public, *but have not done so for illegitimate gain*." *United States v. Sorich*, 523 F.3d 702, 710 (7th Cir. 2008) (emphasis added).

Even before *Skilling v. United States*, 561 U.S. 358, 407 (2010), limited honest services fraud to the bribe-and-kickback core of the pre-*United States v. McNally*, 483 U.S. 350 (1987), case law, courts recognized that honest services fraud must involve some *private* gain to the fiduciary.  *See McNally*, 483 U.S. at 355 (describing pre-*McNally* case law holding that "a public official owes a fiduciary duty to the public, and misuse of his office for *private* gain is a fraud.") (emphasis added); *United States v. Ochs*, 842 F.2d 515, 522 (1st Cir. 1988) (describing pre-*McNally* case law in the area of honest services as establishing that officials' "misuse of their

---

constitute criminal conduct. *See United States v. Abdelaziz*, 10-10080-NMG, Dkt. 906, Transcript of Status Conference held on February 28, 2020, at 14; *infra* note 9 (discussing the government's representations as to this issue).

office . . . for *private* gain is a fraud proscribed by the federal mail fraud statute.") (emphasis added). *Skilling* "vindicated," and if anything, further narrowed the "private gain" requirement. *United States v. Nayak*, 769 F.3d 978, 981 (7th Cir. 2014) (internal quotations omitted; emphasis supplied) (observing that after *Skilling*, "only bribery or kickbacks, *rather than any private gain whatsoever*, can be used to show honest-services fraud") (emphasis added).

The SSI's allegations of payments to USC accounts fail to satisfy that standard as a matter of law.[8]   As far as we are aware, the government has not cited a decision in which money provided solely to a "victim" employer, for one of the employer's lawful operations (here, the USC water polo program), was deemed a "bribe" that defrauded the employer-victim.

Nor do variations of the assertion that Vavic "otherwise benefited professionally" from the USC donation satisfy the private gain requirement.  *See, e.g.*, *United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007) (Easterbrook, J.) ("The United States has not cited, and we have not found, any appellate decision holding that an increase in official salary, or a psychic benefit such as basking in a superior's approbation (and thinking one's job more secure), is the sort of 'private gain' that makes an act criminal under § 1341 and § 1346."); *Blagojevich*, 794 F.3d at 737 (employee's "interest in keeping her job" or "interest in receiving a  salary" is "not a form of private benefit for the purpose of federal criminal statutes") (citing *Thompson*, 484 F.3d 877).

---

[8] In addition to this Court, several courts have expressed doubt about the government's premise that donations to universities can constitute a bribe as a matter of law.  *See, e.g.*, *United States v. Bizzack*, 19-CR-10222-DPW, Dkt. 34, Sentencing Tr. at 15-16 (Woodlock, J.) ("That's not a bribe, is it? It's received by USC.").  Like Judge Woodlock, Judge Zobel also expressed doubts about this aspect of the government's bribery theory. In response to the Government's argument at the sentencing of Stanford sailing coach John Vandemoer (during which the Government acknowledged that all alleged "bribe" monies went to the Stanford sailing program, and not to Vandemoer personally), Judge Zobel remarked:  "You called them bribes but nothing – I mean, *it's not clear to me what makes them a bribe*."  *See United States v. Vandemoer*, 19-CR-10079-RWZ, Dkt. 26, Sentencing Tr. at 8 (emphasis supplied).

The limitless premise that a "trickle down" or incidental benefit to an employee from money paid to his employer transforms an unauthorized commercial transaction into a federal bribery case is at odds with *Skilling*, which held that an employee's violation of fiduciary duties is not, on its own, honest services fraud. *See Skilling*, 561 U.S. at 409.

