UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONNA HEINEL, et al.,<br><br>Defendants | No. 19-cr-10081-IT |

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE**
**IRRELEVANT EVIDENCE CONCERNING UNCHARGED THIRD PARTIES**

The government moves *in limine* to preclude the defendants from introducing evidence regarding uncharged third parties, including other applicants to the University of Southern California ("USC"), who had no known involvement with William "Rick" Singer or any of the defendants. Donna Heinel and Jovan Vavic are charged with conspiring with others, including Singer, to accept bribes to admit students to USC as purported athletic recruits. Evidence concerning third parties who were *not* part of the charged conspiracy has no bearing on whether these defendants joined a conspiracy with Singer and others to defraud USC, or in the case of Vavic, to help Singer expand his network of corrupt insiders. Evidence suggesting others at USC were also defrauding the university by deceiving the USC admissions office is also irrelevant to the charged conspiracy. Even if the evidence had probative value, it would be vastly outweighed by the prejudice and confusion that would be caused by allowing the defendants to put their former colleagues or other students and their families on trial, *in absentia*, as part of an "everyone does it" defense, using mostly pure hearsay.

The defendants are charged with knowingly and intentionally joining a Singer-led conspiracy to take bribes from parents to secure their children's admission to college as purported athletic recruits on the basis of falsified athletic credentials. The evidence in this case will show

that Heinel and Vavic duped admissions officials at USC into admitting the children of Singer's clients. The evidence will also be that Heinel, for example, *also* duped admissions officials in other instances, with the occasional complicity of other coaches and administrators in the USC athletics department. Such evidence is probative of Heinel's intent because it is additional evidence of her methods, plan, knowledge, and lack of mistake.

The defendants, however, may seek to distract the jury by pointing to other athletics officials at USC who purportedly engaged in similar misconduct with respect to *other* applicants and favored the children of wealthy donors and other special interest candidates. Such evidence is irrelevant because it sheds no light on whether Heinel and Vavic conspired with Singer to defraud USC and to advance the purposes of the conspiracy. It would simply inflame the jury by improperly suggesting that others are also culpable or more culpable or by appealing to class bias.

USC's special consideration during the admissions process of the children of major donors, legacies, and other well-connected individuals is not a defense in this case. The evidence in this case will be that Heinel and Vavic defrauded USC by taking bribes to designate students fraudulently as athletic recruits, not that USC showed favor to the children of established donors. USC's special consideration of other applicants has nothing to do with whether Heinel and Vavic agreed with Singer and others to *lie* to USC admissions in exchange for bribes from parents to secure the bogus recruitment of their children to Division I athletic teams based on false and inflated credentials. *See, e.g.*, *United States v. Sans*, 731 F.2d 1521, 1530 (11th Cir. 1984) ("Whether the appellants knew that other bankers disobeyed the law was not relevant to whether they acted knowingly . . . .").

The First Circuit's decision in *United States v. Brandon* is instructive. 17 F.3d 409 (1st Cir. 1994). In that case, the court affirmed the exclusion of evidence offered by defendants charged

2

with conspiring to commit bank fraud by "fraudulently representing the existence of down payments required by the bank." *Id.* at 418. The excluded evidence suggested that, in other situations and sometimes even customarily, the victim bank and other banks offered 100 percent financing without requiring down payments at all. *Id.* at 443. In affirming the exclusion of this evidence, the First Circuit explained, "for the [100 percent financing] evidence to be relevant, there must be some reason to believe that 100% financing, or no down payment financing, is customarily provided in conjunction with paperwork showing fake down payments. A no down payment custom does not establish a fake down payment custom." *Id.* at 444. The court saw the true purpose of this evidence: "What defendants were really trying to show is that the bank or its officials were themselves perpetrating some sort of fraud and the defendants were unwittingly caught up in it. . . . This formulation, however, obscures the real issue: if Bay Loan intended to provide 100% financing, or if defendants thought down payments were waived, why did they have to take actions to falsify down payments?" *Id.* at 445.

