UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 19-cr-10081-IT |
| | ) |
| DONNA HEINEL, et al., | ) |
| | ) |
| Defendants | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ABOUT "TAKING" AN ADMISSIONS SPOT [ECF NO. 861]**

In moving to dismiss the indictment in this case, the defendants argued that university "admissions slots" do not constitute property cognizable under the mail and wire fraud statutes. This Court agreed, holding:

> [T]he wrong identified by the government is that Defendants' conduct harmed the integrity of the admissions process. While the court accepts that there is substantial value in having integrity in the admissions process, the court is not persuaded that integrity in the admissions process constitutes the universities' "property" for purposes of the property fraud statute. Instead, to the extent that the universities were deprived of integrity and fairness in the admissions process, the honest services fraud statutes . . . provide the framework to address the offense.

ECF No. 564 at 15.  The defendants now seek to preclude the government from offering evidence or argument about the very wrong identified by this Court as being central to this case—corruption of integrity and fairness in the university admissions process.  They contend, remarkably, that evidence that limited numbers of admissions spots would be awarded to deserving students is irrelevant and would be more prejudicial than probative.  *See* ECF No. 862 at 2.  In effect, the defendants seek to exclude the reason for the fraud scheme, namely, to secure admission to a highly selective university.  If admissions slots were unlimited, or if the number of athletic recruits were unlimited, at the University of Southern California ("USC"), everyone who applied would get in, and anyone who wanted to be a recruited athlete would be.  There would be no need to create fake

athletic profiles and to use fraudulent test scores and academic records to secure admission. The defendants' argument is absurd, and the Court should deny the motion.

## ARGUMENT

Federal Rule of Evidence 401 provides that evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Here, the defendants argue that "[e]vidence as to whether there is a set number of admission 'spots' at a particular university is not relevant to any of the elements required to prove the charged offenses" and "will not help the jury determine whether the Defendants committed the crimes charged in the Indictment." ECF No. 862 at 3. But that is not true. As the Court already concluded, central to the alleged scheme is how the defendants breached their duty of honest services by obtaining admissions slots through deceit and bribes.

The evidence at trial will show that those slots were, in fact, limited and, absent the defendants' criminal acts, would have gone to qualified candidates, which is precisely why the co-conspirator parents and Singer paid the defendants large sums of money to cheat the system. The evidence will show that USC typically rejects close to 90 percent of students who apply because there is only so much room in the entering class, but it accepts the vast majority of athletes who are recruited by USC's athletic coaches. Yet those athletic recruitment slots are even more limited and are reserved for some of the most elite student-athletes in the country. The defendants conspired to secure the admission of the children of Singer's clients by pretending the children had the qualifications of that elite few and by accepting bribes. Evidence concerning the limited number of admissions is thus directly relevant to the motive and mechanism of the alleged scheme.

For the same reasons, such evidence is not substantially more prejudicial than probative. The government does not intend to argue that the defendants stole admissions slots from *particular*

students, as the defendants imply, and there is, accordingly, no basis to fear that it will "improperly call to the jury's sympathies." *Id*. at 4. But the government *does* intend to present evidence that the children being recruited were unqualified, because that evidence is probative of the charged fraud and the defendants' motive in committing it. It is also probative of the admissions process that the defendants and their co-conspirators sought to corrupt.

One final point bears emphasis. In their motion, the defendants warn against "creating undue delay by introducing a series of mini-trials into the proceedings as to the qualifications of . . . other students, including the intangible factors how a university picks among many qualified candidates." ECF No. 862 at 4. They argue that "[t]hese mini-trials would overshadow the facts in this case, and would mislead the jury as to the actual issues to be decided." *Id*. The government agrees and has moved *in limine* to preclude such mini-trials regarding the qualifications of students with no connection to the conspiracy to admit students as fake athletic recruits. This case should be about *this* conspiracy, its scope, its objectives, its methods, and its participants—not other unrelated applicants, other parents who were not part of this scheme, and other USC athletics department officials who are not on trial.

## CONCLUSION

For the reasons set forth above, the defendants' motion should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/ Kriss Basil
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KRISS BASIL
Assistant United States Attorneys

Date: October 19, 2021

3

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

          By:    /s/Kriss Basil
                  KRISS BASIL
                  Assistant United States Attorney