UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 19-CR-10081 |
| DONNA HEINEL and JOVAN VAVIC, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE [DKT. NO. 841] TO PRECLUDE IRRELEVANT EVIDENCE CONCERNING UNCHARGED THIRD PARTIES**

Donna Heinel and Jovan Vavic oppose the government's purported motion to exclude evidence "concerning uncharged third parties." The motion departs from the erroneous, and indeed striking, premise that "USC's special consideration during the admissions process of the children of major donors, legacies, and other well-connected individuals is not a defense in this case." (Dkt. 841 at 2.) Contrary to this claim, this evidence is highly relevant and material to the core themes the government has placed at issue—including whether Heinel and Vavic intentionally breached their fiduciary duty to USC by supporting the admission of particular athletic recruits who were the children of USC donors. This compelling evidence—which is non-hearsay or admissible under an applicable exception—squarely refutes not only key elements of the alleged crimes but the government's central premise in this case. The government thus seeks to exclude the evidence not because it is "irrelevant" or relates to "third parties," but precisely because it poses such a powerful threat to the government's ability to carry its burden of proof at trial.

As discussed below, Heinel and Vavic intend to offer highly relevant, material, and admissible evidence about the customs, policies and practices at USC regarding admissions,

1

recruiting, and fundraising. This evidence includes, among other things, the formal and informal customs, policies, and practices of the USC Athletic Department and the water polo team which, in turn, shaped their objectively reasonable understanding about their fiduciary duty to USC and their good faith intent in connection with the alleged conduct. This evidence will demonstrate the lawful, entrenched, and intertwined practices of admissions, athletic recruitment, and fundraising at USC— which only happens, in particular instances, to mention particular third parties.

As its motions reflect, the government seeks to deny the jury access to critical evidence that will paint a strikingly different picture of USC admissions—and the role of fundraising and athletics recruitment in this process—than the counterfactual image it seeks to present (and ultimately succeeded in presenting in *United States v. Abdelaziz,* et al., 19-CR-10080-NMG) as the uncontroverted truth at trial. In the context of the charges the government has brought and the premise of this prosecution, excluding such critical, core evidence is not only without any evidentiary basis, it would be a substantial violation of Heinel and Vavic's Fifth and Sixth Amendment rights to contest evidence and advance their theory of defense.

For all of these reasons, the Court should deny this back-door attempt to prevent the jury from hearing Heinel and Vavic's defense to the crimes charged.

I.     BACKGROUND

From at least 2007 to 2019, USC had an official, entrenched, widespread practice of seeking and rewarding donors by giving admission preferences to applicants related to the donors—including through the athletic recruitment process. USC's practices derived, in part, from a school-wide effort to raise $6 billion, which then-USC President C.L. Max Nikias

initiated in August 2011, achieved in 2017 (18 months earlier than expected), and extended thereafter.

Defendants' supervisor, the head of USC's Athletics Department, worked hand-in-glove with President Nikias to achieve USC's fundraising goals—including through the athletic recruitment process. The Athletics Department staff—including his subordinates, Heinel and Vavic—were expected and required to help implement USC's fundraising goals, including, in the case of Vavic, to sustain a water polo team dependent on fundraising for its very survival.

At times, not only the dedicated Athletics "Development" staff of 14 athletics "development" employees, but USC personnel outside of the Athletics Department as well, advocated for applicants' admission, even as USC considered them for admission (a) through an athletics subcommittee—the "Subco"; (b) a VIP process; and (c) sometimes both. These customs, policies, and practices were routine in the Athletics Department during Defendants' tenure at the university, and USC explicitly documented those practices in numerous emails and regularly maintained spreadsheets tracking such applicants. Further, these formal and informal customs, policies, and practices regarding the role of athletic recruitment in the fundraising process were communicated directly to Heinel and Vavic, including in various emails.

During USC's $6 billion campaign, well in excess of 200 college applicants unconnected to William "Rick" Singer received such admission preferences. USC's Athletics Department alone raised over $670 million from 2011 to 2016.

In short, Singer may have exploited a system, but he did not create it.

II.     **LEGAL STANDARD**

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted); *United States v. Molina*, 407 F.3d 511, 524 (1st Cir. 2005) (The Constitution "guarantees criminal

3

defendants the right to present a defense" under the Sixth Amendment's Compulsory Process Clause) (quoting *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995)).  This constitutional guarantee includes the right of a defendant to present "competent, reliable evidence bearing on the credibility of [the prosecution's evidence]." *Crane*, 476 U.S. at 690.  Thus, evidentiary rulings that "exclude[] a potentially viable line of defense" improperly abridge a defendant's Sixth Amendment rights. *Molina*, 407 F.3d at 24.

