UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 1:19-cr-10081-IT |
| | * | |
| DONNA HEINEL and JOVAN VAVIC, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

October 25, 2021

TALWANI, D.J.

Before the court is Defendants Donna Heinel and Jovan Vavic's Joint Motion to Suppress "Consensual Wiretap" Recordings [#791]. For the following reasons, the Motion [#791] is DENIED.

I.      Relevant Background

Between June and August 2018, the court (Burroughs, D.J.) authorized the government to intercept wire and electronic communications over Rick Singer's telephone ending in 8802. Ex. E—Discovery Email 16 [#791-1].

On September 27, 2018, Singer signed a consent and acknowledgment form stating: "I consent to the interception and recording of any and all communications made by me over all telephones, cellular or otherwise, provided to or made available to me by law enforcement agents in connection with actions taken by me in connection with law enforcement agents." Ex. D— Consent & Acknowledgment 12 [#791-1].

On October 2, 2018, the government filed an application to seal the last set of recordings and to postpone the inventories. Ex. A—App. To Seal 2 [#791-1]. The application stated that

"monitoring of TARGET TELEPHONE 1 [with call number ending in 8802] began on August 30, 2018 and ceased at midnight of September 27, 2018," and requested that the DVDs of the intercepted calls be subject to the court's sealing order. Id. at 2-3. The application noted that "[t]he government's investigation of this matter continues in that SINGER is now cooperating with investigators and he is placing consensual calls to various target subjects." Id. at 4. The application therefore requested that the court postpone notification to the individuals recorded under the court order so as not to alert them to the ongoing investigation. Id. The court granted the application, sealed the DVD disks, and postponed notification. Order Sealing Recordings 5 [#903-1].

On August 17, 2021, the government filed a Notice and Motion Regarding Authentication of these same recordings in United States v. Abdelaziz, No. 19-CR-10080 (D. Mass. Aug. 17, 2021) ECF No. 2099. The notice included a Certification in Support of Authenticity of Business Records and Other Evidence, which stated that the "authorized surveillance in this case includes those collections performed through the assistance of a wireless telecommunications provider" and that "[t]he sessions present in the collection system span the date range of 06/05/2018 – 03/14/2019." Ex. A—King Aff., United States v. Abdelaziz, No. 19-CR-10080 (D. Mass. Aug. 17, 2021) ECF No. 2099-1.

Defendants filed the pending motion on September 2, 2021, claiming that "the government violated the Electronic Communications Privacy Act . . . by enlisting the *carrier* to monitor the government's lead cooperator, Rick Singer's, phone for nearly five months *after the court order authorizing the carrier's wiretap expired*." Mot. to Suppress 5 [#791] (emphasis added). Following a hearing on October 4, 2021, Elec. Clerk's Notes [#833], the court offered

the government an opportunity to supplement its assertion that Singer's written consent was

provided to AT&T before the consensual interceptions took place, Order [#884].

In response, the government submitted a Declaration from FBI Special Agent Laura

Smith, stating that Singer signed the consent form on September 27, 2018, and that she had

forwarded to FBI technical operations that consent form and a September 20, 2018 form letter to

AT&T. Smith Decl. 1 [#885-1]. Attached to the Declaration is a copy of FBI records that Special

Agent Smith understood to have been faxed to AT&T on September 28, 2021 (labeled Exhibit

A) and a confirmation page from AT&T (labeled Exhibit B). Id.; Ex. A—Fax to AT&T 3-7

[#885-1]; Ex. B— AT&T Response [#885-1]. The first page of Exhibit A, entitled "AT&T

Wireless Carrier Request Form," is dated September 28, 2018, and states that (1) the "Legal

Authority" for the requested interceptions is "consensual monitoring"; (2) the "Court Order /

Docket Number" is "Consent ELA 13"; (3) the "Date / Time Signed" is "09/27/2018 12:00 AM

EST"; and (4) the "Judge's Name" is "AUSA Eric Rosen." Ex. A—Fax to AT&T 4 [#885-1]. In

addition, the following note is included in the "Remarks / Special Instructions" field: "Existing

Court ordered intercept being converted to Consensual intercept (effective 9/27 – 12/26/2018).

This is a renewal. See attached for authorized contacts." Id. The next three pages of these records

are (1) the September 20, 2018 form letter seeking AT&T's assistance; (2) Singer's signed

consent of September 27, 2018; and (3) a list of authorized FBI contacts. Id. at 5-6. Exhibit B,

entitled "Response Cover Sheet," is on AT&T letterhead and states that the request was received

on September 28, 2018, and that "AT&T has calculated the end date of your request as:

12/26/2018 11:45:00 PM." Ex. B—AT&T Response 9 [#885-1].

