UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOVAN VAVIC,<br><br>Defendant | No. 19-cr-10081-IT |

### GOVERNMENT'S MOTION FOR PRE-TRIAL
### RULING REGARDING CONSENSUAL RECORDINGS

The government respectfully moves, in light of the Court's Memorandum and Order of October 25, 2021, for a pre-trial determination that phone calls to or from William "Rick" Singer's phone ending in -8802 during the period September 27, 2018 to March 11, 2019 were validly recorded with Singer's consent. The government intends to offer a limited number of such calls during trial, including a January 2, 2019 call between Singer and the defendant.[1]

**I.   RELEVANT BACKGROUND**

As part of its October 25 Order denying the defense motion to suppress the consensual recordings in this case, the Court suggested that there was "uncertainty" about when on September 28, 2018 a consent form Singer signed the prior day was provided to AT&T, as well as about "whether Singer ever (or intermittently) withdrew his consent." Dkt. 939 at 10–11. The Court noted that it had "no way of knowing" from the record before it whether Singer's consent to the

---

[1] Although the government is still finalizing its exhibit list, it currently anticipates offering fewer than five such consensual calls. The government has proposed to the defense a joint stipulation concerning the authenticity, but not admissibility, of calls intercepted pursuant to the Court-authorized and consensual wiretaps of Singer's phone. In the absence of a stipulation, the government will file a separate motion seeking pre-trial authentication of the calls pursuant to Fed. R. Evid. 902. *See, e.g.*, *United States v. Abdelaziz*, 19-cr-10080-NMG, Dkt. 2211 at 2–3 (granting pre-trial motion concerning authenticity of calls and data intercepted pursuant to Court-authorized and consensual wiretaps).

interception of his calls "was ever withdrawn" and that this was "of particular importance where there is evidence that, during the period in which the government monitored Singer's phone, Singer (1) kept contemporaneous notes claiming that the government had strong-armed him and instructed him to lie to targets of government investigation, and (2) was actively obstructing the government's investigation." *Id.* at 11.  Accordingly, the Court held that "the government will have the burden of demonstrating that Singer consented (and AT&T was so notified) and did not withdraw his consent for those time periods relevant to each of the communications the government seeks to offer as evidence before such communications may be admitted at trial." *Id*.

The government has, by separate filing, provided the Court with evidence about when the FBI provided the September 2018 consent form, and a second consent form that Singer signed in December 2018, to AT&T.  *See* Dkt. 885-1 and 969-1.  For the reasons set forth below and in its prior filings, and based on the attached affidavits from Singer and his attorney, the government respectfully submits that there is sufficient evidence from which the Court can conclude that Singer did not at any time withdraw his consent prior to the termination of the consensual wiretap in March 2019.  Accordingly, the government respectfully requests that the Court now find that Singer's calls during this period were validly recorded pursuant to his express and implied consent. The government submits that this finding should be made in advance of trial to ensure the orderly flow of the proceedings and because consent for the purposes of Title III is not a jury question. Moreover, once a jury is empaneled and jeopardy has attached, the government will not have a viable right to appeal any adverse finding—a result that is particularly significant in light of the fact that exclusion of these recordings would effectively require the dismissal of Count Sixteen of the Second Superseding Indictment, which arises out of Singer's call with the defendant on January 2, 2019.

## II.     LEGAL FRAMEWORK

Title III permits the interception of electronic communications with consent of one of the parties to those communications. 18 U.S.C. § 2511(2)(c). It is "settled law in the First Circuit and elsewhere that Title III affords safe harbor" for both "explicit consent" and "implied consent." *Gilday v. Dubois*, 124 F.3d 277, 297 (1st Cir. 1997) (collecting cases). "The consent exemption under Title III is construed broadly." *Id.* at 296. The First Circuit has found explicit consent unambiguous, for example, where a person signed a form indicating that he understood any use of his telephone, aside from calling an attorney, would be subject to monitoring. *United States v. Footman*, 215 F.3d 145, 154–55 (1st Cir. 2000). Likewise, other courts of appeals have held that an informant or cooperator's signing of a consent form is more than sufficient to establish that a recording was consensual. *See, e.g.*, *United States v. Sempf*, 649 F. App'x 270, 272 (3d Cir. 2016) (finding informant's consent to recordings where she "signed a written consent form stating that her consent was voluntary"); *United States v. Yu Sung Park*, 473 F. App'x 706, 707 (9th Cir. 2012) (same); *United States v. Oslund*, 453 F.3d 1048, 1056 (8th Cir. 2006) (same); *United States v. Cruz*, 111 F.3d 129, 1997 WL 196035, at *3 (4th Cir. 1997) (same); *United States v. McGee*, 29 F.3d 625, 1994 WL 395111, at *1–2 (5th Cir. 1994) (same); *United States v. Byrom*, 910 F.2d 725, 734 n.9 (11th Cir. 1990) (same).

