UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 1:19-cr-10081-IT |
| | * | |
| JOVAN VAVIC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

January 31, 2022

TALWANI, D.J.

Before the court is Defendant Jovan Vavic's Motion to Dismiss or Suppress "Consensual" Wiretap Recordings Based on a Course of Government Misconduct [#901]. For the following reasons, the motion is DENIED, but further disclosure is ordered as set forth below.

I.      Relevant Background

The court previously reviewed the background to this dispute in its Memorandum and Order [#939] denying the Joint Motion to Suppress "Consensual Wiretap" Recordings [#791]. Between June and September 2018, the court authorized the government to intercept wire and electronic communications over TARGET TELEPHONE 1, namely, Rick Singer's telephone ending in 8802. Mem. & Order 1 [#939]. On September 27, 2018, Singer signed a consent and acknowledgment form "consent[ing] to the interception and recording of any and all communications made by me over all telephones . . . provided to or made available to me by law enforcement agents . . ." Consent & Acknowledgement [#791-1]. On October 2, 2018, the government filed an application to seal the last set of recordings, stating that "[t]he monitoring of

TARGET TELEPHONE 1 began on August 30, 2018 and *ceased at midnight of September 27, 2018*." Mem. & Order 2 [#939] (quoting Order Sealing Recordings 5 [#903-1]) (emphasis added). Although the application reported that "SINGER is now cooperating with investigators and he is placing consensual calls to various target subjects," id., it did not report that the carrier's monitoring of the calls was continuing.

The government reports that its April 25, 2019 letter informed Vavic that "the discovery included 'wiretap and consensual recordings' and 'consent forms signed by Singer,'" and that copies of Singer's consent forms and the government's letters to AT&T were provided to Vavic at that time. Gov't Opp. to Mot. to Suppress 1 [#807]; Gov't Opp. to Mot. for Leave to File Resp. 1 [#892]. In a March 13, 2020 letter, the government stated that the telephone ending in 8802 "was intercepted pursuant to a court-ordered wiretap between June 5, 2018 and September 29, 2018," and that "[b]etween September 27, 2018 and March 11, 2019, calls made to and from this telephone were consensually recorded." Letter 16 [#791-1]. From the material presented to the court, however, it appears that the government did not specifically disclose that AT&T agreed to intercept these calls or that the "consensually recorded" calls had been intercepted by the carrier and not directly by Singer or law enforcement.

On August 17, 2021, the government filed a notice in United States v. Abdelaziz, No. 19-CR-10080 (D. Mass. Aug. 17, 2021) ECF No. 2099, which stated that the "authorized surveillance in this case includes those collections performed through the assistance of a wireless telecommunications provider" and that "[t]he sessions present in the collection system span the date range of 06/05/2018 – 03/14/2019." Vavic and co-defendant Donna Heinel then filed the Joint Motion to Suppress "Consensual Wiretap" Recordings [#791], which argued that the government had violated the Electronic Communications Privacy Act by enlisting AT&T to

2

conduct surveillance for over four months after the expiration of the court-authorized wiretap. Joint. Mot. to Suppress [#791].

The government responded in part by arguing that the motion was untimely. Gov't Opp. to Mot. to Suppress 1 [#807]. The government stated further that it had provided Singer's signed consent form from September 27, 2018, "to Singer's phone provider, AT&T," together with a letter from government counsel that was "inadvertently dated September 20, 2018." Id. at 2-3. The government also asserted that "the consensual interceptions did not begin until after AT&T received the consent form." Id. at 3.

Following a hearing on October 4, 2021, Vavic's counsel wrote to government counsel requesting, in connection with the pending motion, "production of all communications, memoranda, emails, logs and/or notes of phone conversations between [government counsel] and AT&T surrounding the consensual recording of William Rick Singer's cellphone . . . beginning on or about September 27, 2018." Letter 3 [#902-1]. On October 11, 2021, government counsel responded by email that "[t]he government is not aware of any materials corresponding to your request[.]" Email 8 [#902-1]. Government counsel's email purported to narrow that request to "records of phone conversations between the United States Attorney's Office and AT&T surrounding the consensual recording of Singer's phone beginning on or about September 27, 2018," while at the same time asserting that "the defendants possess the pertinent communication between AT&T and the government[.]" Id. Counsel for co-defendant Heinel pressed further that the request "encompassed production of all communications, memoranda, **emails,** logs and/or notes of phone conversations," and asked for confirmation that the government has "no other responsive materials." Email 11 [#902-1] (emphasis in original). In reply, government counsel reiterated: "You possess the communications between the USAO-MA and AT&T regarding the

3

consensual wire in this case in September 2018" but did not confirm that the government had no other responsive material. Email 11 [#902-1].

On October 13, 2021, the court entered an order inviting the government to supplement the record to support its assertion that Singer's written consent was provided to AT&T before the recordings took place. Order [#884]. The following day, the government filed a declaration from Special Agent Laura Smith and additional documents. The declaration reported that Special Agent Smith had forwarded the September 20 letter,[1] along with the September 27 consent form to the FBI Field Office in Boston and that the forms were sent by fax to AT&T on September 28, 2018. Decl. ¶¶ 4-5 [#885-1]. Attached to the declaration were documents including (1) the "AT&T Wireless Carrier Request Form," dated September 28, 2018, requesting AT&T's continued monitoring of Singer's phone based on his consent, and attaching, among other things, Singer's September 27, 2018 consent; and (2) the "AT&T Response Cover Sheet," confirming AT&T's receipt of that request on September 28, 2018, and noting that AT&T had calculated the end date of the request as December 26, 2018. Fax to AT&T 3-7 [#885-1]; AT&T Response 9 [#885-1]. In response to Vavic's argument that these submissions demonstrated AT&T's interception based on Singer's consent only from September 28, 2018, through December 26, 2018, the government then submitted additional documents and consent forms signed by Singer purporting to extend Singer's consent to government monitoring of his cellphone by AT&T. Letters & Consents 3-4 [#892-1]

---

[1] Special Agent Smith did not adopt government counsel's assertion that the September 20, 2018 date on the letter was "inadvertent," but stated instead that she understood the letter to be "a form letter that was developed by AT&T and DOJ/FBI collaboratively" that had "been in place for approximately twenty years." Smith Decl. 1 [#885-1].

