UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-cr-10081-IT |
| ) | |
| JOVAN VAVIC, ) | |
| ) | |
| Defendant ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
EXCLUDE FALSE AND MISLEADING THEORIES OF CULPABILITY (DKT. 852)**

The government respectfully submits this response in opposition to defendant Jovan Vavic's motion *in limine* to preclude the government from offering evidence or argument relating to certain "theories of culpability" that Vavic asserts are "false and misleading." Dkt. 852 at 1. Contrary to Vavic's assertions, the evidence and argument he seeks to exclude is not false or misleading, but rather is relevant to and highly probative of the nature and scope of the charged conspiracies and Vavic's participation therein. For this reason, and those set forth below, the motion should be denied.

**BACKGROUND**

Vavic's motion, filed before the Court severed his trial from that of co-defendant Donna Heinel, *see* Dkt. 879, seeks to preclude the government from offering evidence or argument suggesting: (1) Vavic's involvement in the admission of Agustin Huneeus's daughter (referred to in the Second Superseding Indictment ("SSI") as "USC Applicant 3") or the son of Devin Sloane, both of whom were admitted to the University of Southern California ("USC") as purported water polo recruits; (2) Vavic's involvement in the admission of *any* applicants other than those identified as "USC Applicant 1" and "USC Applicant 2" in the SSI, including any applicants alleged to be at issue as to any other defendants charged in this case or related cases; (3) that the

tuition payments made by Rick Singer, through his purported charitable organization, the Key Worldwide Foundation ("KWF), for Vavic's sons were anything more than a gratuity, unconnected to the admission of any particular USC applicant; or (4) that Vavic aided and abetted Singer in committing honest services wire fraud as charged in Count 16. As set forth below, to the extent the government intends to offer evidence or argument on these issues, none will present a "false" theory of culpability or otherwise mislead the jury. They are, accordingly, matters properly decided by the jury at trial, not pre-trial via a motion *in limine*.

## ARGUMENT

### (1) Evidence or Argument regarding the Admission of Huneeus and Sloane

In seeking to exclude evidence or argument suggesting his involvement in the admission of Huneeus and Sloane, Vavic relies on the same arguments that were recently rejected by this Court in denying his motion to inspect grand jury transcripts. Those arguments cite the prior trial testimony of IRS Special Agent Elizabeth Keating for the proposition that "the government does not and cannot dispute that Coach Vavic had no knowledge of or participation in the admission of Huneeus or Sloane[.]" Dkt. 853 at 3. But that is not true. As this Court has concluded, Special Agent Keating's testimony "was that she had not seen evidence that Vavic had participated in Huneeus or Sloane's admissions, *not* that Vavic had no knowledge of them." Dkt. 1053 at 3 (emphasis added).

Accordingly, Special Agent Keating's testimony "does not call into question the veracity" of the allegations in the SSI regarding the August 3, 2018 call between Singer and Vavic in which they discussed Huneeus's admission as a purported water polo recruit. *Id.* And it is those allegations the government intends to prove at trial. As the Court has recognized, the government does not dispute – and the allegations in the SSI reflect – that it was ultimately Heinel, not Vavic,

2

who facilitated Huneeus's admission. The government does not intend to suggest otherwise. There is thus no basis for excluding evidence – including the August 3, 2018 call – regarding Vavic's knowledge of Huneeus, or for precluding the government from arguing, based on the evidence, that Vavic initially agreed to present her to the USC subcommittee for athletic admissions in exchange for money to his water polo program, even though she was later presented by Heinel. Nor should the government be precluded from offering communications between Singer and Agustin Huneeus regarding Vavic's involvement in Huneeus's admission, as those communications are relevant to and probative of that agreement. The evidence and argument the government intends to offer will make clear to the jury that it was Heinel who ultimately facilitated, and received a payment in connection with, Huneeus's admission.

