UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JOVAN VAVIC,<br><br>Defendant | No. 19-cr-10081-IT<br><br>**LEAVE TO FILE GRANTED ON FEBRUARY 14, 2022 (Dkt. 1071)** |

**REPLY IN SUPPORT OF GOVERNMENT'S MOTION
FOR PRE-TRIAL RULING REGARDING CONSENSUAL RECORDINGS**

The government respectfully submits this reply in support of its motion for a pre-trial determination that phone calls to or from William "Rick" Singer's phone ending in -8802 were validly recorded with Singer's consent. Dkt. 1061. The defendant's opposition to the government's motion is without merit, for several reasons. *See* Dkt. 1068.

- First, the defendant mischaracterizes the government's motion as one that "effectively" seeks reconsideration of the Court's rulings. The government does not seek reconsideration. The Court previously found, on the record then before it, that "the government will have the burden of demonstrating that Singer consented (and AT&T was so notified) and did not withdraw his consent for those time periods relevant to each of the communications the government seeks to offer as evidence before such communications may be admitted at trial." Dkt. 939 at 11; Dkt. 1062 at 7. The government has now submitted additional evidence to meet that burden, including: (1) a sworn affidavit from Singer attesting that he twice consented to the interception of his phone and did not at any time withdraw his consent, Dkt. 1061-2 at 3 (Singer: "At no point did I ***ever withdraw*** or ***ever consider withdrawing*** my consent to the Consent and Acknowledgements of September 27, 2018, ***or*** December 20, 2018.") (emphasis added); (2) a sworn affidavit from Singer's counsel attesting that he personally witnessed Singer sign the September 2018 consent form (the December 2018 form was witnessed by an FBI Agent), and that "Mr. Singer agreed to fully cooperate with the government knowing at the time that he would be making and receiving calls . . . which government lawyers and agents would listen to . . . ." Dkt. 1061-1 at 3; (3) fax cover sheets demonstrating that Singer's signed consent forms were faxed to AT&T; and (4) acknowledgement receipts demonstrating that AT&T received the consent forms. Based on that record of Singer's explicit consent (which supplements the evidence of Singer's implied consent from the calls themselves), the government now seeks a finding that it has satisfied its burden, as the Court required.

- Second, the defendant misrepresents the record concerning whether AT&T received the December 2018 renewed consent form. The defendant's opposition states: "The government's citation—to 'Dkt. 885-1 and **969-1**'—merely references the record as it stood *before* the Court found, on **October 25**, that '[t]here is *no evidence* before the court as to whether this second consent form was sent to AT&T.'" Dkt. 1068 (italics in original, bold added). That is not correct. The government's filing at Dkt. 969-1 was docketed on November 1, 2021, one week after the Court's October 25 order. In that filing, the government provided the fax cover sheet and AT&T's response, both dated December 21, 2018, showing that AT&T acknowledged receipt of Singer's December 2018 consent form and extended the consensual wiretap until March 17, 2019. *See* Dkt. 969-1 at 17.

- Third, the defendant calls Singer a "conman" and "opportunistic liar," and suggests that notes he took in October 2018 somehow affect the validity of his consent to the wiretap of his phone, which he gave in September 2018, renewed in December 2018, and reaffirmed in a recent sworn affidavit. But as the government pointed out in its opening brief, the notes, which reflect Singer's disagreement with the words agents wanted him to use on *phone calls he knew were being recorded*, simply underscore Singer's consent to the interceptions. As the notes reflect, Singer wrote: "***I asked for a script*** if they want me to ask questions and receive responses . . . ." Dkt. 902 at 12. The defendant does not address the absurdity of a person asking for a "script" to use on calls that he purportedly did not consent to being recorded. *Compare* Dkt. 1061 at 6, *with* Dkt. 1068. And of course, even if, as the defendant seems to suggest, Singer somehow conned the government about his consent by signing two consent forms and making calls at the government's direction over a period of months on a line he knew was being recorded—a notion that is equally absurd—that would underscore that the government acted in good faith in relying on his consent. *See United States v. Leon*, 468 U.S. 897, 919 (1984); *see also United States v. Brunson*, 968 F.3d 325, 334 (4th Cir. 2020) ("[W]e conclude that where law enforcement officials have acted reasonably and in good faith to comply with the central substantive requirements of the Wiretap Act, as is the case here, suppression is not justified.").[1]

