## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Criminal No. 19-10081-IT |
| ) | |
| ) | |
| JOVAN VAVIC, ) | REQUEST FOR ORAL ARGUMENT |
| ) | |
| Defendant. ) | |
| _____) | |

### MOTION TO INTERVENE AND QUASH TRIAL SUBPOENAS

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, Joseph Aguirre, Alexandra Reisman (nee Bitterlin), and Scott Wandzilak – who are, or were fundraisers in the University of Southern California ("USC") Athletics Department, respectfully move to intervene for the limited purpose of asking this Court to quash trial subpoenas for their testimony served on February 3, 2022 by counsel for the defendant Jovan Vavic. Aguirre, Reisman, and Wandzilak move to quash the subpoenas on the grounds that they seek testimony that is irrelevant, unreasonable and oppressive given the witnesses' lack of proximity to the trial and travel concerns, and is cumulative of the testimony of other USC employees that are slated to testify before them. *See Stern v. U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000).

### BACKGROUND

### I.      THE CHARGES AGAINST THE DEFENDANT

The defendant is charged in a Second Superseding Indictment ("SSI") with conspiring with William "Rick" Singer and others to commit honest services fraud, bribery, and wire fraud as well as one substantive count of honest services fraud. Second Superseding Indictment ("SSI"), ¶¶

150-156, 161-162, ECF No. 505.  In essence, the underlying allegations are that Singer bribed Vavic and others to falsely present children of Singer's clients to USC admission officials as recruited athletes.  At USC, potential student-athletes who are recruited by USC coaches are presented for admission to a Subcommittee of members of the Office of Admission (referred to internally as the "Subco").  In light of these applicants' exceptional athletic ability and expected athletic contribution to their respective teams, these students are evaluated through a different process and are frequently admitted, even though they generally have lower grades and test scores compared to non-recruited athletes admitted to USC in the general process.  *Id.* ¶¶ 18-19.

According to the SSI, Vavic's role in the conspiracy allegedly involved Singer bribing Vavic and others to designate students as recruited athletes.  *See id.* Vavic did not inform the university's admissions office that he and Singer had agreed to falsely designate applicants as athletic recruits in exchange for payments to specific university athletic funds, to Vavic personally, or to third parties.  *Id.* ¶¶ 25, 29.  Singer and other coconspirators made payments to a bank account at USC that funded Vavic's water polo team and also made private school tuition payments for Vavic's children, under the cover that they were scholarships.  *Id.* ¶¶ 26, 27, 34-36, 43-47.

In exchange for these payments, Vavic designated multiple students as recruits for the USC water polo team, thereby facilitating their admission to USC.  *Id.* ¶¶ 28, 33, 39-42, 46.  Vavic also assisted Singer in recruiting other coaches to participate in the scheme, including the USC women's soccer coach.  *Id.* ¶¶ 48-50.

The SSI does not allege that Aguirre, Reisman, or Wandzilak knew anything about the examples referenced as Applicants 1, 2, or 3.  Aguirre, Reisman, and Wandzilak are Development Officers in the Athletics Department with no authority to admit any students, including student-

2

athletes.[1]  The SSI also does not allege that these witnesses knew anything about Vavic's alleged scheme with Singer or Vavic's alleged misrepresentations relating to the athletic abilities of Singer's clients to facilitate their admission to USC.   Indeed, they did not.  Aguirre, Reisman, and Wandzilak have never met Singer, never spoken or communicated with Singer, and never had any conversations with Vavic about Singer or any prospective students known to be Singer's clients.

## II.    THE DEFENDANT'S SUBPOENAS

On February 3, 2022, the defendant served Aguirre, Reisman, and Wandzilak with subpoenas purporting to command their appearance to testify on March 8, 2022.[2]  During the meet and confer process, defense counsel explained that they principally sought the testimony of Aguirre, Reisman, and Wandzilak in the event that the Court denies the defendant's other efforts to admit emails that were either authored or received by them.   More specifically, the defendant seeks to introduce one email each through Aguirre and Wandzilak and a few emails through Reisman.  Defense counsel added that they may also seek testimony from these witnesses about USC fundraising and the general Subco process -- even though none of these individuals was ever a member of Subco or attended a Subco meeting.

## LEGAL STANDARD

"Intervention is appropriate as of right when the disposition of an action may impair or impede the applicant's cognizable interest."  *In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001).  Aguirre's, Reisman's, and Wandzilak's interests in quashing the subpoenas will not be adequately represented by either of the parties in this criminal case.

