# EXHIBIT I



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

Criminal Investigation

June 5, 2018

| | |
|---|---|
| MEMORANDUM FOR | KIRSTEN B. WIELOBOB<br>DEPUTY COMMISSIONER<br>SERVICES AND ENFORCEMENT  SE |
| FROM: | Don Fort<br>Chief<br>Criminal Investigation  SE:CI |
| SUBJECT: | Request for CI Participation in the real time non-consensual monitoring of wire and electronic communications |

The Boston Field Office (BOSFO) requests authority for two Internal Revenue Service, Criminal Investigation (IRS-CI) special agents to participate in the real time non-consensual monitoring of wire and electronic communications pursuant to a court order based on an application for authorization to intercept wire and electronic communications submitted by the Federal Bureau of Investigation (hereinafter, "FBI"). The non-consensual monitoring concerns an investigation involving allegations of bribery, honest services wire fraud, and money laundering. The intercepted communications are occurring to and from cellular telephone number 916-384-8802 (hereinafter, "TARGET TELEPHONE 1" or "TT-1"). The use of TARGET TELEPHONE 1 is alleged to involve offenses enumerated in Title 18, United States Code, Section 1956 and 1957 (Money Laundering), Title 18, United States Code Section 1346 (Honest Services Fraud), Title 18, United States Code Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1952 (Travel Act - bribery). On June 5, 2018, the United States District Court for the District of Massachusetts (hereinafter, "Court") signed an order authorizing the FBI to conduct the aforesaid interception of TT-1. Attached for reference is the APPLICATION for wire intercept prepared by Eric S. Rosen, Assistant United States Attorney (hereinafter, "AUSA") at the United States Attorney's Office for the District of Massachusetts (hereinafter, "USAO"), the AFFIDAVIT IN SUPPORT OF APPLICATION for an order to intercept wire and electronic communications prepared by Laura Smith, special agent with the FBI, and the ORDER TO SERVICE PROVIDER, authorized by the Court.

If additional telephones are identified as being used in furtherance of the bribery scheme, applications to intercept communications on those devices and telephones will be submitted to the Court. IRS-CI participation is expected on these additional Title III intercepts.

**Allegation under investigation**

It is alleged that RICK SINGER (hereinafter, "SINGER") is involved in nationwide scheme to bribe athletic coaches and administrators at elite colleges and universities throughout the United States in an effort to get high school students admitted into them, when the students may not otherwise be granted admission. The parent(s) of the high school students pay bribes to SINGER, who in turn uses his purported

1

USAO-VB-01719878

charitable foundation, The Key Worldwide Foundation (hereinafter, "KWF"), to funnel a large portion of the bribe payments to the athletic coaches and/or administrators. In exchange for the bribe payments, the coaches recruited SINGER's clients – the high school students – onto their sports teams, effectively guaranteeing them admission into the elite college or universities. KWF purports to help disadvantaged youth gain acceptance into elite colleges. However, the investigation has uncovered information to show that KWF primarily serves as a means to funnel bribery payments to corrupt coaches and college administrators, and launder the proceeds of the bribery scheme to SINGER for his personal use.

Some of the parents created shell companies in order to facilitate the payment of the bribes to SINGER. Additionally some of coaches and administrators also created shell companies to help conceal the bribes they received. For example, in April 2017, SINGER's KWF account at US Bank received a $6.5 million incoming wire transfer from a Morgan Stanley account in the name of "Bravetime International," a company registered in Hong Kong. Account records from Morgan Stanley show that the account holders of this shell company are Tao Zhao and his wife. In August 2017, Stanford University received a donation of $500,000 from SINGER's KWF bank account at US Bank, the same account that had received the $6.5 million from Tao Zhao. This donation was made payable to Stanford but the address on the check stated that the donation was for John Vandemoer the head coach of the Stanford sailing team. Tao Zhao'a daughter attends Stanford University.

