**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
                                            )
v.                                          )        Criminal No. 19-10081-IT
                                            )
                                            )
JOVAN VAVIC,                                )
                                            )
                    Defendant.              )
_____)

## REPLY BRIEF TO JOVAN VAVIC'S OPPOSITION TO MOTION TO INTERVENE AND QUASH TRIAL SUBPOENAS, DOC. NO. 1127

Joseph Aguirre, Alexandra Reisman (nee Bitterlin), and Scott Wandzilak respectfully file this reply brief to the defendant Jovan Vavic's opposition to motion to quash the subpoenas seeking their trial testimony, Doc. No. 1127. As reasons therefore, Aguirre, Reisman, and Wandzilak state that Vavic filed an opposition to the motion and raised issues that warrant a response to aid the Court in its consideration of the motion. Doc. No. 1127. Specifically, these witnesses file this reply brief to clarify their expected testimony concerning the University of Southern California ("USC") admissions process and to explain and put into context emails attributed to them.

### 1.    The USC Admissions Process

The defendant contends that the testimony of Aguirre, Reisman, and Wandzilak meets the relevancy requirement necessary to overcome their motion to quash the subpoenas that were issued for their appearance at trial. *See Stern v. U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000); Jovan Vavic's Opposition to Intervenors' Motion to Quash Trial Subpoenas at p.1 (hereinafter "Vavic's Opp. at p.__") ("Internal USC email correspondence reflects that these witnesses—USC Athletics Department fundraisers—communicated about preferential admissions

treatment for children of prospective donors, including with Coach Vavic."). The trouble is, to make this testimony appear to be relevant, Vavic resorts to conflating fundraising by the Development staff with decisions by USC's Admissions Office regarding applicants who were recruited by USC coaches for their athletic ability and expected to play their sport for USC. One has no connection to the other. Indeed, the Development staff—which includes Aguirre, Reisman, and Wandzilak—and the Admissions staff are not even in the same building on campus. But more to the point, Aguirre, Reisman, and Wandzilak had nothing to do with Admissions. To suggest otherwise stems from a mischaracterization of the USC admissions process.

Concisely stated, there are just two avenues to obtain admission to USC: Subco and general admissions. Subco was for student-athletes who were recruited by USC coaches for their athletic ability and expected to play their sport for USC. Everyone else went through the general admissions process. Within the general admissions process, some applicants received a "special interest" or "VIP" tag. However, there was no VIP admissions committee and no separate VIP process.

Various departments within USC could issue a "special interest" tag, including the President's office, Central Development and, importantly, Athletics. While VIP applicants had a higher rate of admissions than other students that USC admitted through its regular admissions process, the rate of acceptance for VIP applicants was still low and was considerably lower than applicants who went through Subco. The fact that donations did not equal admissions is further shown by Rick Singer setting up a "side door" through which applicants would falsely be presented to Subco as recruited athletes because the "back door" of donating money and going through the general admission process with a VIP tag did not have a very high acceptance rate.

Moreover, the Athletics Department had the ability to tag non-athletes as VIPs for reasons other than their athletic talent, such as the applicant's family's connection with USC, including their past or prospective donations.  Therefore, Admissions understood that if someone had a special interest tag from Athletics, then the applicant was important to Athletics.  If Admissions wanted to admit applicants who could donate to Athletics, they could admit applicants with an Athletics special interest tag directly through the general admissions process.  There was no reason to resort to pretending that the applicant was a recruited athlete and therefore evaluating them through the Subco process.

As the Court is well aware, it is the conduct associated with the Subco process that provides the basis of the government's case; that is from where the fiduciary duty owed to USC allegedly derives.  Blurring the line between the VIP tag, associated with fundraising by the Development staff for students, and the Subco process for student-athletes is just incorrect.  USC did not use Subco as a fundraising tool.  And therein lies the obstacle to the defendant securing the testimony of Aguirre, Reisman, and Wandzilak—*each of them has nothing to do with Subco*.  Subco is made up of members of the Office of Admission.  Aguirre, Reisman, and Wandzilak were not members of the Office of Admission.  They did not ever appear before Subco and do not even know how Subco operated.  So, the fundraising repeatedly attributed to these witnesses in emails was perfectly appropriate, as it had nothing to do with Subco.  Instead, it was a component of the general admissions procedure with a VIP tag and is irrelevant to the issues before this Court.  Vavic's attempt to tether fundraising from students and their families through general admissions with a VIP tag to Subco in an effort to meet the relevancy standard is misplaced.

