UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |
| v. | ) Criminal No. 19-10081-IT ) ) |
| JOVAN VAVIC, | ) ) ) |
| Defendant. | ) ) |

**REPLY BRIEF TO JOVAN VAVIC'S OPPOSITION TO MOTION TO INTERVENE AND QUASH TRIAL SUBPOENA, DOC. NO. 1126**

Marko Pintaric respectfully files this reply brief to the defendant Jovan Vavic's opposition to motion to quash the subpoena seeking his trial testimony, Doc. No. 1126. As reasons therefore, Pintaric states that Vavic filed an opposition to the motion and raised issues that warrant a response to aid the Court in its consideration of the motion. Doc. No. 1126. Specifically, Pintaric files this reply brief to clarify his expected testimony concerning the University of Southern California ("USC") admissions process and to explain the limitations of his proposed testimony.

1. **The USC Admissions Process**

The defendant contends that Pintaric's testimony meets the relevancy requirement necessary to overcome his motion to quash the subpoena that was issued for his appearance at trial. *See Stern v. U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000); Jovan Vavic's Opposition to Intervenor's Motion to Quash Trial Subpoena at p.1 (hereinafter "Vavic's Opp. at p.__") ("Pintaric held key positions on USC's water polo staff."). However, the fact that Pintaric was an assistant water polo coach at the time does not justify the subpoena. Nor do the broad statements that Pintaric has "deep knowledge on a range of topics that bear directly on matters at

issue in the case," Vavic's Opp. at p.3, or "And of course, Applicant 1 is just one topic, of many, that Coach Vavic intends to cover with Pintaric," Vavic's Opp. at p.5. Neither this list of topics nor these sweeping descriptions satisfy the relevancy requirement in this matter—Subco and the student-athletes submitted to it, as alleged in the Second Superseding Indictment ("SSI").

### 1. **Pintaric and Fundraising**

For example, Vavic points to a prior interview of Pintaric where he references fundraising as a part of his water polo duties. Vavic's Opp. at p.5. But Pintaric was referring to fundraising by team members *after they were on the team* by participating in events like raffles and golf tournaments. This was encouraged by the USC water polo team but obviously had nothing to do with admissions.

Pintaric could not be referring to fundraising by the Development staff and its connection to the general admissions of students with a VIP tag because fundraising by the Development staff for the Trojan Athletics Fund had absolutely no connection to the admissions process. Indeed, the Development staff and the Admissions staff are not even in the same building on campus, and Development staff had nothing to do with Admissions. The admissions process bears this out.

Concisely stated, there are just two avenues to obtain admission to USC: Subco and general admissions. Subco was for student-athletes who were recruited by USC coaches for their athletic ability and expected to play their sport for USC. Everyone else went through the general admissions process. Within the general admissions process, some applicants received a "special interest" or "VIP" tag. However, there was no VIP admissions committee and no separate VIP process.

Various departments within USC could issue a "special interest" tag, including the President's office, Central Development and, importantly, Athletics. While VIP applicants had a

2

higher rate of admissions than other students that USC admitted through its regular admissions process, the rate of acceptance for VIP applicants was still low and was considerably lower than applicants who went through Subco. The fact that donations did not equal admissions is further shown by Rick Singer setting up a "side door" through which applicants would falsely be presented to Subco as recruited athletes because the "back door" of donating money and going through the general admission process with a VIP tag did not have a very high acceptance rate.

Moreover, the Athletics Department had the ability to tag non-athletes as VIPs for reasons other than their athletic talent, such as the applicant's family's connection with USC, including their past or prospective donations. Therefore, Admissions understood that if someone had a special interest tag from Athletics, then the applicant was important to Athletics. If Admissions wanted to admit applicants who could donate to Athletics, they could admit applicants with an Athletics special interest tag directly through the general admissions process. There was no reason to resort to pretending that the applicant was a recruited athlete and therefore evaluating them through the Subco process.

