UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL NO.: 19-CR-10081-IT |
| JOVAN VAVIC, | |
| Defendant. | |

## DEFENDANT'S MOTION TO COMPEL DISCOVERY
## RE: INCONSISTENT OR EXCULPATORY STATEMENTS OF DONNA HEINEL

Now comes the defendant Jovan Vavic, pursuant to Fed. R. Crim. P. 16, and hereby requests that this Court compel the Government to disclose the following items of discovery:

1. Notes of attorney proffer[1] of Donna Heinel conducted on or around February 1, 2022.

2. Any existing report of attorney proffer of Donna Heinel.

3. Any emails from Dr. Heinel's attorney about what she would testify to, if called to testify at Jovan Vavic's trial.

4. If no notes or report exists of the attorney proffer conducted on or around February 1, 2022, the defendant requests that this Court order the Government to reduce any communication from Dr. Heinel's lawyers about what she would have testified to at trial to writing.

This information, including any statements of Donna Heinel made by her counsel, is subject to discovery as documents material to preparing a defense, as inconsistent statements, and

---

[1] The defendant's understanding of an attorney proffer is that it is an initial discussion between the Assistant U.S. Attorney and the potential cooperator's counsel during which cooperator's counsel tells the Assistant U.S. Attorney what the potential cooperator would say if called to testify. During an attorney proffer, the defendant waives her right not to incriminate herself, but retains certain protections due to its status as a statement related to a plea discussion.

as exculpatory material. *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); Fed. R. Crim. P. 16(a)(1)(E).

### A. Factual Background

Donna Heinel and Jovan Vavic were scheduled to proceed to trial together until codefendant Heinel requested a Rule 11 hearing in November 2021. *See* E.C.F. no. 986. As Mr. Vavic's counsel later learned, an attorney proffer between Dr. Heinel's counsel and the government took place on February 1, 2022. Dr. Heinel's sentencing was scheduled for March 2022, but then continued to June 2022, in part because Mr. Vavic's trial would be taking place in March and the prosecutors would be occupied. *See* E.C.F. 1051.

At Mr. Vavic's trial, the government argued to the jury that Dr. Heinel and Mr. Vavic "were part of the same conspiracy," Tr. Vol. 5 at 71, after presenting evidence of payments from parents and Rick Singer to Heinel, Tr. Vol. 4 at 156-58. The government also introduced statements by many alleged co-conspirators, including statements by Dr. Heinel, pursuant to Fed. R. Evid. 801(d)(2)(E) (co-conspirator statements during and in furtherance of the conspiracy). The government moved to admit certain non-hearsay co-conspirator statements, and further moved in limine to preclude the defendant from admitting those same statements, unless used for impeachment purposes. *See* E.C.F. 840 at 2. The Government's motion even noted its awareness that the defendant could admit co-conspirator statements, at a minimum, for impeachment purposes. *See* E.C.F. 840 at 2. Despite its understanding of the permissible use of co-conspirator statements by Mr. Vavic, the Government never told Mr. Vavic that Dr. Heinel had participated in an attorney proffer, and never informed him that she would testify that she operated without the coaches' knowledge. As a result, Mr. Vavic did not offer any additional statements by Dr. Heinel at trial or

summon her to testify. The government also never presented statements by Dr. Heinel stating she had operated without the coaches' knowledge.

After Mr. Vavic's trial concluded, Dr. Heinel's sentencing took place in June 2021. At the sentencing hearing, both the Government and Dr. Heinel agreed that Dr. Heinel cut the coaches out of the recruitment process as part of her conspiracy with Rick Singer. For example, during the following exchange at the sentencing hearing, Dr. Heinel's attorney confirmed that Dr. Heinel did not involve the coaches in the conspiracy:

> THE COURT: Because Donna Heinel was making the decisions instead of the coach, but that -- when it was the way it was supposed to work -- I mean, what you're saying is -- I think what you're saying is the corruption by -- and maybe it's not just her, maybe it's other administrators -- but you're saying the corruption of the process meant the coaches weren't in the loop?
> MS. MARINO: I am saying that is true, and I am saying it is not a corrupted process that she created. It is one that was existing when she walked into her position.