It is also unworkable in practice. If an indirect "professional benefit" from a payment to an employer sufficed for the "private gain" requirement, then this standard-less rule would swallow conduct the government has conceded is entirely lawful—namely, a USC development officer's acceptance of a substantial donation to a university in exchange for USC admitting the donor's child, which unquestionably yields at "trickle down" professional benefit to the employee.[9]

This Court has emphasized "the Supreme Court's refrain that the federal property fraud statutes should not be used as a backdoor for expanding the scope of federal criminal jurisdiction without a clear statement by Congress," as well as the "foundational principle in criminal law that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" Order, Dkt. 564 at 17-18 (citations omitted). Based on all of the foregoing, as the Court held with respect to property fraud, again "at minimum, there is a serious question as to whether" payments made to USC constitute cognizable "bribes"—and thus whether the honest services

---

[9] *United States v. Bizzack*, 19-CR-10222-DPW, Dkt. 34, Sentencing Tr. at 23, Motion Ex. D (Dkt. 1038-5) (THE COURT: "So if USC decides to take money, say $100,000 or $200,000, and says, 'By the way, we're going to let this kid in,' that's not any criminal violation; is that right?," GOVERNMENT: "[N]o, I don't believe that to be a criminal violation."); *see also* Editorial Board, *Turns Out There's a Proper Way to Buy Your Kid a College Slot*, N.Y. Times (Mar. 12, 2019), available at: https://www.nytimes.com/2019/03/12/opinion/editorials/college-bribery-scandal-admissions.html (quoting U.S. Attorney Lelling as stating, "donating a building so that a school is more likely to take your son or daughter" is not a criminal violation); CBS Boston, *Web Extra: U.S. Attorney on Charges In Nationwide College Admissions Scheme*, YouTube (Mar. 12, 2019) available at https://www.youtube.com/watch?v=Sw7A4aSbCKs (U.S. Attorney Andrew Lelling's press conference).

fraud and federal programs bribery statutes "reach[] the conduct alleged[.]" *Id.* at 18. Accordingly, the "more difficult question" which the Court previously reserved should now be decided in Vavic's favor. *Id.* at 42.

*     *     *

In short, Vavic should not be required to face trial on flawed charges premised on factual allegations that fail as a matter of law to constitute the offenses stated.  He is not asking the Court to reject factual allegations in the SSI or to resolve disputed facts.  Rather, the SSI's paragraph 47 allegations regarding the January 2 "agreement" (as "amplified" by the incorporated transcript of the call), and the balance of the allegations regarding payments to USC, demonstrate that there was no "swap of an official act for a private payment" and thus no bribe.  *See McCormack*, 31 F.  Supp. 2d at 177 (dismissing indictment where "the conduct allegedly engaged in by the Defendant," as "alleged in the indictment, and further amplified by the affidavit of an Assistant United States Attorney," failed to meet the elements of Federal Programs Bribery).

Absent facts which constitute a bribe, the government cannot state a substantive offense for honest services fraud and federal programs bribery. *See* Fed. R. Crim. P. 12(b)(3) (on motion to dismiss, the court may resolve any questions of law that "can be determined without a trial on the merits"); *McCormack*, 31 F.  Supp. 2d at 181 (this includes questions of law where the facts are not capable of being disputed regarding "threshold" conclusion that conduct alleged failed to meet "definition of the offense"); *see also Brissette*, 919 F.3d at 676.

Nor, by extension, can the SSI adequately allege the requisite intent and agreement to engage in a bribery scheme and thereby commit honest services fraud conspiracy and federal programs bribery conspiracy (Counts II and III), or racketeering conspiracy premised on the honest services fraud predicate (Count I).  *See Fernandez*, 722 F.3d at 32 ("since the conduct

allegedly underlying the conspiracy . . . was not a crime, no . . . conspiracy to commit that conduct can exist either") (quoting *United States v. Ali*, 561 F. Supp. 2d 265, 267 (E.D.N.Y. 2008));  *see also United States v. Mister*, 553 F. Supp. 2d 377, 384, 387 (D.N.J. 2008) ("If Defendant was not aware the bribes he took were bribes or corrupt payments he cannot be guilty;" conspiracy in turn requires that Defendants "knew the specific unlawful purpose of the payments charged in the indictment," i.e., that "the payments were made *in exchange for* official acts") (emphasis added).[10]

The same conclusion applies to the money laundering predicate for the racketeering conspiracy.  Absent conduct comprising the specified unlawful activity (here, the failed allegation of honest services fraud), the government cannot allege any of the elements of the money laundering predicate—including Vavic's purported knowledge of concealment of "bribe" payments as scholarship tuition awarded through Singer's foundation—or thus, an agreement and intent that a co-conspirator commit money laundering.  *See* Order, Dkt. 564 at 39-40; Defendants' Proposed Jury Instructions, Dkt. 491 at 51-52.  As such, this predicate too should be dismissed—in turn disposing of the charges against Vavic across the board.