So too, here. Even if the corruption inside USC athletics and athletics development were more extensive than what is charged in this case, that does not make it more or less likely that *the defendants* agreed to join in a conspiracy to obtain fraudulent admissions to USC in exchange for bribes. Their actions and intentions and the conspiracy charged are the appropriate subject matter of this trial, and courts in the First Circuit and elsewhere have routinely concluded that "defendants in fraud cases may not adopt the 'blame the victim' theme in attacking the government's case." *United States v. June*, No. 10-CR-30021-MAP, 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012) (rejecting attempt to show victim's "general lending policies were so slipshod or so venal that [d]efendant's alleged lies about his income and assets were of no moment"); *United States v. Callipari*, 368 F.3d 22, 36 (1st Cir. 2004) (rejecting "blame the victim" defense), *vacated on other*

3

*grounds*, 543 U.S. 1098 (2005); *United States v. Golfo*, 2020 WL 2513445, at *4-5 (E.D.N.Y. May 15, 2020) (rejecting "blame the victim" defense).

Any probative value of evidence regarding other applicants unrelated to Singer, the defendants, and their co-conspirators is substantially outweighed by the danger that it would confuse the issues, mislead the jury, and waste time. *See* Fed. R. Evid. 403. Indeed, the introduction of such evidence would inevitably lead to dozens of mini-trials about other applicants and other families – none of them having anything to do with this case. The risk of such "mini-trials" has repeatedly been a concern for the First Circuit under Rule 403. *See, e.g.*, *United States v. George*, 761 F.3d 42, 57 (1st Cir. 2014) ("[T]he judge could have ended up with a mini-trial about a side issue – [a third party's] innocence of charges not made – that might have confused the jury."); *see also United States v. Taylor*, 848 F.3d 476, 485 (1st Cir. 2017) (excluding defense's attempt to introduce government's letter identifying an unindicted co-conspirator, which "could lead to a mini-trial about a side issue – to wit, why [the co-conspirator] was unindicted – so the risk of confusing the issues substantially outweighed the Letter's probative value"); *United States v. DeCologero*, 530 F.3d 36, 60 (1st Cir. 2008) (excluding evidence due to risk of mini-trials); *United States v. Thomas*, 467 F.3d 49, 56 (1st Cir. 2006) (Woodlock, J.) ("Here, in refusing to allow a trial within a trial on a collateral matter, the trial court struck the proper balance.").

That risk is particularly acute here. The parties would necessarily introduce voluminous documents concerning those other individuals, and call witnesses about a sideshow: whether *other* applicants were qualified to be recruited as athletes, or to be admitted on their own merits; what payments *other* parents made or were expected to make; what *other* coaches and administrators knew and intended – all without helping the jury to evaluate Heinel and Vavic's guilt or innocence. Such a defense by distraction would confuse the jury rather than assist it.

Finally, even if the evidence regarding other applicants were relevant and admissible under Fed. R. Evid. 403 – which it is not – much of it consists of inadmissible hearsay under Fed. R. Evid. 802. For example, Heinel's emails about other applicants are not admissible, if offered by her or Vavic, because a defendant cannot introduce co-conspirator statements against herself or another co-conspirator. *See United States v. Milstein*, 401 F.3d 53, 73 (2d Cir. 2005) (excluding co-conspirator recording proffered by defendant: "The statement of a conspirator, offered for its truth by a co-conspirator, is not within this Rule."); *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986) ("There is no authority for the proposition that the prosecution is a 'party' against whom such evidence can be offered. The rule is intended to allow for introduction of co-conspirators' statements as evidence against them as defendants.").

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the defendants from introducing exhibits or other evidence about third parties who are not alleged to have participated in the charged conspiracy.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/Kriss Basil
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KRISS BASIL
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/Kriss Basil
KRISS BASIL
Assistant United States Attorney