Evidence is relevant—including evidence to advance a potential defense—if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Fed. R. Evid. 401.  Where relevant evidence satisfies the Rule 403 balancing test, out-of-court statements may only be excluded by the rule against hearsay where they are admitted for the truth of the matter and no hearsay exception applies. *See* Fed. R. Evid. 802.

### III.    ARGUMENT

Against this backdrop, Heinel and Vavic intend to offer highly relevant, material, and admissible evidence about the customs, policies and practices at USC regarding admissions, recruiting, and fundraising—including, among other things, the formal and informal customs, policies, and practices of the USC Athletic Department and the water polo team.  As set forth in the Defense Proposed Jury Instructions, this evidence and argument goes to the heart of the questions before the jury, including whether Heinel and Vavic agreed and intended to commit honest services fraud and federal programs bribery.  Indeed, this evidence and argument bears directly on—and squarely refutes—the government's ability to prove not only core elements of the crimes charged, but the central premise of its case, including:

- Whether Defendants agreed and acted with the corrupt intent to perform an official act that violated his or her fiduciary duty, and deprive USC of his or her honest services, in exchange for a bribe or kickback;

- Whether there was in fact a breach of fiduciary duty and a bribe or kickback;

- Whether Defendants agreed and specifically intended to deceive USC through materially false and fraudulent pretenses, representations and promises;

- In this context, whether the government has proved Defendants' lack of a good faith belief that USC welcomed, condoned, approved, required, and expected the at-issue conduct.

Among other things, the evidence of USC's fundraising-admissions strategies demonstrates the objective reasonableness of Defendants' good-faith reliance on these formal and informal customs, practices and policies regarding fundraising, admissions, and athletic recruitment—and undermines the premise of an intended breach of fiduciary duty predicated on misrepresentations and corrupt *quid pro quos*. In particular, the evidence the government seeks to exclude shows that Defendants were expected and required—as directed by USC superiors—to support and advance USC's fundraising goals, including through the admission of children of donor families as athletic recruits.

The evidence also shows that it was the common and accepted practice for USC to channel candidates for admission who had donor support through Subco, the VIP process, and sometimes both, just as Defendants' are alleged to have done with the student-athletes referred to them by Singer.[1] This holds true even of students with particularly low grades, test scores, and/or athletic

---

[1] The Singer students qualified as VIPs but were by and large admitted through the Subco program because Singer represented them to be recruitable athletes. For example, "Applicant 1,"

5

qualifications who were admitted—by the admissions department—as either VIP students or through Subco, and if through the VIP process, oftentimes for Spring so that their low test scores and/or grades would not bring down the incoming class' purported average GPA and test scores submitted to U.S. News and World Report for USC's rankings.

### A. Evidence of USC's Admissions Practices is Highly Relevant

The Defendants have numerous examples of USC giving admissions preferences to VIP and Subco applicants—classifications that were sometimes interchangeable and overlapping—because of donations. This evidence includes communications enlisting Heinel and Vavic to advance, through the athletic recruitment process, "USC's special consideration during the admissions process of the children of major donors, legacies, and other well-connected individuals"—precisely the evidence the government claims is "irrelevant" and seeks to exclude. (*See* Dkt. 841 at 2.)

Heinel and Vavic will concisely organize and present this evidence efficiently at trial. Although they are still finalizing their respective exhibit lists, and identifying the particular evidence they will each, respectively, seek to admit at trial on this core issue, for purposes of this Motion, they attached Exhibits are a representative sample of such evidence.

For the reasons discussed above, this evidence squarely refutes the government's core legal theories and provides necessary foundation, context, and a fuller, accurate factual account about how admissions, fundraising, and athletic recruitment at USC actually worked. The evidence demonstrates that the "side-door" that Singer openly promoted was in fact a valid, common practice—not a corrupt "scheme"—consistent with Defendants' good-faith

---

falsified their credentials to the Defendants without their knowledge. The Subco channel also it made it easier for Singer to steal a significant portion of their donations.

understanding of their fiduciary duty and their good-faith belief in the validity of the student athletes Singer presented. Excluding the preceding, illustrative evidence—and permitting the government to cherry-pick what the jury hears about the admissions process at USC in this case—would present a distorted picture of how admissions actually worked and what the expectations were of the Defendants in performing their job duties.