Defendant Vavic responded that the government's submission demonstrated that Singer's

consent was effective, at best, through December 26, 2018. Vavic Resp. 2-3 [#903]. The

government thereafter filed a form letter addressed to AT&T dated December 17, 2018, along with a consent form signed by Singer on December 20, 2018. Ex. A—Letters & Consents 3-4 [#892-1].

## II.   Discussion

### A.   *Timeliness*

Under the court's scheduling order, the deadline for motions to suppress was August 16, 2021. Proposed Briefing Schedule [#747]; Elec. Order [#751]. Federal Rule of Criminal Procedure 12(c) states that "[t]he court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion"—including motions to suppress—"the motion is untimely." Fed. R. Crim. P. 12(c)(3). A court may consider an untimely motion only if the moving party shows good cause. Id.

Defendants argue there is cause for their late-filed motion where they had been unaware until August 17, 2021, that Singer's telecom provider, AT&T, had continued monitoring Singer's phone calls after September 27, 2018. Mot. to Suppress 5 [#791]. The government responds that Defendants have been aware of all pertinent facts underlying their motion since April 25, 2019, when the government "explicitly told the defendants that the discovery included 'wiretap and consensual recordings' and 'consent forms signed by Singer.'" Gov't Opp. 1 [#807]. The government asserts further that its March 13, 2020 letter explained the "the history of the wiretap and consensual recordings in this case." Id. (citing Ex. E—Discovery Letter 16 [#791-1]). However, the government's discovery letter never suggests that the referenced "consensual recordings" were facilitated by AT&T. Where the government did not provide this information

to Defendants, Defendants first learned of this information from the government's August 17, 2021 filing in United States v. Abdelaziz, No. 19-CR-10080, and Defendants filed their motion less than three weeks later, the court finds good cause for Defendants not meeting the deadline for such motions.

        B.     *Suppression*

        1.       Applicability of Title III

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510 *et seq*., "prohibits the interception of telephone conversations, subject to certain exceptions, without a court order." United States v. Lewis, 406 F.3d 11, 14 (1st Cir. 2005) (citing 18 U.S.C. §§ 2511, 2518). Violation of Title III exposes the person or entity that engaged in the violation to criminal and civil liability. See 18 U.S.C. §§ 2511(4)-(5), 2520. In addition, the statute provides that telephone communications intercepted in violation of Title III may not "be received in evidence in any trial." 18 U.S.C. § 2515; see also United States v. Lanoue, 71 F.3d 966, 981 (1st Cir. 1995), abrogated on other grounds by United States v. Watts, 519 U.S. 148 (1997).[1]

Defendants argue that the calls recorded after September 27, 2018, must be suppressed because the government informed the court that monitoring "had ceased at midnight of September 27, 2018," and did not obtain court authorization to permit AT&T to continue to

---

[1] This statutory suppression remedy is distinct from and in addition to Fourth Amendment protection. See United States v. Vest, 813 F.2d 477, 482 (1st Cir. 1987) ("we believe that if Congress had intended to commit to the courts general authority to create exceptions to section 2515 in the same manner as the court might develop future exceptions to the [F]ourth [A]mendment exclusionary rule, Congress could certainly have said so more clearly"); United States v. Amanuel, 615 F.3d 117, 125 (2d Cir. 2010) (Title III provide remedy of suppression for violations of that do not amount to constitutional violations).

monitor Singer's phone thereafter. Mot. to Suppress 5-6 [#791] (quoting App. to Seal 3 [#791-

1]). Specifically, they claim that AT&T's provision of technical assistance to law enforcement

needed to meet the requirements of 18 U.S.C. § 2511(2)(a)(ii). Id. at 10-11. As relevant here, that

section authorizes "providers of wire or electronic communication service" to furnish "technical

assistance to persons authorized by law to intercept wire, oral, or electronic communications" if

the provider has been provided with either (1) a court order directing such assistance or (2) a

certification in writing from the Attorney General "that no warrant or court order is required by

law, that all statutory requirements have been met, and that the specified assistance is required."

18 U.S.C. § 2511(2)(a)(ii).

It is not disputed that, after advising the court that monitoring had ceased on September

27, 2018, the government did not seek a further court order authorizing AT&T's continued

monitoring of Singer's phone. Nor is there any dispute that the government did not provide to

AT&T a written certification from the Attorney General. Defendants argue that where the

government failed to comply with section 2511(2)(a)(ii), AT&T was therefore not authorized to

assist law enforcement and that the "consensual wiretaps" must be suppressed. Mot. to Suppress

11 [#791].