Similarly, the First Circuit has found such explicit consent where a law enforcement "agent [] testified that [non-testifying recording party] was a Government informer and that she had consented." *United States v. Gladney*, 563 F.2d 491, 493 (1st Cir. 1977) (noting that defendant "wisely" abandoned the argument that evidence of consent was insufficient); *see also United States v. Bonanno*, 487 F.2d 654, 658–59 (2d Cir. 1973) (finding consent of non-testifying informant based on agent testimony); *United States v. Rangel*, 488 F.2d 871, 872 (5th Cir. 1974).

In addition to explicit consent, the First Circuit has held that implied consent is sufficient: "In the Title III milieu as in other settings, consent inheres where a person's behavior manifests acquiescence or a comparable voluntary diminution of his or her otherwise protected rights." *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990); *United States v. Roy*, 349 F. Supp. 2d 60, 63 (D. Mass. 2003) (finding implied consent when a prisoner made calls after being advised that calls were subject to monitoring and recording). In *Griggs-Ryan*, for example, the court held that a finding of "implied consent" was "inevitable" where the person whose calls were intercepted "had been unmistakably warned on a number of occasions that all incoming calls were being monitored." 904 F.2d at 118; *see also United States v. Font-Ramirez*, 944 F.2d 42, 47 (1st Cir. 1991) ("no question" regarding consent where cooperator agreed to carry tape recorder during conversation with defendant). Other courts of appeal have similarly held that the making of a phone call while on notice that the call would be recorded demonstrates implied consent. *See*, *e.g.*, *United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003) ("When someone voluntarily participates in a telephone conversation knowing that the call is being intercepted, this conduct supports a finding of implied consent to the interception."); *Bonanno*, 487 F.2d at 658–59 ("[I]t will normally suffice for the Government to show that the informer went ahead with a call after knowing what the law enforcement officers were about."); *United States v. Fuentes*, 563 F.2d 527, 533 (2d Cir. 1977) (same); *United States v. Davis*, 799 F.2d 1490, 1492 (11th Cir. 1986) (explaining that consent can be shown "by showing that an informant placed the telephone call knowing that the call would be recorded.").

As Judge Friendly explained several decades ago, a finding of an informant or cooperator's consent to a recording—which is a question for the Court and not the jury—implicates a lower standard of proof than consent to a physical search:

> In cases involving physical search, the person alleged to have consented is doing something apparently contrary to his own interests or to those of another who often is in some way connected with him. An informer's consent to the monitoring or recording of a telephone conversation is an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant consequences to him. *Hence, it will normally suffice for the Government to show that the informer went ahead with a call after knowing what the law enforcement officers were about.*

*Bonanno*, 487 F.2d at 658–59 (emphasis added); *accord United States v. Glickman*, 604 F.2d 625, 633–34 (9th Cir. 1979) ("The extent of proof required to show that an informer consented to the monitoring or recording of a conversation is considerably less stringent than that needed to show consent to a physical search."); *Fuentes*, 563 F.2d at 533 (same).

### III. DISCUSSION

Beginning on September 27, 2018, when he signed a form consenting to the interception of his calls in the presence of his attorney, Singer consented to the interception of calls over his personal cell phone both expressly and impliedly. He did not at any time withdraw his consent prior to the conclusion of the consensual wiretap in March 2019.

As an initial matter, Singer and his attorney signed a consent form on September 27, 2018. Dkt. 969-1, Ex. A at 2. After receiving the consent form, AT&T regarded the first consent as valid for a period of 90 days, until December 26, 2018. Dkt. 885-1 at Ex. B. Accordingly, Singer signed a second form on December 20, 2018. Dkt. 969-1, Ex. A at 4. After receiving the second consent form, AT&T regarded it as valid until March 17, 2019. Dkt. 969-1, Ex. E at 2. As the Court has already noted, these forms reflected Singer's consent to the interception of his calls, and his consent was not time limited. Dkt. 939 at 10–11.