4

On October 25, 2021, the court denied the Joint Motion to Suppress "Consensual Wiretap" Recordings [#791]. Mem. & Order [#939]. Before doing so, however, the court declined to hear Vavic's arguments relating to the timing of the government's production of this material and allowed Vavic to raise these arguments in the Motion to Dismiss or Suppress Based on a Course of Government Misconduct [#901] now before the court. Elec. Order [#893].

**II.     Discussion**

Vavic argues that the government's failure to produce the AT&T Wireless Carrier Request Form and the AT&T Response Cover Sheet until after the court's October 13, 2021 order is so outrageous as to warrant dismissal of the indictment or, alternatively, suppression of the recordings made with Singer's ostensible consent. Def's Mem. 7 [#902]. Vavic also urges the court to sanction the government based on its continuing failure to comply with its discovery obligations. Id. at 12.

A.     *Duty to Disclose*

Vavic characterizes the government's conduct as a violation of its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Local Rule 116.2. Id. at 7-8. Under Brady, the government has a constitutional obligation to disclose "evidence favorable to an accused . . . [that] is material either to guilt or to punishment." 373 U.S. at 87. Local Rule 116.2, in turn, defines "exculpatory information" to include "information that tends to . . . cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731[.]" L.R. 116.2(a). The duty to disclose such material is "continuing," such that the government "is under a duty, when it learns that a prior disclosure was in some respect inaccurate or incomplete[,] to supplement promptly" any required disclosure. L.R. 116.7.

5

To the extent that the government did not disclose that the "consensual" recording of Singer's phone was conducted by AT&T's interception of these calls rather than by Singer or law enforcement officers' direct recordings of the calls, the better practice certainly would have been to disclose. The government's own letter to AT&T recognized potential legal concerns about carrier interceptions of consensual recordings that should have alerted the government that defendants whose calls were recorded after the court-authorized interception ended would seek to have the legal issues fully vetted. See Letter [#892-1] ("AT&T has been requiring prosecutors to obtain a court order before permitting consensual monitoring"). While this court ultimately agreed with the government that carrier interceptions with one-party consent were permissible, Vavic's argument was by no means frivolous, and disclosures would have allowed these issues to be addressed earlier in these proceedings.

Regardless, once the motion to suppress was filed and Vavic and Heinel explicitly requested "production of all communications, memoranda, emails, logs and/or notes of phone conversations between [government counsel] and AT&T surrounding the consensual recording of William Rick Singer's cellphone . . . beginning on or about September 27, 2018," the government should have promptly produced the documents, rather than insisting that the motion to suppress was untimely, that defense counsel somehow had limited their request to records relating to telephone calls, and that Vavic and the court should simply accept government counsel's summary of the facts.

B.     *Dismissal*

"In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct." United States v. Guzman, 282 F.3d 56, 59 (1st Cir. 2002). This power may be exercised only "when the government's misconduct is so

appalling and egregious as to violate due process by 'shocking the . . . universal sense of justice.'" United States v. Luisi, 482 F.3d 43, 59 (1st Cir. 2007) (quoting United States v. Russell, 411 U.S. 423, 432 (1973)). And because dismissal of an indictment is such an extreme remedy, a defendant seeking a dismissal on either constitutional or ethical grounds must prove actual prejudice. See Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988); United States v. Morrison, 449 U.S. 361, 365-66 (1981). Indeed, this relief is so exceptional that the court is unaware of any instances in which it has been granted in this circuit. See United States v. Anzalone, 923 F.3d 1, 6 (1st Cir. 2019).

Although, as set forth above, the government should have disclosed the information that eventually trickled out, Vavic has now obtained the evidence at issue, and the court fully considered his motion to suppress despite the government's objections that the motion to suppress was untimely. Accordingly, there is no actual prejudice to warrant dismissal of the indictment.

  C. *Suppression*

In the alternative, Vavic requests suppression of the recordings made with Singer's ostensible consent. The court declines to suppress the recordings but reiterates that the government will have the burden of demonstrating that Singer consented (and AT&T was so notified) and did not withdraw his consent for those time periods relevant to each of the communications the government seeks to offer as evidence before such communications may be admitted at trial. Mem. & Order 11 [#939].

  D. *Further Disclosure*

Although the court finds that Vavic is not entitled to his requested relief, the court is concerned as discussed above about the government's disclosure of information. Accordingly, to

ensure that there are no further surprises relating to the consensual recordings, the court is ordering the government to provide Vavic with the discovery requested, namely, the "production of all communications, memoranda, emails, logs and/or notes of phone conversations between [government counsel or FBI agents] and AT&T surrounding the consensual recording of William Rick Singer's cellphone" for the period beginning on or about September 27, 2018, through the present. See Letter 3 [#902-1]. All such information shall be provided to defense counsel no later than February 4, 2022. If all such information has already been provided, government counsel shall so confirm in writing.

### III.     Conclusion

For the forgoing reasons, Vavic's Motion to Dismiss or Suppress "Consensual" Wiretap Recordings Based on a Course of Government Misconduct [#901] is DENIED. The government shall provide the further disclosure or confirmation as set forth above.

IT IS SO ORDERED.

January 31, 2022                                          /s/ Indira Talwani
                                                          United States District Judge