With respect to Sloane, the SSI does not allege that Vavic was involved with Sloane's son's admission to USC as a purported water polo recruit, and the government has never suggested otherwise. Heinel facilitated Sloane's admission, and the government does not intend to present evidence or argument to the contrary. Accordingly, this portion of Vavic's motion is moot. *See, e.g.*, *United States v. Hart*, No. 01-10314-MLW, 2003 WL 24051690, at *1 (D. Mass. Jan. 14, 2003). However, to the extent Vavic seeks to exclude *any* evidence relating to Sloane – including the April 2018 email correspondence to which Vavic objects – his motion is without merit and should be denied. As explained in the government's opposition to Vavic's motion to inspect grand jury transcripts, the April 2018 email correspondence is evidence that Singer, Heinel, and Sloane agreed to deceive Sloane's son's high school and the USC admissions department, including by falsely suggesting that Vavic was legitimately recruiting Sloane's son. The government does not intend to present the emails as evidence that Vavic *in fact* recruited Sloane's son – and will make clear to the jury that he did not. At the same time, the email exchange includes a representation by

3

Singer to Heinel regarding his relationship with Vavic ("as you know Jovan and I have a strong relationship too if needed"), which *is* probative of Vavic's involvement in the charged conspiracies, Heinel's knowledge of that involvement, and the interdependence among participants. *See, e.g.*, SSI ¶¶ 105(c), 114(c). Because the emails are thus probative of relevant facts, *see* Fed. R. Evid. 401, there is no basis for precluding their introduction for that purpose – provided that they are not used to confuse or mislead the jury, which the government has no intention of doing.

### (2) Evidence or Argument regarding the Admission of Applicants other than USC Applicant 1 and USC Applicant 2

Vavic also seeks to preclude evidence or argument suggesting his involvement in the admission of *any* applicants other than those identified as "USC Applicant 1" and "USC Applicant 2" in the SSI, on the basis of his contention that there is no evidence he had knowledge of, or participated in, the admission of any such applicants. Vavic's request is ill-defined and overbroad and should be denied for that reason alone. Its premise is also untrue.

The allegations concerning USC Applicant 1 and USC Applicant 2 are set forth in the SSI as acts in furtherance of the charged conspiracies, and are explicitly referenced as *examples* of the students Vavic designated as recruits to the USC water polo team in exchange for money. *See* SSI ¶ 30 ("As one example . . . [going on to discuss USC Applicant 1]"); ¶¶ 35–37 ("As another example . . . [going on to discuss USC Applicant 2]"). "'It is settled that the government need not recite all of its evidence in the indictment, nor is it limited at trial to the overt acts listed in the indictment.'" *United States v. Chan*, 352 F. Supp. 3d 54, 73 (D. Mass. 2018) (Talwani, J.) (quoting *United States v. Bradstreet*, 135 F.3d 46, 53 (1st Cir. 1998)).

To the extent Vavic seeks to exclude evidence relating to applicants with whom his co-conspirators were involved, his request is overbroad and premature. As discussed during the

October 29, 2021 hearing on the parties' motions *in limine*, the government has charged a conspiracy that extends beyond Vavic and Singer, and includes Heinel and other coaches. It is entitled to present proof of that conspiracy at trial. Mindful of the Court's concerns about spillover prejudice, the government does not intend to present evidence of a "sprawling" conspiracy, or of dozens of applicants that Heinel falsely presented as purported athletic recruits. Nor will it suggest that Vavic personally participated in the fraudulent admissions that Heinel, or other conspirators, facilitated without him. At the same time, evidence concerning *some* of those admissions is relevant to and probative of the nature and scope of the charged conspiracies, how the scheme worked, and how it changed over time, and it is inextricably intertwined with (and necessary to understand) the evidence of Vavic's involvement. *See*, *e.g.*, *United States v. Robles-Alvarez*, 874 F.3d 46, 50–51 (1st Cir. 2017) (intrinsic evidence includes "the necessary description of the events leading up to" the charged crime or evidence that "allows the jury to understand the circumstances surrounding the charged crime") (internal citations and quotation marks omitted). For example, evidence relating to the admission of USC Applicant 2's older sister to USC as a purported soccer recruit, facilitated initially by co-conspirators Ali Khosroshahin and Laura Janke and later by Heinel, explains how Heinel became involved in the scheme and why she later received a payment in connection with the admission of USC Applicant 2, which Vavic also facilitated. Similarly, evidence regarding Heinel's role in securing the admission of Singer's clients as purported athletic recruits – including, like Sloane, as purported water polo recruits – is probative of how the scheme evolved and why Singer discussed Huneeus's admission with Vavic, even though Huneeus was ultimately admitted as a water polo recruit through Heinel.[1]