- Fourth, the defendant does not even attempt to respond to well-established precedent holding that even implied consent is sufficient, and that the calls themselves show that Singer was making calls, at the direction of agents, knowing they were being recorded, to gather evidence of co-conspirators' knowledge and understanding of past events. *See* Dkt. 1061 at 3–5 (collecting cases); *see also, e.g., United States v. Font-Ramirez*, 944 F.2d 42, 47 (1st Cir. 1991) ("no question" regarding consent where cooperator agreed to carry tape recorder during conversation with defendant); *United States v. Bonanno*, 487 F.2d 654, 658–59 (2d Cir. 1973) ("Hence, it will normally suffice for

---

[1] Whether Singer is a "conman" or an "opportunistic liar" is, in any event, not now the issue—though it may well be an issue should he testify at trial. The only issue presently before the Court is whether Singer consented to the interception of his calls, and whether the agents relied on that consent in good faith.

2

the Government to show that the informer went ahead with a call after knowing what the law enforcement officers were about.").

Accordingly, the record currently before the Court regarding Singer's consent is as follows. The government has provided: (i) not one, but two consent forms signed by Singer, with one witnessed by his counsel and the second witnessed by an FBI agent; (ii) an affidavit from Singer's counsel attesting that Singer consented and understood that the government would be recording and listening to his calls; (iii) an affidavit from Singer himself attesting that he twice gave written consent for the government to record his calls and that he did not "ever withdraw or ever consider withdrawing" his consent; (iv) several affidavits and records establishing that the government sent AT&T the signed consent forms and that AT&T received them (*see generally* Dkt. 969); (v) dozens of consensually recorded calls themselves that, on their face, show Singer was consenting to the recording of his calls during the course of his cooperation, the purpose of which was to gather evidence against Singer's co-conspirators; and (vi) a finding by another session of this Court, which presided over a four-week trial that centered on consensual recordings made by Singer, that "Singer gave his consent to the recording of his conversations." *United States v. Abdelaziz et al.*, 19-cr-10080-NMG, Dkt. 2211 at 4.

The defendant does not, because he cannot, respond to the well-established precedent set forth in the government's motion holding that such evidence is more than sufficient to support a finding of consent. *See* Dkt. 1061 at 3–5. The defendant cites not one case to support his assertion that Singer's consent "cannot be assessed absent a live examination" before the "fact finder" – that is, the jury – nor does he respond to any of the multiple cases cited by the government finding consent where a cooperator and/or informant did not testify. Dkt. 1068 at 4; Dkt. 1061 at 3.

The critical point in this regard is that the Supreme Court itself has made transparently clear that suppression and admissibility issues are for judges and not for juries. *See Steele v. United*

3

*States*, 267 U.S. 505, 510–11 (1925) (defendant did not have "the right to have submitted to the jury the issue of fact whether there was probable cause to issue the warrant, with direction that if the jury found that there was not probable cause, it should ignore the evidence resulting from the seizure and acquit the defendant," in part because "the question of the competency of the evidence of the whisky by reason of the legality or otherwise of its seizure was a question of fact and law for the court and not for the jury"); *Ford v. United States*, 273 U.S. 593, 605 (1927) ("It is objected that the question of the validity of the seizure should have been submitted to the jury. So far as the objection relates to the admission of evidence, it has already been settled by this court that the question is for the court and not for the jury," and citing *Steele*); *Jones v. United States*, 362 U.S. 257, 264 (1960) (the rule that suppression motions must be made before trial "is a crystallization of decisions of this Court requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt."), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980).

Circuit courts, including the First Circuit, have heeded the Supreme Court's admonition on this subject without fail. *See United States v. Reed*, 575 F.3d 900, 919 (9th Cir. 2009) (citing *Steele* and *Jones* in holding that "[t]he legality of a wiretap and the question of whether the Government had a warrant for a wiretap is not a question for the jury to consider, because it is not immediately relevant to the question of guilt."); *United States v. Stuart*, 507 F.3d 391, 395 (6th Cir. 2007) (citing *Steele* in holding that "[t]he application of the exclusionary rule generally presents 'question[s] of fact and law for the court and not for the jury.'"); *United States v. Teslim*, 869 F.2d 316, 324 (7th Cir. 1989) (citing *Steele* for proposition that "it is up to the judge, not the jury, to determine whether there is adequate probable cause to justify issuing a search warrant"); *Burris v. United States*, 192 F.2d 253, 254 (5th Cir. 1951) (citing *Steele* in observing that "[t]he issues arising upon a motion

4

to quash and suppress are not properly for determination by the jury, but rest within the province of the trial judge."); *Gerahty v. United States*, 29 F.2d 8, 8 (4th Cir. 1928) (citing *Steele* in stating that "[t]he question of probable cause and the question of the legality of the search warrant are judicial questions for the court and not for the jury."); *Horowitz v. United States*, 10 F.2d 286, 288 (1st Cir. 1926) (citing *Steele* in reasoning that, if defendant claimed that the seized evidence was improperly admitted at trial because "the warrant was improperly issued or executed, he was foreclosed from raising that question before the jury, as it had been previously heard and passed upon by the court on the defendant's petition for a suppression of the evidence").  The defense has cited no authority – and the government is aware of none – holding that consent is a jury or "fact finder" issue.  The issue of Singer's consent therefore must be decided by the Court.