---

[1]        Aguirre, unrelated to this matter, left working at USC for another employment opportunity.

[2]        Subpoenas that were served upon Reisman and Wandzilak seeking their testimony in the matter of the *United States v. Wilson and Abdelaziz*, Criminal Action No. 19-CR-10080-NMG, were quashed by the court.  Mem. & Order, ECF No. 2265.  Aguirre did not receive a subpoena to testify in that matter.

Fed. R. Crim. P. 17(a), which governs subpoenas for trial testimony, does not provide explicitly for quashing or modification. As such, courts entertain motions seeking such relief according to the principles relevant to Rule 17(c) subpoenas. *See Stern,* 214 F.3d at 17. Quashing subpoenas is appropriate if their execution would be unreasonable or oppressive. Fed. R. Crim. P. 17(c)(2); *see, e.g.*, *United States v. Henry*, 482 F.3d 27, 30-31 (1st Cir. 2007) (affirming trial court's decision to quash subpoenas pursuant to Fed. R. Crim. P. 17(c)(2)). The Supreme Court has held that a subpoena does not meet this standard of "unreasonable or oppressive" if the testimony sought is relevant, admissible, and specific. *United States v. Nixon*, 418 U.S. 683, 700 (1974); s*ee Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *Stern*, 214 F.3d at 17.

## ARGUMENT

### I.     THE PROPOSED TESTIMONY IS IRRELEVANT

The defendant has not and cannot meet his burden of showing that the testimony of Aguirre, Reisman, or Wandzilak is relevant, admissible, and specific. *See Nixon,* 418 U.S. at 700; *Stern*, 214 F.3d at 17.

It is fundamental that evidence is relevant only "if it has any tendency to make a fact more or less probable" and "the fact is of consequence." Fed. R. Evid. 401. Courts have considered "the relationship of the evidence sought to be admitted to the elements of the offense and to relevant defenses." *United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1991).

Here, the defendant proffered during the meet and confer process that he is seeking the witnesses' testimony concerning admitting emails authored or received by them and about USC's Athletic Department's fundraising initiatives in order to show that payment of money for preferential admissions treatment was a common practice at USC.

4

1.    <u>The Common Practices of USC</u>

The defendant's support for demanding this testimony falls short.  Whether or not USC gave preferential treatment to donors in the general admission process has no bearing on the allegations in the case.  The charges against the defendant are not based on the premise that the defendant solicited a donation to USC.  Rather, the government contends that the defendant conspired with others to deceive USC's Office of Admission, thereby committing honest services fraud, bribery, and wire fraud as well as a substantive count of honest services fraud.  The fundraising efforts of USC's Athletics Department -- which has no authority or ability to admit any students, including student-athletes—has nothing to do with the alleged crime.  Instead, the alleged crimes turn on whether the defendant intended to deceive USC's Office of Admission by making false representations about applicants' athletic abilities and accepting money from a third-party intermediary in order to facilitate the admission of applicants who would not have been recruited by or admitted to USC in the normal course.  None of these witnesses can provide any testimony that would have any bearing on the defendant's alleged good faith intent, nor can these witnesses offer any testimony regarding the Office of Admission's expectations of the defendant's honest services.  There is simply no probative value to their testimony.

Accordingly, Aguirre's, Reisman's, and Wandzilak's testimony is irrelevant, as it will not make any fact relevant to the essential charges or defenses more or less probable.  *See United States v. Manghis*, Criminal Action No. 08CR10090-NG, 2010 WL 349583, at \*1 (D. Mass. Jan. 22, 2010) ("It seems self-evident that [the defendant] should not be allowed to compel the appearance of a witness whose testimony would be irrelevant.").  Indeed, Aguirre, Reisman, and Wandzilak did not solicit or have any involvement with any of the payments or applicants identified in the SSI.  SSI, ¶¶ 26-50.  None of the emails that the defendant identified in the meet

5

and confer process involve any of those applicants.  They have no knowledge of those applicants.  They were not involved in their applications or admissions processes.  They should not be compelled to appear and testify.