In addition, on February 6, 2018 SINGER received a $560,000 wire from the "Jumbo Top International Limited" account at HSBC in Hong Kong. Email and financial records show that the payment was for the admission of Sherri Guo to Yale University.

### Background of Investigation
The background of this investigation is set forth in the attached AFFIDAVIT IN SUPPORT OF APPLICATION for an order to intercept wire and electronic communications occurring over TT-1.

### Targets and Others Involved in Illegal Activity
The individuals under investigation include SINGER (the user of TT-1), Clifford SINGER, Gordon ERNST, Donna HEINEL, Mark OLIVIER, Laura JANKE, Donnalyn ORENDER, Jovan VAVIC, Bill FERGUSON, John V ANDEMOER, Ali KHOSROSHAHIN (hereinafter, "KHOSROSHAHIN), Tao ZHAO, Mark RIDDELL, Mikaela SANFORD, Lawrence FEIWELL, Melissa RAIL, and others not yet known or identified (collectively, "the targets").

### Historical Case Information
In or around January 11, 2017, the USAO, with the assistance of the FBI, initiated a Money Laundering and Securities Fraud investigation. Based upon the complexity and significant money laundering activities occurring within the large securities fraud scheme, the USAO requested the assistance of the IRS-CI.

In February 2018, federal agents executed a federal search warrant in Los Angeles, California at the home of Cooperating Witness 1 (hereinafter, "CW-1") for federal

securities fraud and money laundering violations. CW-1 immediately began cooperating with investigators. CW-1 admitted to investigators that he/she paid bribes to the coach, Cooperating Witness 2 (hereinafter, "CW-2), of a woman's soccer team at a prestigious Ivy League University (hereinafter "ILU") in return for CW-2 recruiting CW-1's child onto the soccer team.

In March 2018, CW-1 made a lengthy recorded call to CW-2. In the call, CW-2 and CW-1 discussed the bribe and further discussed how payment of the bribe would guarantee CW-1's child admission into ILU through one of the "spots" allotted to CW-2's soccer team by ILU's admissions committee. In mid-April 2018, CW-2 and CW-1 met at a hotel room in Boston, Massachusetts. During the meeting, CW-2 and CW-1 agreed to the price of the bribe - $450,000 - which would be paid by CW-1 prior to July 1, 2018. CW-1 also paid CW-2 approximately $2,000 in cash. During the hotel meeting, CW-2 began discussing other individuals who have bribed or attempted to bribe CW-2 in exchange for admission into ILU. CW-2 told CW-1 about SINGER, who, according to CW-2, operates a high-end admissions consulting business in California called "The Key." As part of that business, CW-2 told CW-1 that SINGER paid bribes to coaches at elite schools around the nation. CW-2 told CW-1 in the meeting that SINGER offered to pay CW-2 $400,000 in exchange for CW-2 recruiting one of SINGER's clients onto the ILU women's soccer team.

Investigators approached CW-2 and he/she agreed to cooperate in the investigation. CW-2 confirmed that he/she received bribe payments from CW-1 in return for helping CW-1's child get into the ILU. Beginning in April 2018, CW-2 conducted numerous consensually monitored telephone calls with SINGER. SINGER told CW-2 during their conversations that SINGER had created a charitable foundation called the Key Worldwide Foundation. KWF purported to be a non-profit focused on inner-city sports programs and helping underprivileged students gain access to colleges. SINGER, however, would use the KWF bank accounts to make the bribery payments to coaches and others in order to disguise the source and nature of the payments.

**Assistant United States Attorney**

AUSA Eric Rosen, telephone number: 617-748-3412, is the government prosecutor assigned to the investigation.