2.      <u>**The Context for the Witnesses' Emails**</u>

With the two distinct admissions processes detailed, Aguirre, Reisman, and Wandzilak turn to clarifying the emails that Vavic attributes to them by explaining their context, which in turn will demonstrate that the emails are related to general admission procedures with VIP tags.

### A) Alexandra Reisman and Exhibits A-D

Reisman unequivocally denies that she ever solicited donations to USC for admission. Moreover, she had no involvement with:

- Vavic
- Singer
- Recruits
- Subco
- Admissions
- Coaches

Indeed, her role with Development consisted of fundraising for USC Athletics and passing information along to supervisors. She had no authority and accordingly no participation in the admissions process. So, when Vavic claims that Reisman "helped facilitate the admissions of applicants whose families had the capacity to donate, irrespective of particular levels of academic or athletic ability," he is just dead wrong. Vavic's Opp. at p.3. Reisman and indeed all development staff were instructed not to talk with coaches, and she complied with this directive by not speaking to any coach about applicants. Indeed, Reisman only spoke with Vavic once, back in 2012 when the Development office prepared a profile of Vavic.

Reisman provides the general context of the four emails attributed to her by explaining that most came from the colloquial term "friend raising" used to describe supporters of USC providing

the names of their contacts and why they would be likely donors to USC's Trojan Athletics Fund. The information in the emails came from the supporter and was typically in their own words. Her task upon receiving such a referral was to pass the information along to her supervisors. This is plainly apparent with Exhibit A, in which she never solicited a donation and never knew if there was donation or even whether the student was admitted. Exhibit B suffers the same fate: she made no solicitation and had no direct communication with the family. Admittedly, she used a poor choice of words, but that does not convert the email into a relevant exhibit at trial. The family referenced made no donation to the Athletics department, and Reisman played no role in admissions. The same goes for Exhibit C and Exhibit D, which refer to a student admitted before Reisman was even involved in Development.

## B) Scott Wandzilak and Exhibits E and F

Wandzilak also categorically denies that he was "involved in efforts to facilitate the admission of applicants whose families had the capacity to donate, irrespective of particular levels of academic or athletic ability . . . ." Vavic's Opp. at p.4.

As a Development office member, Wandzilak was a fundraiser, and he also had no involvement with Subco; indeed his only understanding of Subco was that it was just for student-athletes. Wandzilak was not an evaluator of athletic ability, so when he received information from a prospective student-athlete, he simply forwarded it along to the coach and/or Donna Heinel.

The emails marked Exhibits E and F demonstrate this. Wandzilak received information that families had capacity to donate to the annual fund and were VIP list candidates, and he sent it to Heinel, who had directed him and others from Development to have no contact with coaches. Wandzilak had no involvement with Subco or knowledge of how the information would be used. He was instructed simply to pass it along.

**C) Joseph Aguirre and Exhibit G**

Aguirre was also in Development at USC as a fundraiser, and he also had no involvement with Subco; his only understanding of Subco was that it was just for student-athletes. Whenever he received information about a possible VIP-list family capable of donating, he sent it to Heinel. The email marked Exhibit G shows Aguirre's eagerness to help the family to support USC, but he had no expectation that the candidate would be submitted to Subco. He came up with the idea of a possible "student manager" role on his own after seeing student managers assisting at sports events. But he was not involved in "recruiting" student-athletes, and none of his efforts had any association with Subco.

Each of the witnesses' testimony and the emails that Vavic seeks to admit through them refer to fundraising by the Development office, the general admissions procedure, and the VIP tag, not to Subco. As such, their testimony is not materially relevant to the issues before the Court—Subco and student-athletes.

For the foregoing reasons, Aguirre, Reisman, and Wandzilak respectfully request that this Court allow their motion to quash the trial subpoenas issued for them.

Respectfully submitted,

s/ Glenn A. MacKinlay
Glenn A. MacKinlay
McCarter & English, LLP
265 Franklin Street
Dated: March 9, 2022          Boston, MA 02110

6

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1**

I, Glenn A. MacKinlay, hereby certify that counsel for Aguirre, Reisman, and Wandzilak has conferred with counsel for the government, and with counsel for the defendant, Jovan Vavic, in good faith with respect to the motion to quash and were unable to resolve or narrow the issues presented.

Date: March 9, 2022

s/ Glenn A. MacKinlay
Glenn A. MacKinlay

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants.

s/ Glenn A. MacKinlay
Glenn A. MacKinlay