As the Court is well aware, it is the conduct associated with the Subco process that provides the basis of the government's case; that is from where the fiduciary duty owed to USC allegedly derives. Blurring the line between the VIP tag, associated with fundraising by the Development staff for students, and the Subco process for student-athletes is just incorrect. USC did not use Subco as a fundraising tool. It was a component of the general admissions procedure with a VIP tag and is irrelevant to the issues before this Court. Vavic's attempt to tether fundraising from students and their families through general admissions with a VIP tag to Subco in an effort to meet the relevancy standard is misplaced.

## 2. **Pintaric and Applicant 1**

Vavic also relies on testimony regarding Applicant 1, referenced in the SSI, as a basis for compelling Pintaric to testify. Vavic's Opp. at p.4. This claim also misses its mark for several reasons. First, as discussed in Pintaric's motion to quash, Applicant 1's membership on the USC water polo team in the Summer of 2014 is readily established through publicly available means, such as the media guide, with its roster and team photograph. In addition, the defendant neglects to inform the court that this was also established at the first trial by one of the witnesses on his witness list, James Walters, who played water polo at USC and testified in detail to seeing Applicant 1 at practice, including a practice at which Applicant 1 was injured. Pintaric has nothing material to add. In the interview of Pintaric on which the defendant relies, Pintaric said only that he remembered only that Applicant 1 was not an immediate impact player, *i.e.*, not a stand out player, and that Applicant 1 was not a player whose position he coached. Although he has a memory of Applicant 1 in the water at practice, Pintaric does not remember how often Applicant 1 showed up at practice or when he stopped coming to practice. The defendant also argues that Pintaric would provide relevant testimony about Applicant 1's high school coach, Jack Bowen. However, Pintaric stated in his interview the he does not remember talking to Bowen about Applicant 1 and he does not know if Vavic talked to Bowen about Applicant 1.

Importantly, the timing of events does not assist Vavic with testimony relevant to issues before the Court. Specifically, testimony by Pintaric that Applicant 1 was observed in the pool, and also that Applicant 1 suffered a concussion (Vavic's Opp. at p.4), occurred *after Applicant 1's application was submitted to Subco* with the player profile and related documents. And that was the salient time of the commission of crimes as alleged by the government, and not months later

after Applicant 1 had arrived on campus. For both of these reasons, compelling Pintaric to testify about Applicant 1 is insufficient.

### 3. Pintaric Had No Knowledge of Vavic and Singer's Scheme

To the extent that the defendant's opposition laundry list of proposed topics can be misread as suggesting that Pintaric knew about Vavic and Rick Singer's scheme, that is disproved by his own exhibit. Vavic's Opp. Ex. A. As Pintaric's interview also makes clear, Pintaric had no knowledge of Vavic's and Rick Singer's scheme. *Id.* Pintaric had not heard of Singer before the investigation. *Id.* Vavic did not tell Pintaric that someone else paid for Vavic's children's private high school tuition. *Id.* Vavic did not tell Pintaric about trading roster spots on the USC water polo team in return for payment of their tuition. *Id.* In sum, Pintaric had no knowledge of the critical elements alleged in the SSI.[1]

For the foregoing reasons, Pintaric respectfully requests that this Court allow his motion to quash the trial subpoena issued for him.

Respectfully submitted,

s/ Glenn A. MacKinlay
Glenn A. MacKinlay
McCarter & English, LLP
265 Franklin Street
Dated: March 9, 2022                                    Boston, MA 02110

---

[1] Rather than addressing the exhibit with a blanket statement here, should the Court request it, counsel can proceed line by line and relegate the references in the exhibit—back to this central point—that Pintaric has no materially relevant evidence to the charges in this matter.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

I, Glenn A. MacKinlay, hereby certify that counsel for Pintaric has conferred with counsel for the government, and with counsel for the defendant, Jovan Vavic, in good faith with respect to the motion to quash and were unable to resolve or narrow the issues presented.

Date: March 9, 2022

                                                    s/ Glenn A. MacKinlay
                                                  Glenn A. MacKinlay

## CERTIFICATE OF SERVICE

I hereby certify that on this date this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants.

                                                    s/ Glenn A. MacKinlay
                                                  Glenn A. MacKinlay