E.C.F. 1468 (Heinel Sentencing Transcript) at 36. Government counsel also noted that Dr. Heinel was "doing it behind the coaches' backs with no knowledge on the part of the coach," and Dr. Heinel's counsel agreed "[s]he was using a system that was designed to have a coach weigh in, and she was doing that without the coach weighing in and then providing her own potentially fake information about the person." *Id.* at 38, 40. This discussion was so significant that it prompted the Court to announce ". . . to the extent that there was -- there were suggestions -- I don't know what material you have or don't have, but the information in this sentencing that Donna Heinel has admitted that she was putting people forward without the coaches' permission or knowledge is something -- information that should presumably be provided to Defendant Vavic." E.C.F. 1468 at 68. In response, the Government stated, "Understood, and it has, Your Honor." *Id.*

As far as defense counsel is aware, however, these admissions by Dr. Heinel were not provided to Mr. Vavic or his counsel. Instead, in response to recent discussions with Dr. Heinel's counsel, Mr. Vavic's counsel requested additional discovery from the Government on August 26, 2025, requesting "any proffer statements of Donna Heinel." *See* Exhibit A (Defendant's discovery letter). The Government responded via email that "Donna Heinel did not proffer with the government, and the government has produced all discoverable information within its possession, custody, or control." *See* Exhibit B. Dr. Heinel's sentencing memorandum, however, made clear that Dr. Heinel did participate in an *attorney* proffer on February 1, 2022. E.C.F. 1437 at 52 n.29 ("The government requested an attorney proffer which was held on February 1, 2022."). In addition, defense counsel recently spoke to Dr. Heinel's attorneys who confirmed that an attorney proffer took place by telephone.

### B. Appellate History

The First Circuit upheld this Court's decision to grant a new trial on Count Sixteen, for honest services fraud pursuant to 18 U.S.C. § 1346, because it was unclear whether the jury convicted the defendant based on undisclosed self-dealing, an impermissible theory under that statute. *United States v. Vavic*, 139 F.4th 1, 19 (1st Cir. 2025). The First Circuit upheld Mr. Vavic's conviction on Count Three for federal programs bribery, under 18 U.S.C. § 666, because the Government's statements in its rebuttal closing did not misstate the law and because its two misstatements of fact were not sufficiently material to rise to the level of plain error. *Id*. at 26.

### C. An Attorney Proffer is Subject to Discovery

The Due Process clause of the Fourteen Amendment requires the government to provide the defendant with material evidence that is favorable to him. *Brady*, 373 U.S. at 87. To be material, the evidence in question need not be itself admissible, as long as it "would have led to admissible

evidence." *DeCologero v. United States*, 802 F.3d 155, 162 (1st Cir. 2015). And to be favorable, evidence must either be exculpatory or impeach other evidence used against the defendant. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). *Brady* and *Giglio* do not restrict the applicable sources of favorable evidence. *See Giglio*, 405 U.S. at 154 (impeachment materials); *Brady*, 373 U.S. at 87 (generally discussing evidence favorable to the accused).

To that end, governments must disclose statements made by a witness through a proffer by that witness's attorney if those statements are favorable and material to the defendant. *See United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 165 (2d Cir. 2008) (finding *Brady* violation when government failed to disclose notes of witness's attorney proffer); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 92 (D.D.C. 2020) (noting government's concession that "attorney proffer materials are discoverable" under the government's *Brady* obligations). More generally, proffers must be disclosed when they are exculpatory or relevant to impeachment. *United States v. Shyne*, 617 F.3d 103, 107-08 (2d Cir. 2010) (holding that *Jencks* statements are not subject to disclosure for non-testifying co-conspirator statements, but *Brady* and *Giglio* material is). "The production of materials in possession of the Government that a defendant may use to take advantage of the opportunity to impeach a declarant under Rule 806 and the Government's obligation to produce such materials of which its agents have knowledge . . . arise under due process obligations articulated in *Brady* and *Giglio* . . . ." *Shyne*, 617 F.3d at 107-08.

### D. Information that Dr. Heinel Operated with "No Knowledge on the Part of the Coach" Was Material and Favorable to Mr. Vavic

Statements made by Dr. Heinel during her attorney's proffer—that her actions were unknown to coaches—are material and favorable to Mr. Vavic on the remaining federal programs bribery charge (Count Three). The government should therefore disclose them.

5

Regarding materiality, the government attempted at trial to prove that Mr. Vavic intended to join a USC-specific conspiracy, with a common goal and interdependent participants, that involved Mr. Singer and Dr. Heinel.  The government's allegation that Mr. Vavic knowingly approved of Dr. Heinel's involvement in the scheme anchored this Court's finding on those elements.  *See United States v. Vavic*, 628 F. Supp. 3d 330, 362-63 (D. Mass. 2022), *aff'd in part and rev'd in part*, 139 F.4th 1 (holding that the jury could have found Mr. Vavic "was aware and apparently unconcerned by the fact that Heinel . . . was presenting students to Subco on her own and would not 'push back' on Vavic's recruits." ).