## V.   <u>CONCLUSION</u>

For the reasons set forth above and in Defendants' motions, briefings (including the jury

---

[10] This Court previously found that "[t]he factual allegations in the Superseding Indictment do not readily lend themselves to the conclusion that these Defendants were part of a single overarching conspiracy," and in particular acknowledged "a dearth of factual allegations that support a common goal, interdependence among the participants, and overlap among the participants[.]"  *See* Order, Dkt. 564 at 21; *see also id.* at 23-24 (discussing RICO).  While the Court ultimately held that it could not "prejudge" the factual sufficiency of the charges on a motion to dismiss, *see id.* at 22, the analysis at this juncture is different.  Now there is the "dearth" of any facts to support an allegation that Vavic agreed and intended that a "co-conspirator" would engage in a corrupt quid pro quo *plus* the fact that the conduct alleged as to Vavic fails to comprise a cognizable bribe.  As such, there are no facts in the SSI which comprise the intent and agreement to commit honest services fraud prerequisite to the racketeering and honest services fraud conspiracy charges alleged against him at Counts I and II.

instructions at Dkt. 491), and the July 1, 2020 oral argument on the motions, Vavic respectfully requests that this Court dismiss the SSI against him.

Dated: January 5, 2021                Respectfully Submitted,

*/s/ Stephen G. Larson*
Stephen G. Larson
slarson@larsonllp.com
(Admitted *pro hac vice*)
Koren L. Bell
kbell@larsonllp.com
(Admitted *pro hac vice*)
Paul A. Rigali
prigali@larsonllp.com
(Admitted *pro hac vice*)
Larson LLP
555 S. Flower Street, Suite 4400
Los Angeles, CA  90071
Phone:  213-436-4888
Fax:  213-623-2000

Irwin B. Schwartz (BBO# 548763)
ischwartz@blaschwartz.com
Nicholas R. Cassie (BBO# 672698)
ncassie@blaschwartz.com
BLA Schwartz, PC
One University Ave., Suite 302B
Westwood, Massachusetts 02090
Phone: 781-636-5000
Fax: 781-636-5090

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 5, 2021.

*/s/ Stephen G. Larson*
Stephen G. Larson

# EXHIBIT A

9163848802 2019-01-02 22-15-28 13889-001                    Page 1

1    **Call Date:**      2019-01-02

2    **Call Duration:** 4:32

3    **Call Begin [] Call End []**

4    **Call Participants:**

5        Rick Singer

6        Jovan Vavic

7    **File Name:**      9163848802 2019-01-02 22-15-28 13889-001

8    **Bates No.:**

9

10   VAVIC:    [00:00] Hello?

11   SINGER:   Jovan. Rick Singer. How are ya?

12   VAVIC:    Rick! I'm doing very good. How are you doing?

13   SINGER:   Good. Congratulations, uh, belated, on beatin'

14       Stanford.

15   VAVIC:    That's right. Thank you, very much.

16   SINGER:   Uh...

17   VAVIC:    It was, uh...

18   SINGER:   Huge. That was huge!

19   VAVIC:    Yeah. You know, after -- after 4 years of

20       frustration with the boys, we finally did it.

21   SINGER:   Yeah. Oh, uh, and John thought this was his year.

22       So, uh, uh...

23   VAVIC:    Yeah, he did. He did.

24   SINGER:   Uh, you guys did a great job.

1   VAVIC:    Uh, yeah.  They have, uh, trouble with us.  They --

2         they traditionally have trouble with SC.

3   SINGER:   And how do the girls look?

4   VAVIC:    Well, very good.  Our girls' team, I think, is gonna

5         be ranked first.  Uh, we are returning bunch of girls.

6         We had a good recruiting class.  We're gonna be very

7         good.

8   SINGER:   That's awesome.  Uh...

9   VAVIC:    Uh, we might be -- uh, might [01:00] be (inaudible)

10        Stanford again, at Stanford.

11  SINGER:   Oh, wow!  OK.  That's cool!

12  VAVIC:    Yeah, very fas-- uh...

13  SINGER:   So the reason why I called is, uh, I -- I've lost

14        track on...  Uh, uh, uh, are y-- do I have another year

15        with your la-- your last child?  Or is this the end of

16        it?  'Cause, uh, I'm bein' audited.  So I want to make

17        sure that the scholarships that we've given to your

18        boys...  I don't know if I still have one through our

19        foundation for next year.  Or are we done?