This record-based evidence is not only highly relevant standing alone, it will also be the focus of many witnesses' testimony.[2] Among other things, this evidence will be necessary to the jury's credibility determinations of the 13 USC witnesses on the government's proposed witness list, including three witnesses who sat on Subco and two who are now cooperating with the government.[3] *United States v. Callipari*, 368 F.3d 22, 37 (1st Cir. 2004).

For all of these reasons, it is clearly proper for Defendants to use this evidence at trial. The Court should therefore deny the government's motion to categorically exclude evidence that goes to the core of the defense. *See, e.g.*, *Brown v. Ruane*, 630 F.3d 62, 71-72 (1st Cir. 2011) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.").

### B. Categorically Excluding the Proffered Evidence Would Constitute Reversible Error

Granting the government's motion would lead to reversible error by excluding relevant evidence on a host of topics—including but not limited to:

---

[2] It bears noting that core USC witnesses exercised their Fifth Amendment rights in the *Abdelaziz* trial and thus were unable to testify on behalf of the defense.
[3] These witnesses are Josh Adam, Kelsey Bradshaw, Kirk Brennan, Becky Chassin, Brent Crouch, Aarika Hughes, Laura Janke, Ali Khosrohahin, Casey Moon, Lindsey Munday, Jeff Nygaard, Caryl Smith-Gilbert and Joseph Wood.

1. <u>Defendants' good faith and lack of fraudulent intent</u> in relying on USC's formal and informal customs, practices and policies regarding fundraising, admissions, and athletic recruitment, including the representations regarding the athletic talent of the student athletes Singer presented to Defendants—contrary to the government's contentions that Defendants knowingly and intentionally entered a conspiracy to defraud USC in exchange for bribes. All of the government's charges are specific-intent crimes.[4] And Defendants' good faith is a relevant, complete defense to all of the government's charges. *See United States v. Gorski*, 880 F.3d 27, 32 n.3 (1st Cir. 2018); *United States v. Henry*, 136 F.3d 12, 17, n.3 (1st Cir. 1998); *United States v. Dockray*, 943 F.3d 152, 155 (1st Cir. 1991); *Cheek v. United States*, 498 U.S. 192, 203-04 (1991).

2. <u>USC's knowledge and promotion of intertwined admissions and fundraising objectives</u>. By openly advancing USC fundraising objectives as they advocated for the admission of donor applicants, including through the athletic recruitment process, USC supervisors and management in and beyond the Athletics Department knew of the school's longstanding, common, and entirely legitimate practice of factoring philanthropy into admissions decisions. *See, e.g.*, *United States v. Bank of New England, N.A.*, 921 F.2 844, 856 (1st Cir. 1987). This evidence shows, moreover, that a wide range of USC personnel—not just Defendants and not just Athletics Department personnel—were doing precisely what they reasonably, and correctly, understood was expected and required of them to advance USC's fundraising goals. The evidence thus shows that USC personnel complied with their fiduciary duty to USC by participating in an unprecedented, $6 billion capital campaign and using admissions as a lever to

---

[4] *See, e.g.*, *United States v. Piper*, 35 F.3d 611, 615 (1st Cir. 1994) (conspiracy); *United States v. Martinez*, 994 F.3d 1, 7 (1st Cir. 2021) (mail, wire fraud); *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) (federal program bribery).

raise money—defeating a central element of the government's honest-services and federal programs bribery charges. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 368 (2010); *Sidoo*, 468 F. Supp. 3d at 443; *United States v. Joselyn*, 99 F3.d 1182, 1184 (1st Cir. 1996); *United States v. Cincotta*, 689 F.3d 238, 241-42 (1st Cir. 1982).

Courts in this district—including this Court at the hearing on the motions to dismiss—have repeatedly recognized the relevance of this type of evidence for the precise purpose which Heinel and Vavic intend to introduce it for: that USC authorized the consideration of philanthropy in making admissions decisions and expected its employees to make special considerations for the students of those donor families. *See Sidoo*, 468 F. Supp. 3d at 445. The government mischaracterizes this evidence as evidence of "similar misconduct." (*See*, *e.g.*, Dkt. No. 841 at 2.) But that only assumes what the government must prove and cannot justify excluding this evidence.

This evidence also exposes precisely why *United States v. Brandon* is not, as the government contends, "instructive." *Id.* at 2. Evidence of university admission practices provides the very foundation for a common practice that was *lacking* in *Brandon*. It was the absence of such evidence in *Brandon* that justified the exclusion of purported evidence of common practice and custom there. 17 F.3d 409, 443-45 (1st Cir. 1994). The government's bald complaints about the parties' introduction of "voluminous documents concerning those other individuals, and call witnesses about a sideshow" (Dkt. No. 841 at 4) betray precisely why *Brandon* does not apply here.