The government counters that Title III does not require a court order or certification from

the Attorney General for consensually intercepted calls. Gov't Opp. 6-14 [#807]. It points to the

consent exceptions to Title III's requirements, which state:

> (c) It shall not be unlawful under this chapter for a person acting under color of law to
> intercept a wire, oral, or electronic communication, where such person is a party to the
> communication or one of the parties to the communication has given prior consent to
> such interception.
>
> (d) It shall not be unlawful under this chapter for a person not acting under color of law to
> intercept a wire, oral, or electronic communication where such person is a party to the
> communication or where one of the parties to the communication has given prior consent

to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(c)-(d). The government also notes the "parallel exception" for electronic communications, which states that "an entity providing electronic communication service to the public may divulge the content of any such communication . . . with the lawful consent of the originator or any addressee or intended recipient of such communication." 18 U.S.C. § 2511(3)(b). The government argues that because Singer consented "to the interception and recording of any and all communications made by [him] over all telephones, cellular or otherwise, provided to or made available to [him] by law enforcement agents," a consent exception applies to AT&T's disclosure to law enforcement of Singer's calls. Gov't Opp. 6-14 [#807].

In response, Defendants argue that section 2511(2)(c) permits law enforcement and confidential informants to use "traditional methods of interception—such as government phones, tape recording devices, and tape recording software"—but not to enlist a carrier to provide technical assistance. Mot. to Suppress 13 [#791].

Sections 2511(2)(c) and (d) do not contain the limitation urged by Defendants. Assuming Singer's ongoing consent, the government was authorized to intercept Singer's calls pursuant to section 2511(2)(c), while AT&T was so authorized under section 2511(2)(d). And if the interceptions do not violate section 2511(1)(a)'s prohibitions on interceptions because Singer consented, the disclosure of the communications by AT&T to law enforcement is also not prohibited by the statute. See 18 U.S.C. § 2511(1)(c) (prohibiting intentional disclosure of communications obtained through interceptions in violation of section 2511(1)).

Defendants argue that this reading ignores the language and legislative history of section 2511(2)(a)(ii), which Defendants contend requires that "providers are *only* authorized to assist law enforcement in monitoring phone lines where they receive either a court order or written certification." Mot. to Suppress 15 [#791]. But the language of section 2511(2)(a)(ii) does not purport to limit consensual interceptions permitted under sections 2511(c) or (d). Instead, the subsection begins "[n]otwithstanding any other law, providers . . . are authorized to provide information, facilities, or technical assistance  .  .  ." and then sets the alternatives of a court order or appropriate certification. Id. If the provider has not been given such an order or certificate, the providers' interceptions that violate such other laws are unlawful, and *the provider facilitating the interceptions does so at its own peril*. In other words, the subsection serves as a safe haven for providers but not as an additional requirement for a consensual interception permitted under sections 2511(c) and (d).

> Defendants point to a House Report stating, *inter alia*, that:
>
> [r]equiring the court order or certification to be presented before the assistance is rendered . . . . places an additional obstacle in the path of unauthorized surveillance activity. . . . The . . . provision is intended to hold harmless the phone company and others so long as the assistance is in accordance with the terms of the order or certification.

Id. at 14 (quoting H.R. Rep. No. 95-1283, pt. 1, at 98-99 (1978)) (emphasis omitted). But this language only underscores that the subsection was intended to place an "obstacle in the path of *unauthorized* surveillance activity" and to provide a mechanism for a "safe harbor" to ensure the providers' assistance. Indeed, elsewhere, the same report explains that:

> Section 2511(2)(a)(ii) was added to chapter 119 in 1970 in response to the telephone company's refusal to provide assistance to officers engaged in court ordered wiretaps on the theory that such assistance would constitute a violation of the Communications Act of 1934 and chapter 119.

H.R. Rep. No. 95-1283, pt. 1, at 99.[2]

Defendants finally make a policy argument, pointing to the "enormous difference between traditional methods of consensual recording and a so-called 'consensual wiretap,'" where the latter requires no minimization procedures and runs the risk that recordings will continue even if the informant revokes consent. Mot. to Suppress 15 [#791]. But Defendants do not suggest that this policy argument was even considered by Congress.

Given the clear language of the statute and the legislative history, the court concludes that 18 U.S.C. § 2511(2)(a)(ii) does not override the consent provisions set forth at sections 2511(c) or (d).[3] Accordingly, for those periods after authorization pursuant to the court-ordered wiretap had ceased and during which AT&T had a valid consent (that had not been withdrawn), AT&T's facilitation of the interceptions of Singer's communications does not warrant a suppression order. [4]

---

[2] As one treatise has elaborated, the legislation also followed a court decision holding that in the absence of a specific statutory provision conferring authority upon the district courts to compel phone company cooperation, such authority could not be inferred from Title III generally, and the phone company could refuse to cooperate. 1 Law of Electronic Surveillance § 4:76 (citing Application of U.S. for Relief, 427 F.2d 639, 643 (9th Cir. 1970)).