Singer repeatedly made and received calls on the phone that he knew was being recorded. The limited number of consensual calls that the government seeks to introduce are among those calls. The government expects that at trial, a law enforcement agent will testify about the timing

5

of the calls, the fact that they were intercepted over the consensual wiretap, and any directions agents gave Singer concerning what to say. As the government has previously noted, it will not offer Singer's statements on the consensual calls for their truth, but merely as context for the defendant's admissions or the statements of co-conspirators, consistent with well-established First Circuit precedent.[2]

In its Order, the Court suggested that Singer's statements in notes taken on or about October 4, 2018 raise the question whether he at any time withdrew his consent, intermittently or otherwise. Dkt. 939 at 11. In those notes, however, Singer made no statements suggesting that he has unaware of, or did not consent to, the recording of his calls. To the contrary, he complained about directions he received from law enforcement agents to use certain language on the recorded calls, and he noted that he "asked for a script" based on those concerns. Notably, that portion of the notes refers exclusively to Singer's parent co-conspirators, *not* to the defendant.

In any event, to address the Court's concerns, attached hereto are sworn affidavits of Singer and his attorney confirming that Singer did not at any time withdraw his consent to the interceptions. *See* Exhibits 1 and 2. Accordingly, the Court now has before it unambiguous

---

[2] *See, e.g.*, *United States v. Walter*, 434 F.3d 30, 35 (1st Cir. 2006) (affirming the admission of non-testifying informant's statements on recordings "as reciprocal and integrated utterances to put [the defendant's] statements into perspective and make them intelligible to the jury and recognizable as admissions"); *accord United States v. Perez-Vasquez*, 6 F.4th 180, 197 (1st Cir. 2021) (explaining that statements by a non-testifying cooperating witness on a recording to provide context for a defendant's admissions and other co-conspirator statements are not offered for the truth of the matter asserted, and therefore admitting recordings); *United States v. Sandoval*, 6 F.4th 63, 94–95 (1st Cir. 2021) (affirming admission of recordings made by the same non-testifying cooperating witness because his statements "can fairly be characterized as putting the conversation into context – that is, putting the defendants' statements into the full context of the conversation so that their inculpatory nature could be properly understood"); *United States v. Liriano*, 761 F.3d 131, 136–37 (1st Cir. 2014) (affirming the admission of non-testifying cooperator's statements during recording that "provided context for [the defendant's] response").

evidence of Singer's express consent, in the form of his two signed consent forms and the attached affidavits of Singer and his attorney. The Court also has before it evidence of his implied consent, in the form of the numerous calls Singer made over the phone at the direction of federal agents, while on notice that the calls were being recorded. Those repeated calls, while Singer knew that law enforcement was monitoring and recording them, provide additional conclusive evidence of his continued consent to the interceptions. *See Griggs-Ryan*, 904 F.2d at 118 (finding consent "manifest" when person received warning that calls would be recorded); *id*. at 119 ("Having persisted in using [the] telephone to converse with callers in the face of unambiguous, unqualified notice that every incoming call would be monitored, [] consent necessarily encompassed every portion of every call . . . on [the] line."); *see also United States v. McDowell*, 918 F.2d 1004, 1006 (1st Cir. 1990) (holding that it was "beyond cavil" that a party consented when at officers' request, he agreed to make calls that were monitored and recorded).

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court make a pre-trial determination that Singer's phone calls to or from his phone ending in -8802 during the period from September 27, 2018 to March 11, 2019 were validly recorded with Singer's consent. The government intends to offer a limited number of such calls during trial, including a January 2, 2019 call between Singer and the defendant.

                                                                              Respectfully submitted,

                                                                              RACHAEL S. ROLLINS
                                                                              United States Attorney

                            By:    /s/ *Ian J. Stearns*
                                          LESLIE A. WRIGHT
                                          STEPHEN E. FRANK
                                          IAN J. STEARNS
                                          Assistant United States Attorneys

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that the government conferred with counsel for the defendant pursuant to Local Rule 7.1(a)(2) regarding the relief requested in this motion, and that the defendant does not assent.

/s/ *Ian J. Stearns*
IAN J. STEARNS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Ian J. Stearns*
IAN J. STEARNS
Assistant United States Attorney