---

[1] Vavic's motion focuses on the potential for spillover prejudice from evidence relating to Heinel. The Court's severance order addressed these concerns, but did not preclude the (continued . . .)

Likewise, evidence of how testifying co-conspirators were involved in the scheme, and of fraudulent admissions in which they were involved, is both the *Giglio* of those witnesses and directly relevant to the government's burden of proving the nature and scope of the charged conspiracies. For example, the government anticipates that Ali Khosroshahin will testify that it was Vavic who encouraged him to join the scheme, and that he, in turn, later recruited others, including his assistant coach, Laura Janke, and coaches at other schools – including Jorge Salcedo at UCLA and Rudy Meredith at Yale. Khosroshahin and Janke will testify, in general terms, about how they secured the admission of Singer's clients to USC as purported soccer recruits, and Janke will testify that she also created fraudulent athletic profiles that were integral to the scheme – including the falsified profiles that USC Applicant 2 sent Vavic, and that Vavic then used to secure her admission as a purported water polo recruit. Meredith will testify about his own involvement in the scheme, and about statements Singer made to him (prior to Singer's cooperation) about Vavic's involvement. Parent co-conspirator Bruce Isackson will testify about how the scheme worked, and about securing the admission of his older daughter to UCLA through Salcedo as a purported soccer recruit, after Khosroshahin and Janke failed to secure her admission to USC, as well as about the admission of his younger daughter to USC as a purported crew recruit through Heinel – both on the basis of fraudulent profiles Janke created. This evidence is probative of the background of the conspirators' involvement in the scheme and the relationships among the conspirators, and it provides context for the co-conspirator statements the government intends to offer. It is also probative of the manner and means and scope of the charged conspiracies, the overlap among the conspirators, and the interdependence of the conspirators' actions and of the

---

government from offering *any* evidence of Heinel's involvement alongside Vavic in the charged conspiracies.

different aspects of the conspiracies. *See* SSI ¶ 21(a) ("[c]reating athletic 'profiles' and admissions packets containing falsified credentials . . . to submit in support of the students' college applications); ¶ 21(d) ("recruiting additional athletic coaches to designate applicants as purported recruits for competitive college athletic teams in exchange for bribes"). Indeed, the evidence will show that Vavic, after introducing his USC colleague Khosroshahin to the conspiracy, ultimately agreed (like Khosroshahin) to recruit coaches from other schools to the scheme in exchange for money.

**(3)** **Evidence or Argument regarding the Tuition Payments for Vavic's Sons**

Vavic contends that because a law enforcement report indicates that Singer initially told agents he paid the private school tuition for Vavic's sons under the guise of a fabricated scholarship from KWF "as a gesture toward Vavic in case [Singer] needed him in the future," the government should be precluded from presenting evidence or argument that "contravenes" Singer's "undisputed" statement (or, more particularly, Vavic's gloss on that statement – that it reflects no more than a permissible gratuity, rather than an illegal bribe). Dkt. 853 at 11. Vavic cites no support – and the government is aware of none – for the proposition that where a law enforcement report reflects a purported statement by a cooperating witness, the government may not introduce contrary evidence at trial.

As an initial matter, the report at issue is a summary of an interview conducted on September 27, 2018, just days after the FBI first approached Singer. It is not, and does not purport to be, a verbatim transcript of Singer's statements – or even a summary that Singer later adopted. And the defense has throughout this litigation attacked Singer's credibility – as it undoubtedly will at trial – yet asks the Court to treat as true this lone, cherry-picked statement (which is not, in any event, a quote) and to preclude evidence to the contrary. There is no basis for such a request.