And it must be decided before trial.  The pertinent rule provides: "(d) Ruling on a Motion. The court must decide every pre-trial motion before trial unless it finds good cause to defer a ruling. The court *must not* defer ruling on a pre-trial motion if the deferral will *adversely affect a party's right to appeal*. When factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed. R. Crim. P. 12(d) (emphasis added).

As the First Circuit has explained, Rule 12(d) was drafted principally with the government's appellate rights in mind:

> The main purpose of Rule 12(d)'s requirement that the district court hear pre-trial motions before trial is that "[w]ere a defendant able to delay such a motion until trial, he could prevent the government from appealing" because jeopardy would have attached at trial. *United States v. Barletta*, 644 F.2d 50, 54–55 (1st Cir.1981). And it is "[o]nce a jury has been sworn [in that] jeopardy attaches, [and] the government loses its right to appeal an adverse ruling on suppression." *United States v. Nuñez*, 19 F.3d 719, 723 (1st Cir.1994) (quoting *United States v. Taylor*, 792 F.2d 1019, 1025 (11th Cir.1986)); *see also United States v. Dittus*, 453 F.2d 1335, 1336 (3d Cir.1972) (holding that a renewed motion for suppression at the time of jury selection was untimely); *United States v. Allied Stevedoring Corp.*, 241

5

F.2d 925, 931 (2d Cir. 1957) (holding that motion to suppress delayed until "40 jurors had been assembled, and the prosecution was about to open" was untimely).

*United States v. Castro-Vazquez*, 802 F.3d 28, 32 (1st Cir. 2015); *see also United States v. Santiago-Colón*, 917 F.3d 43, 49 (1st Cir. 2019) ("While a criminal defendant who had unsuccessfully sought suppression of evidence before trial could appeal the denial of the suppression if he was convicted, double jeopardy principles preclude the government from appealing a pre-trial order suppressing evidence in the event of an unfavorable verdict at trial."); *United States v. Charles*, 801 F.3d 855, 861 (7th Cir. 2015) (noting the "serious prejudice" the government may suffer from a deferred suppression ruling, and the fact that such delayed rulings are "[e]ven more problematic [given] the interplay of the Double Jeopardy Clause and mistaken suppression rulings.").

Here, there is no good cause for deferring a determination of Singer's consent until trial. Singer's affidavit is clear and unqualified, and it is amply supported by the other evidence. The government respectfully submits that this issue can be determined on the basis of the written evidence that the government has submitted. But if a pre-trial hearing is necessary, the government requests that the Court hold one as soon as possible, so that if the Court does not find consent based on the evidence that the government presents, the Court can enter an order, and the government will have the opportunity to appeal that decision to the First Circuit. If the Court is unwilling to rule on this matter pretrial, it should state its "good cause" reasons for declining to do so, as Rule 12(d) requires. Moreover, the Court should enter such an order sufficiently in advance of trial so that the government may assess whether to pursue a mandamus action in the First Circuit to compel a pre-trial ruling. *See United States v. Barletta*, 644 F.2d 50, 57-60 (1st Cir. 1981) (invoking mandamus jurisdiction and ordering the district court to rule before trial on the

government's motion *in limine* to admit certain evidence, and observing that such relief was proper "in the absence of extraordinary grounds for deferral" based in part on the unique harms that mid-trial suppression rulings pose for the government).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court make a pre-trial determination, based on the record before it, that Singer's calls to or from his phone ending in -8802 during the period stated in the government's motion were validly recorded with Singer's consent. If the Court determines that the evidence presented, including Singer's affidavit, are not adequate to establish consent, the government respectfully requests a hearing as soon as possible.
.

    Respectfully submitted,

    RACHAEL S. ROLLINS
    United States Attorney

By:   /s/ *Ian J. Stearns*
    LESLIE A. WRIGHT
    STEPHEN E. FRANK
    IAN J. STEARNS
    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

    /s/ *Ian J. Stearns*
    IAN J. STEARNS
    Assistant United States Attorney