> 2.      The Emails

Through these subpoenas, the defendant seeks to haul each of the witnesses across the country into this Court during a global pandemic to provide the foundation for the admission of emails that do not refer to Singer or any of Singer clients.  The defendant represented that he seeks to introduce just one email each through Aguirre and Wandzilak and a few emails through Reisman.  But during the meet and confer process and in a pleading, the defendant confidently asserted that these emails are independently admissible on a variety of grounds.  *See* Defs.' Opp'n Gov't's Mot. Lim. [ECF No. 841] Preclude Irrelevant Evid. Concerning Uncharged Third Parties 11–13, ECF No. 924 (citing grounds for admissibility including state of mind and exceptions to the rule against hearsay including business records and statements against interest).  Compelling Aguirre, Reisman, and Wandzilak to testify to establish the basis for admissibility of emails that do not even refer to the three applicants in the SSI or any of Singer's other clients is not proper.

## II.      COMPELLING THE PROPOSED TESTIMONY IS UNREASONABLE

Even if Aguirre, Reisman, and Wandzilak possessed some relevant information – they do not – appearing to testify imposes an impermissible burden on them.  Under Fed. R. Civ. P. 45, "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  Fed. R. Civ. P. 45(c)(1).  "[T]he test for 'undue burden' is a balancing test that pits the need of the party for the sought [testimony] against the interests of the subpoenaed witness in resisting compliance."  *See* 9 James Wm. Moore et al., *Moore's Federal Practice* § 45.32 (3d ed. 2007); *see also Behrend v. Comcast Corp.*, 248 F.R.D. 84, 85–86 (D. Mass. 2008).  When evaluating the

extent of the undue burden on a witness for complying with a subpoena, a witness must show there would be "a clearly defined and serious injury." *United States v. Massimino*, 368 F. Supp. 3d 852, 855 (E.D. Pa. 2019). Importantly, the unwanted burden imposed on non-parties is entitled to "special weight" in performing this balancing test. *Cusumano v. Microsoft Corp*., 162 F.3d 708, 717 (1st Cir. 1998).

Here, Vavic seeks to subject the witnesses to the hardship of traveling cross-country, during a pandemic, and appearing here for trial. While the health concerns from the pandemic have apparently begun to decline, the virus still poses a serious health threat to some of the population. For example, Scott Wandzilak has three children – ages 9 months, 3½ years old and 6½ years old, and Alexandra Reisman has two children, ages 1 and 3 years-old. Each of these children is too young to receive the coronavirus vaccine, resulting in genuine health concerns of infection stemming from Wandzilak's and Reisman's travel across country. Moreover, balancing the factors, demanding that they simply provide testimony designed to merely admit a handful of emails that do not refer to any of the three applicants in the SSI or any of Singer's other clients is simply unwarranted. Of course this point is magnified since the defense is adamant that the emails are admissible through other grounds.

This is also particularly true where there are more knowledgeable USC witnesses that are set to testify before them. Indeed, Casey Moon and Rebecca Chassin -- USC employees with far more relevant information on this topic than Aguirre, Reisman and Wandzilak -- will likely have already testified on this topic, just as they did in the prior matter over the course of several days and in nearly two hundred pages of trial transcript. *See* Tr. 144–206, ECF No. 2390, Criminal Action No. 19-10080-NMG; Tr. 89–224, ECF No. 2400, Criminal Action No. 19-10080-NMG. In these circumstances, compelling the witnesses' appearances is certainly unreasonable and

unduly burdensome.

The defendant has failed to meet his burden of demonstrating the requisite relevance and reasonableness of the request.  The Court should quash the trial subpoenas issued for the witnesses' testimony.

## <u>CONCLUSION</u>

For all the foregoing reasons, Aguirre, Reisman, and Wandzilak respectfully request that this Court allow them to intervene in this matter and ask the Court to quash the defendant's subpoenas commanding each of the witnesses to testify at trial on March 8, 2022.


Respectfully submitted,


<u>s/ Glenn A. MacKinlay</u>
Glenn A. MacKinlay
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110


Dated: February 28, 2022

8

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1</u>

I, Glenn A. MacKinlay, hereby certify that counsel for Aguirre, Reisman and Wandzilak have conferred with counsel for the government, and with counsel for the defendant, Jovan Vavic, in good faith with respect to the instant motion and were unable to resolve or narrow the issues presented herein.

Date: February 28, 2022

<u>s/ Glenn A. MacKinlay</u>
Glenn A. MacKinlay

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants.

<u>s/ Glenn A. MacKinlay</u>
Glenn A. MacKinlay

ME1 39738082v.1