**Request for IRS-CI participation in the real time non-consensual monitoring of wire and electronic communications**

The necessity for the participation of IRS-CI case agents is to prevent the premature minimization of conversations involving the bribery scheme by the targets, known and unknown. However, since the Court authorized the wire on June 5, 2018, we have already had a telephone call minimized which led to the loss of valuable financial information. When calls are monitored live by agents/analysts, the call needs to be evaluated real-time to determine if the information in the call is relevant to the criminal activity under investigation. The monitoring agents/analysts write up a summary of the monitored call while the call is occurring. If the agents/analysts monitoring the call believe the call is irrelevant, they have to stop listening to the call, i.e. minimize the call. Once the calls are minimized the information is lost forever. Since SINGER operates both a legitimate college consulting business and illegitimate college consulting business, it is extremely important to understand the differences to make ensure that a call is properly minimized if it is irrelevant to the investigation. An

apparently relevant call received on June 07, 2018 was improperly minimized and valuable information was not captured. The call involved the parents, of a high school student, who called SINGER to inquire about how to help their child get into college. It was clear to the IRS-CI case agent, from reading the live monitoring agent's summary of the call, that the conversation was moving toward the discussion of the payment of a bribe. Since the live monitoring agent does not have an extensive knowledge of the investigation, like the IRS-CI case agents do, he stopped the call and the valuable information was lost. However, having an IRS-CI case agent able to monitor the intercepted wire and electronic communications in real time and supervise the monitoring room would provide us the opportunity to reduce the amount of valuable financial information that is lost due to premature minimization.



4

The use of the Title III intercepts of the monitored conversations will provide evidence of the following:

- Identifying individuals that pay bribes to SINGER in order to gain admission into elite colleges and universities for their children;
- Identifying which coaches and administrators are receiving bribes in exchange accepting those students into their elite universities;
- Identifying the specific roles and knowledge of each participant in committing the criminal offenses;
- Identifying the location and disposition of the proceeds from those activities;
- Identifying the locations of items used in furtherance of those activities;
- Identifying the conspirators' and co-conspirators' other financial accounts, used in furtherance of the alleged offenses;
- Identifying substantial amounts of laundered criminal proceeds, or any identifiable substitute assets, for seizure and forfeiture;
- And the successful prosecution of the targets for Wire Fraud in violation of Title 18, U.S.C. Section 1343; Honest Services Fraud in violation of Title 18, U.S.C. Section 1346 Travel Act-Bribery in violation of Title 18, U.S.C Section 1952; and Title 18, U.S.C., Sections 1956 Money Laundering.

==It is anticipated that SINGER will be indicted under the Racketeer Influenced and Corrupt Organizations Act (RICO). The USAO fully supports RICO charges involving money laundering violations for SINGER, coaches, parents, and administrators. In addition, the USAO fully supports pursuing tax investigations based on the information received off the wire.== It is extremely important in this investigation that the wire room be monitored in accordance with the law and any violation of law would be detrimental to this investigation. The only way that IRS-CI can guarantee that the wire monitoring activity is being conducted lawfully is if IRS-CI case agents are actively monitoring the wire room and wire activity.

5



### Location of Intercepts

As outlined in the attached affidavit, the requested intercept will be the following: 916-384-8802, a cellular telephone with service supplied by AT&T, with international mobile subscriber identity ("IMSI") 310410926734733, subscribed to and known to be used by, RICK SINGER from 265 Hartnell Place, Sacramento, California 95864.

### Monitoring Site

The wire intercepts will be conducted at the FBI office located at 201 Maple Street, Chelsea, Massachusetts.

USAO-VB-01719883

**Resource Demands**

[redacted]

The monitoring will be conducted 24 hours a day for seven days a week. The monitoring commenced on June 5, 2018 and 3 additional targets (2 coaches and 1 parent) have been identified since inception. Special agents will be utilized for the duration of the monitoring which will continue for thirty days and is expected be extended based on the activity to date. [redacted]

**Attachments:**
1. Affidavit in Support of Application for Authorization to Intercept Wire Communications
2. Request for IRS-CI Participation in Non-Consensual Monitoring from Kristina O'Connell, Special Agent in Charge, Boston Field Office

Approved:                                              Date:

Kirsten B. Wielobob
Deputy Commissioner
Services and Enforcement   SE

8

USAO-VB-01719885