Additionally, the government separately had to prove that Vavic "corruptly" intended to commit the underlying federal-program bribery.  *See* 18 U.S.C. § 666(a)(1)(B) (the federal-program bribery statute, which requires proof that the defendant "corruptly solicit[] or demand[] for the benefit of any person, or accept[] or agree[] to accept, anything of value from any person, intending to be influenced or rewarded.").  Dr. Heinel's and the government's admissions that she directed the scheme without coaches' knowledge undercut the notion that Mr. Vavic acted with "corrupt" intent, or even knowledge about the bribery.  And the fact that Dr. Heinel routinely fabricated information on resumes—without coaches' knowledge—further undermines any finding of "corrupt" intent on the part of Mr. Vavic.  Indeed, this Court's finding that the evidence was sufficient to convict Vavic depended on the assumption that Mr. Vavic was aware of Heinel's misrepresentations.  *Vavic*, 628 F. Supp. 3d at 362-63.  That assumption, which is necessary to sustain a conviction on Count Three, is dubious after Dr. Heinel's statements during the sentencing hearing, which were presumably repeated during her attorney's proffer to the government.

Any statements from Dr. Heinel, through her attorneys or through any other channel, are also favorable to Mr. Vavic for the same reasons.  Statements by Dr. Heinel that she operated

independently from the coaches would contradict the Government's theory that Mr. Vavic intentionally joined a conspiracy with Dr. Heinel, or that he knew false information was being sent to the subcommittee. In particular, these statements contradict the Government's narrative related to Augustina Huneeus, that Jovan Vavic agreed to accept $100,000 to present a water polo player from Marin Academy, thereby completing the crime of conspiracy, despite never receiving any money from her. The defendant's theory at trial was that he accepted slightly lower caliber players who could contribute money to USC as walk-ons, because part of his job was facilitating donations to the university and its sports programs. The Government's theory was that he corruptly and deliberately presented false information to the school. It argued during closing that Coach Vavic was "caught on a wiretap agreeing to recruit a student, whose name he doesn't even know, in exchange for another $100,000 to his water polo program, a student he is told is a fake water polo player. . . . Guess what? Donna Heinel, it's pretty undisputed, doesn't recruit . . . water polo players. He does . . . . So he knows she's not actually going to play water polo, but he agrees to recruit her for $100,000." Tr. Vol. 5 at 220-21. With Dr. Heinel's statements, the defense could have contradicted this false narrative that Mr. Vavic participated in or agreed to take $100,000 to recruit Augustina Huneeus, by showing that Dr. Heinel herself said she was sidestepping the coaches by the time Ms. Huneeus was recruited.[2] Dr. Heinel's potential testimony, in addition to evidence that the donation was made to her fund, would have corroborated Mr. Vavic's argument that he did not participate in her recruitment beyond a non-specific phone conversation during which Ms. Huneeus was not even named.

---

[2] At the sentencing hearing, the Government argued that, "Heinel not only presented the falsified profiles of Singer's applicants, but also added her own falsifications and fabricated narratives about their purported athletic abilities…Her role is as a gatekeeper allowed her not only to commit the fraud by making it appear as if USC's athletic coaches were actually recruiting these students, but to perpetuate it by fending off inquiries from admissions…" E.C.F. 1468 at 12.

7

Because statements made during Dr. Heinel's attorney proffer are material and favorable to Mr. Vavic, the defense hereby requests that this Court compel the Government to disclose the above-mentioned items.

Dated: October 7, 2025

Respectfully submitted,

*/s/ Alyssa Hackett*
Alyssa Hackett 676880
Law Office of Alyssa T. Hackett
55 Union Street, 3rd Floor
Boston, MA 02108
617-221-3407, ahackett@hackett-law.com

Amy M. Saharia, (D.C. Bar No. 981644)
asaharia@wc.com
(Admitted *pro hac vice*)
Katherine A. Trefz (D.C. Bar No. 994103)
ktrefz@wc.com
(Admitted *pro hac vice*)
Jeffrey Ho (BBO 714047)
jho@wc.com
Ashwin Shandilya (D.C. Bar No. 90002780)
ashandilya@wc.com
(Admitted *pro hac vice*)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
202-434-5000

*Attorneys for Defendant JOVAN VAVIC*