20  VAVIC:    Uh...

21  SINGER:   I just wasn't sure.

22  VAVIC:    We are done.

23  SINGER:   We are done.  OK.  That's -- OK -- that's good to

24        know.  And then I just want to make sure...  Uh,

1       obviously, I've been able to go through Donna, uh, to g--

2       to help us with getting some kids in.  But if I come

3       across somebody that's a water polo player --

4   VAVIC:     Uh...

5   SINGER:    -- 'cause I know that's what, uh, y-- they have to

6       be a water polo player, for you -- uh, then, uh, uh, it's

7       still OK for [02:00] me to holler at you, because --

8       essentially, what we've done in the past, with the

9       scholarships for your boys.  Correct?

10  VAVIC:     Absolutely.  Absolu--ly.

11  SINGER:    OK.  But I know that th--

12  VAVIC:     Uh, so, uh, we jus-- we just have to find the right

13      person.  And he has to be...  Because the -- the way SC's

14      now doing everything, Rick, is, uh, uh, uh, when you get

15      a walk-on...  Uh, I used to be able to get 'em in much

16      easier.  Now the walk-on, uh, is required to have decent

17      grades.  And he has to have some kind of a resume.  He

18      can't be just a to-total nobody.

19  SINGER:    Got it.

20  VAVIC:     So he has to be a water polo player.  He has to have

21      a -- a somewhat decent, uh, resume, and maybe, you know,

22      3rd team all-CIF, uh, you know, 4th or 5th team all-

23      American, you know, something that -- th-that I can show

24      that this guy's a legit -- or girl is a legit player.

9163848802 2019-01-02 22-15-28 13889-001                    Page 4

1        And, uh, I have an easier time with the girls, because I

2        have less girls than boys, just so you know.

3   SINGER:   [03:00] Got it.  Yeah, Title IX issue.  Totally get

4        it.

5   VAVIC:   Uh...

6   SINGER:   Yeah.

7   VAVIC:   Yeah.

8   SINGER:   OK.  Well, I just wanted to make sure that, uh --

9        that all the -- the scholarship-ing for your boys is

10       done.  And I'm glad they're -- you're happy, they're

11       happy.  And if I come across a polo kid, I'll let ya

12       know.

13  VAVIC:   Yeah.  He has to be polo.  Now, if you have a kid

14       that's, uh -- that's, uh, a good, you know, athlete in

15       another sport, let me know.  And I can talk to the coach,

16       uh.  And depends on which sport.  And, uh, I can put you

17       in touch with them.

18  SINGER:   OK.  You're the best.  Thank you, so much.  And good

19       luck this season.

20  VAVIC:   Did anything come out over Stanford, that boy, with

21       Stanford?

22  SINGER:   No.  Nothin' happened.  John already recruited 2

23       kids.  So nothin' happened at all there.  'Cause he was

24       recruiting 2 kids.  He go-- he took 'em both.  And he

1        just had no room.  But, uh, I'm just happy you beat the

2        shit out of 'em.  That's all I care about.

3    VAVIC:    Thank you.  Well, uh, just so you know, [04:00] whe-

4        when we present those girls, it's always better for me,

5        uh, to get 'em presented earlier.

6    SINGER:    Gotcha.

7    VAVIC:    So have any girls, uh, for this next year, we gonna

8        --

9    SINGER:    Yeah?

10   VAVIC:    -- we're gonna present them sometime in, uh -- I

11       wanna say September, October.

12   SINGER:    Gotcha.  OK.

13   VAVIC:    So that's where we want to get 'em.

14   SINGER:    OK.  I gotcha.  You're the best.

15   VAVIC:    Thank you, Rick.

16   SINGER:    Thanks.  Take care.  Drive safely.

17   __:  Oh, uh...

18   VAVIC:    Happy New Year.

19   SINGER:    OK.  Uh, you too.  Buh-bye.

20   VAVIC:    Bye-bye.  [04:32]

21

22                        END OF AUDIO FILE