Finally, the government itself has identified evidence concerning uncharged third parties on its proposed trial exhibit list. The government cannot both exploit this evidence to try to show wrongdoing yet preclude the Defendants from using similar evidence to show valid admissions

9

practices that prove a central element of the defense: Defendants' good faith and lack of fraudulent intent. *United States v. Josleyn*, 99 F.3d 1182, 1194 (1st Cir. 1996) (approvingly quoting jury instruction that "any evidence of [victim's] actions or omissions, or evidence of deficiencies in the manner in which it implemented and enforced its policies and procedures, may be considered by you to the extent that such evidence bears on the issue of whether or not [defendant] formed the required intent to commit the crimes with which he is charged.").

      3. Materiality of any misrepresentations. Even when considering donor applicants through Subco, USC marginalized, discounted, or was indifferent to candidates' actual athletic ability or academic credentials—a message communicated directly to Heinel and Vavic. This evidence contradicts the government's central contentions that alleged inaccuracies in the Singer student profiles were material to the schools' admissions decisions. *See, e.g.*, *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003-2004 (2016); Jury Trial Tr. Vol. XII, at 13-159 (Apr. 28, 2016) (ECF No. 513) in *United States v. DeNunzio*, No. 14-cr-10284-NMG (D. Mass.); *United States v. Williams*, 12 F.3d 452, 457 (5th Cir. 1994).

      **C. The Probative Value of Evidence of USC Admissions Practices Vastly Outweighs Any Purported Prejudice**

As set forth above, Defendants' evidence is particularly relevant to the issue of intent—*the central issue* at trial. In such circumstances, as the First Circuit has noted, "many courts have given the accused 'wide latitude' in the introduction of evidence which may tend to show a lack of willfulness or specific intent." *See, e.g.*, *United States v. Lussier*, 929 F.2d 25, 31 (1st Cir. 1991) (citing *United States v. Sternstein*, 596 F.2d 528, 530 (2d Cir. 1979)); *see also United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1999) ("[W]here the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent"). Notably, the government's Rule 403 arguments sidestep any actual

prejudice and focus instead on imagined trial presentation issues. For this reason alone, the Court should reject the government's arguments to exclude this evidence under Federal Rule of Evidence 403.

Further, contrary to the government's contention, the presentation of admissions-practice evidence that the government seeks to exclude will not devolve into "a series of extended mini-trials"—particularly because it will be proffered, in a tight and focused fashion, in direct response to the government's theory of culpability on the core elements. *Cf.* Dkt. No. 841 at 4. It also is not the case that the "parties would necessarily introduce voluminous documents concerning other individuals," as the government asserts. *Id*. at 4. The illustrative evidence that Defendants cite in their attached exhibits previews the efficiency with which Defendants each intends—respectively—to present this evidence at trial. And Defendants have various means by which they can—and will—streamline the presentation of their evidence.

### D. Even if this Evidence Were Hearsay—Which It Is Not—Multiple Exceptions Support the Admission of Evidence Concerning University Admissions Practices

The Court should also reject the government's sweeping, erroneous assertion that "much of" the subject evidence is inadmissible hearsay under Rule 802. Dkt. No. 841 at 5.

As a threshold matter, that is incorrect. It is well-established that "[o]ut-of-court statements are considered 'nonhearsay' when they are offered not for the truth of the matter but for some other purpose." *Franchina v. City of Providence*, 881 F.3d 32, 50 (1st Cir. 2018); *see also United States v. Murphy,* 193 F.3d 1, 5 (1st Cir. 1999) ("So long as out-of-court statements are not offered for their truth, they are not hearsay." (citation omitted)).

In particular, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted." 5 Weinstein's Federal Evidence

§ 801.11 (2021) (quoting original advisory committee note to Fed. R. Evid. 801).  Here, Defendants will seek the introduction of the at-issue evidence for purposes other than the truth of the statements that this evidence contains—for example, to establish the "fact that it was made," i.e. that person A sent an email with particular content to person B, regardless of whether that content was true or false. *See id*. The mere existence of the communication—i.e. the fact that this content was exchanged between person A and person B—goes to the core defense issue, i.e. proof of the formal and informal policies, customs and practices at USC, even if the information was itself mistaken or false.