[3] At the same time, it should be noted that companies voluntarily providing assistance without an order or certificate do not have the benefit of 18 U.S.C. § 2511(2)(a)(ii)'s "hold harmless" provision and do so at their own peril. If, under such an arrangement, the consenting party were to withdraw that consent, a company providing ongoing assistance may well be found to have unlawfully intercepted or disclosed a communication. To the extent that companies therefore refuse to voluntarily provide assistance with consensual recording, law enforcement may be able to compel such assistance (and provide a safe harbor) by following the certification procedure under 18 U.S.C. § 2511(2)(a)(ii)(B). At least one court has also found appropriate the procedures for a warrant under Federal Rule of Civil Procedure 41(d). See In re U.S. for an Ord. Directing a Provider of Commc'n Servs. to Provide Tech. Assistance to Agents of the U.S. Drug Enf't Admin., 128 F. Supp. 3d 478, 484 (D.P.R. 2015).

[4] The government insists that the court's authorization "did not expire until September 29, 2018." Opp. 1 [#892]; see also Ex. E—Discovery Letter 16 [#791-1] ("the telephone was intercepted pursuant to a court-ordered wiretap between June 5, 2018 and September 29, 2018"). Although the court's order initially allowed interceptions through September 29, 2018, the court finds that

2.      Singer's Consent

Given this conclusion, the admissibility of the intercepted communications after midnight on September 27, 2018, turns on whether Singer consented, and at no point withdrew his consent, to the interceptions. Defendants claim that Singer did not consent to the interceptions because the consent form allowed law enforcement to monitor any phone "provided to or made available to [him] by law enforcement agents." Mot. to Suppress 18 [#791]. This language, they argue, does not encompass Singer's use of his personal cell phone. Id. at 18-19. The government counters that Singer's cell phone was "made available" to him within the language of the consent form and that his consent to permit the interceptions was unambiguous under the circumstances. Gov't Mem. 12-13 [#807].

At this point, the evidence before the court is as follows. On September 27, 2018, Singer signed a consent form authorizing law enforcement to monitor "all telephones, cellular or otherwise, provided to or made available to [him] by law enforcement agents in connection with actions taken by [him] in connection with law enforcement agents." Ex. A—Fax to AT&T 6 [#885-1]. This consent form was sent to AT&T, along with a form letter, at an undisclosed time on September 28, 2018, and AT&T then advised law enforcement that it had calculated the end date of the request as December 26, 2018, at 11:45 p.m. Ex. A—Fax to AT&T 3-7 [#885-1]; Ex. B—AT&T Response 9 [#885-1]. Singer signed a further consent form on December 20, 2018. Ex. A—Letters & Consents 3-4 [#892-1]. There is no evidence before the court as to whether

_____

permission ceased at midnight September 27, 2018, where government counsel represented to the court in a written filing that interceptions under the court's order "ceased at midnight of September 27, 2018." Ex. A—App. To Seal 3 [#791-1]. The government has acted accordingly, and to this court's knowledge, did not seek to seal the recordings from September 28, 2018, as part of the court-ordered interception.

this second consent form was sent to AT&T. In addition, neither of Singer's consents are time-limited, and the court has no way of knowing from this record whether either was ever withdrawn. This is of particular importance where there is evidence that, during the period in which the government monitored Singer's phone, Singer (1) kept contemporaneous notes claiming that the government had strong-armed him and instructed him to lie to targets of government investigation, and (2) was actively obstructing the government's investigation. See Ex. A—Singer iPhone Notes & Ex. HH—10/20/2018 FBI Report, United States v. Abdelaziz, No. 19-CR-10080 (D. Mass. D. Mass. Mar. 25, 2020) ECF No. 972-1 & 972-34. So, although suppression is not warranted based on the record before the court, given the uncertainty as to when on September 28, 2018, the consent form was provided to AT&T, and whether Singer ever (or intermittently) withdrew his consent, the government will have the burden of demonstrating that Singer consented (and AT&T was so notified) and did not withdraw his consent for those time periods relevant to each of the communications the government seeks to offer as evidence before such communications may be admitted at trial.

**III.    Conclusion**

For the forgoing reasons, Defendants' Joint Motion to Suppress "Consensual Wiretap" Recordings [#791 is DENIED.

IT IS SO ORDERED.

October 25, 2021                                              /s/ Indira Talwani
                                                             United States District Judge