7

Indeed, the same report states that "Vavic received $150,000 for [his facilitation of the admission of John Wilson's son] with $100,000 going to USC and $50,000 to [Singer]." That statement is inaccurate. Bank records and other documents show that Wilson paid Singer $220,000 in exchange for his son's admission, of which Singer passed on $100,000 to the USC men's water polo program. To accept Vavic's argument would be to preclude the government from offering that evidence simply because it is inconsistent with Singer's statement as reflected in the report. That is nonsensical. Just as there would be no reason to prohibit the government from offering bank records pertaining to the Wilson-related payments, there is no basis to exclude evidence concerning the tuition payments Singer made for Vavic's sons, or from arguing to the jury that the timing and circumstances of those payments is evidence from which the jury may conclude that they were in exchange for Vavic's designation of Singer's clients as water polo recruits, and his agreement to do so in the future – an agreement that Vavic later confirmed, and elaborated on, in a consensually recorded call.[2]

The remainder of Vavic's arguments on this point are recast from his motions to dismiss, which this Court rejected. He contends that the statement indicates that the tuition payments were "an after-the-fact-gratuity rather than an unlawful bribe," and that, because "no witness has ever told the government" otherwise, evidence or argument that the payments were part of an illicit *quid pro quo* should be excluded. Dkt. 853 at 11. But whether the tuition payments were a gratuity

---

[2] Vavic's assertions that the tuition payments were unconnected to the admission of any particular USC applicant are contrary to the evidence and, in any event, legally inconsequential. *See Skilling v. United States*, 561 U.S. 358, 413 (2010) (citing *United States v. Kemp*, 500 F.3d 257, 281–86 (bribery theory of honest services fraud satisfied by "stream of benefits" in exchange for some official action, without need to show specific benefit for specific action: "payments may be made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf.")); *United States v. Lopez-Cotto*, 884 F.3d 1, 8 (1st Cir.), *cert. denied*, 139 S. Ct. 124 (2018) (recognizing that a charge under 18 U.S.C. § 666 can be based on a stream of benefits).

8

or a bribe is a question properly reserved for the jury. *See United States v. Ernst*, 502 F. Supp. 3d 637, 666 n.11 (D. Mass. 2020) (Talwani, J.) (noting that although "the timing of the payments may very well constitute evidence that the payments constituted a gratuity as opposed to a bribe . . . this is an argument to be presented to the jury to rebut the government's assertion of a quid pro quo"). Vavic is free to argue that the payments were a gratuity, and to cross-examine the government's witnesses (or call his own) as appropriate – but he cannot simply prevent the government from offering evidence and argument in support of the charges against him.[3]

### (4) Evidence or Argument that Vavic Aided and Abetted Singer

Finally, Vavic argues that the government should be precluded from offering evidence or argument that he aided and abetted Singer in committing honest services wire fraud in connection with the January 2, 2019 consensually recorded call, as charged in Count 16. But that is not what the government has charged. Singer was not the only other member of the conspiracy, which survived beyond the date Singer was approached by law enforcement. For that reason, it would be appropriate for the government to argue that Vavic aided and abetted one or more other conspirators in committing honest services wire fraud. Nevertheless, the government does not intend to pursue – and has not requested that the Court instruct the jury on – an aiding and abetting theory of liability for Count 16. Accordingly, this portion of Vavic's motion is moot.

---

[3] Nor, of course, is there any requirement that the government call a particular witness so that the defense can cross-examine that witness based on a law enforcement report.

## CONCLUSION

For the foregoing reasons, Vavic's motion should be denied.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Leslie A. Wright*
LESLIE A. WRIGHT
IAN J. STEARNS
STEPHEN E. FRANK
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By: */s/ Leslie A. Wright*
Leslie A. Wright
Date:   February 8, 2022                    Assistant United States Attorney