Likewise, it is well-established that an out-of-court statement can permissibly be offered into evidence to show a general practice of behavior. *See Murphy*, 193 F.3d at 5 (allowing the introduction of the instructions given to [the detective] to falsify applications and withhold information because they were not offered for the truth of the matter asserted "but rather to show that the detectives gave such instructions").   Similarly, an out-of-court statement can be admitted to "show that the declarant had certain information, or entertained a specific belief, . . . or it might be offered to show the effect of the words spoken on the listener (*e.g.*, to supply a motive for the listener's action)." *Murphy*, 193 F.3d at 5 n.2.  Additionally, an out-of-court statement may be admissible as "circumstantial evidence of [the speaker's] state of mind at the time." *United States v. DeSimone*, 488 F.3d 561, 568-69 (1st Cir. 2007); *see also United States v. Ibisevic*, 675 F.3d 342, 349 (4th Cir. 2012) (holding that prior statement by the defendant was not hearsay because it was offered "merely to prove that [he] expressed [his] belief" ((alterations in original) (citation omitted)); *United States v. Gibson*, 675 F.2d 825, 834 (6th Cir. 1982) (explaining that statement heard by the defendant "could have been received properly on the issue of [the defendant's] belief or state of mind in consequence of the utterance").

In short, there are various non-hearsay purposes for this evidence—all of which make the government's request for categorical exclusion of the same wholly unfounded and improper.

Moreover, even if the hearsay rule is implicated with particular evidence, there are alternative grounds through which the Court may admit it. These include, but are not limited to, the following[5]:

*First*, this evidence is probative of Defendants' and USC's state of mind and proof of USC's custom and practice—which the rules of evidence expressly exempt from the rule against hearsay. Fed. R. Evid. 803(b)(3); *see also, e.g.*, *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1143 (10th Cir. 2006) (reasoning that out-of-court statements by employees have been held admissible in a discrimination case to "show an employer's state of mind in making employment decisions").

*Second*, certain documents may be business records of the central, day-to-day operations of USC's admissions process—the marketing and outreach to prospective applicants, including actual and nominal athletic recruits; fundraising; the evaluation of the various factors (including philanthropy) that routinely informed admissions decisions; and requests for input from individuals throughout the school about those factors. Fed. R. Evid. 803(b)(6); *see also, e.g.*, *Farnham v. Walmart Stores*, No. 1:13-cv-00305-JDL, 2015 U.S. Dist. LEXIS 88192, at *7-8 (D. Me. June 29, 2015) (admitting email under Fed. R. Evid. 803(6)).

*Third*, in certain select cases, USC's documents may constitute statements against interest—another exception to the rule against hearsay. Fed. R. Evid. 804(b)(3).

//

---

[5] Defendants request the opportunity to provide a more detailed explanation of relevance and admissibility if the Court intends to rule pre-trial on a document-by-document basis after the filing of their respective exhibit lists.

13

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the government's Motion *in Limine* to Preclude Irrelevant Evidence Concerning Uncharged Third Parties.

Dated:  October 19, 2021                         Respectfully submitted,


                                                  /s/   Nina Marino
                                                 NINA MARINO
                                                 JENNIFER LIESER
                                                 KAPLAN MARINO, P.C.
                                                 1546 N. Fairfax Avenue
                                                 Los Angeles, CA 90046
                                                 Telephone:  (310) 557-0007
                                                 marino@kaplanmarino.com
                                                 lieser@kaplanmarino.com
                                                 (Admitted *pro hac vice*)
                                                 Counsel for Dr. Donna Heinel

//

//

//

                      */s/ Stephen G. Larson*

Stephen G. Larson
slarson@larsonllp.com
(admitted *pro hac vice*)
Koren L. Bell
kbell@larsonllp.com
(admitted *pro hac vice*)
Paul A. Rigali
prigali@larsonllp.com
(admitted *pro hac vice*)
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Phone:  213-436-4888 - Fax: 213-623-2000

Irwin B. Schwartz (BBO #548763)
ischwartz@blaschwartz.com
Nicholas R. Cassie (BBO #672698)
ncassie@blaschwartz.com
BLA Schwartz, PC
One University Avenue, Suite 302B
Westwood, Massachusetts 02090
Phone: 781-636-5000 - Fax: 781-636-5090

Attorneys for Defendant JOVAN VAVIC

### CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 19, 2021.

                        */s/   Jennifer Lieser*
                        JENNIFER LIESER
                        Counsel for Dr. Donna Heinel